# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                            )

| | |
|---|---|
| CHILDREN'S NATIONAL MEDICAL CENTER, | ) |
| | ) |
| and | ) |
| | ) |
| BRSI, L.P. d/b/a BENEFIT RECOVERY SPEACIALISTS, | )     No.:  06-0317RJL |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| Todd Hicks, | ) |
| | ) |
| and | ) |
| | ) |
| LOCAL UNION NO. 639, BUILDING, INC. d/b/a INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 639 and d/b/a LOCAL 639, | ) |
| | ) |
| and | ) |
| | ) |
| LOCAL UNION NO. 639, BUILDING, INC. d/b/a INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 639 – Employer's Health Trust Fund, 3100 Ames Place, NE Washington, DC 20018, | ) |
| | ) |
| Defendants. | ) |

_____)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TEAMSTERS LOCAL 639 – EMPLOYERS HEALTH TRUST FUND'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

## INTRODUCTION

Plaintiffs, Children's National Medical Center and Benefit Recovery Specialists, Inc., commenced this action against two named Defendants, Defendant Todd Hicks, individually and on behalf of Todd Hicks, Jr., deceased, ("Defendant Hicks"), and Defendant "Local Union No. 639, Building, Inc. d/b/a International Brotherhood of Teamsters Local 639 and d/b/a Local 639" (the named "Local 639 Defendant"), by filing an Original Complaint in the Superior Court of the District of Columbia, Civil Action No. 00-0000172, on January 12, 2006.[1]  Plaintiffs' Original Complaint asserts state law claims of breach of contract, breach of duty of good faith and fair dealing, quantum meruit, and misrepresentation and/or fraud as a result of medical services that Children's National Medical Center rendered to Todd Hicks, Jr., son and dependent of Defendant Hicks.

On February 3, 2006, Plaintiffs filed a First Amended Complaint in Superior Court seeking to add a third defendant, the Teamsters Local 639 – Employers Health Trust Fund ("Fund" or "Defendant Fund"),[2] as a party to the case, together with a "Motion to Amend Complaint to Add a New Defendant and Cause of Action."  Plaintiffs

---

[1] The Teamsters Local 639 – Employers Health Trust Fund is not named as a defendant in the Original Complaint.

[2] Even though counsel for the Defendant Fund notified Counsel for Plaintiffs in advance of the filing of the First Amended Complaint that the Defendant Fund's correct legal name is the "Teamsters Local 639 – Employers Health Trust Fund" and that the Defendant Fund is a separate legal entity from the Local 639 Defendant, the First Amended Complaint nevertheless incorrectly identifies the Defendant Fund through the designation "Local Union No. 639, Building, Inc. d/b/a International Brotherhood of Teamsters Local 639 d/b/a Teamster's Local 639 – Employer's Health Trust Fund" and purports to assert that the Fund is the alter ego of the named Local 639 Defendant.  The Defendant Fund files this Motion to Dismiss, or in the alternative, for Summary Judgment in the event the Court grants Plaintiffs' Motion to add the Defendant Fund as a new party in the First Amended Complaint.

served the First Amended Complaint on counsel for the Defendant Fund on February 6, 2006.[3]

The Fund removed this case to this Court on February 22, 2006 on the grounds that Plaintiffs' claims necessarily arose under federal law – the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*  Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56, the Fund now moves to dismiss Plaintiffs' claims against the Fund for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment.

## STATEMENT OF UNDISPUTED MATERIAL FACTS[4]

1.      The named Local 639 Defendant is a local union in Washington, D.C., affiliated with the International Brotherhood of Teamsters, a national union.  (Original Complaint ("Compl.") ¶ 4.).

2.      The Fund is an employee welfare benefit plan organized and established under ERISA.  (Declaration of Laurie Mele ("Mele Dec.") ¶ 2.).  The Fund is operated and administered by a Board of Trustees, which is comprised of four (4) trustees appointed by Local 639 and four (4) trustees appointed by the employers that contribute to the Fund.  (Mele Dec. ¶ 2 and Ex. 1. ).  The Board of Trustees conducts business of the Fund in the name of the Teamsters Local 639 – Employers Health Trust Fund.  (Mele Dec. ¶ 2 and Ex. 1. ).

---

[3] Defendant Fund also filed its Opposition to Plaintiffs' Motion to Amend Complaint to Add a New Defendant and Cause of Action contemporaneously with the filing of the instant Motion.

[4] Defendant Fund submits these undisputed material facts in connection with its alternative request for summary judgment.

4.      The Trust Agreement governs the operation of the Fund.  Pursuant to the terms of the Trust Agreement, the Board of Trustees has established a program of medical and related benefits to provide health benefits to eligible participants and dependents.  (Mele Dec. ¶ 2 and Ex. 1. ).

5.      Todd Hicks, Jr. was injured in a motor vehicle accident on January 12, 2003, and was taken to Children's National Medical Center for medical care relating to his injuries.  He remained at Children's National Medical Center until his death on or about January 14, 2003.  (Amended Complaint ("Am. Compl.") ¶¶ 9, 10.).

6.      At the time of Todd Hicks, Jr.'s motor vehicle accident on January 12, 2003, Defendant Hicks was a participant in the Fund, and Todd Hicks, Jr. was the son and dependent of Defendant Hicks.  (Am. Compl. ¶ 10; Mele Dec. ¶ 3.).

7.      After providing medical services to Todd Hicks, Jr. in connection with the injuries he suffered in the motor vehicle accident on January 12, 2003, Children's National Medical Center sought payment from the Fund for such services.  (Am. Compl. ¶ 11)

8.      The Summary Plan Description ("SPD") for the Fund provides that the Fund "will provide covered benefits" to a participant or dependent for "injur[ies] caused by the action or inaction of another person or party" only if the participant agrees to repay the Fund "from any settlement, judgment or Workers' Compensation recovery [the participant or] dependent[] may receive."  (Mele Dec. ¶ 4 and Ex. 2 at p. 75-76.).  The participant is "required to sign a form that acknowledges the Fund's right to be reimbursed and verifies that "the participant" will help the Fund secure its rights."  (Mele Dec. ¶ 4 and Ex. 2 at p. 76.).  "The form must be *completed* before the Fund will make

payments on [the participants or participant's] dependent's behalf."  (Mele Dec. ¶ 4 and Ex. 2 at p. 76(emphasis added).).  The Trustees of the Fund interpret this language to require the participant's attorney's signature on the subrogation form in the spot indicated for the participant's attorney to sign before it is deemed "complete."  (Mele Dec. ¶ 5.).

9.    On July 8, 2004, Defendant Hicks signed a subrogation agreement with the Fund whereby he acknowledged the Fund's right to be reimbursed for any payments it made to cover medical expenses incurred by his son, Todd Hicks, Jr., caused by the action or inaction of another person.  (Mele Dec. ¶ 6 and Ex. 3.).  Defendant Hicks' attorney, however, failed or refused to sign the subrogation agreement.  (Mele Dec. ¶ 6 and Ex. 3.).

10.    The Fund subsequently denied payment of the bill submitted by Children's National Medical Center in connection with the services rendered to Todd Hicks Jr. because Todd Hicks Jr.'s injuries were the result of a motor vehicle accident for which a third party was responsible, and Defendant Hicks failed to provide the Fund with a completed subrogation agreement, as required by the terms of the SPD. (Mele Dec. ¶ 7.).

11.    The Fund's SPD specifically informs claimants of their right under Section 502(a) of ERISA to file suit in federal court.  (Mele Dec. ¶ 8 and Ex. 2.).  Under the terms of the SPD, a claimant may bring an action under Section 502(a) of ERISA only after the claimant has (1) submitted a written claim for benefits, (2) been notified that the claim is denied, (3) filed a timely written request for a review of the claim, and (4) been notified in writing that the denial of the claim has been affirmed on appeal. (Mele Dec. ¶ 8 and Ex. 2.).

12.    Plaintiffs' brought the instant action against the Fund on February 3, 2006 without first filing a timely written request for a review of their claim by the Fund's Board of Trustees.  (Mele Dec., ¶ 9.).

13.    Plaintiffs filed the Original Complaint against Defendant Hicks and the Local 639 Defendant in the Superior Court of the District of Columbia on January 12, 2006.  (See Compl.).  Plaintiffs served the Original Complaint on Mark Winter on January 17, 2006.  (Mele Dec. ¶ 10.).  The Teamsters Local 639 – Employers Health Trust Fund is not named as a defendant in the Original Complaint.  (*See* Compl.).

14.    Plaintiffs filed a First Amended Complaint in Superior Court to add the Fund as a party to the case, together with a "Motion to Amend Complaint to Add a New Defendant and Cause of Action" on February 3, 2006.  (*See* Am. Compl.; Motion to Amend Complaint to Add a New Defendant and Cause of Action.).  Plaintiffs served the First Amended Complaint on counsel for the Fund on February 6, 2006.  (*See* Praecipe.).

## ARGUMENT

## I.    Plaintiffs' Claims Against The Fund Are Preempted By ERISA, And Therefore, Must Be Dismissed

### A.    The Fund Is An Employee Welfare Benefit Plan Covered By ERISA

As demonstrated both by statutory definition and the express terms of its plan documents,[5] the Fund is an "employee welfare benefit plan" within the meaning of

---

[5] This Court has held that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim.  *See Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) (holding that "where a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.").  *See also Marsh v. Hollander*, 339 F. Supp. 2d 1, 5 n.4 (D.D.C. 2004) (stating that even thought the Court considered exhibits submitted by the defendant that were attached to motion to dismiss, the Court did not convert the

Section 3(1) and (3) of ERISA.  *See* 29 U.S.C. §§ 1002(1) and (3).  The terms "employee

welfare benefit plan" and "welfare plan" are defined in Section 3(1)(a) of ERISA to

include "plan[s], fund[s] or programs" – such as the Fund – that provide "medical,

surgical, or hospital care or benefits" to participants or beneficiaries.  29 U.S.C. §

1002(1)(a).

     The language of the Fund's Summary Plan Description ("SPD") confirms that the

Fund is covered under the terms of ERISA.  (Mele Dec. ¶ 2 and Ex. 2).  Specifically, the

SPD states that "[t]he Plan is an 'employee welfare benefit plan' under ERISA."  (Mele

Dec. Ex. 2).  "The Plan provides hospitalization, surgical and medical, disability, dental,

vision care, prescription drugs, and major medical benefits to eligible participants and

their eligible dependents on a self insured basis."   (Mele Dec. Ex. 2).

### B.     Plaintiffs' State Law Claims Are Preempted By ERISA

     Congress designed ERISA to be a comprehensive scheme for regulating the

administration of employee benefit plans.  To that end, the statutory language provides

---

motion to one for summary judgment because documents the attached documents were
referred to in the complaint and central to the plaintiff's claim).  When such documents
are attached to a motion to dismiss, the defendant is merely assisting the court in making
the elementary determination of whether a claim has been stated.  *See Collins v. Morgan
Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000).  In the First Amended
Complaint, Plaintiffs specifically reference a "health policy" that was allegedly "issued
by the [Local] 639 Defendant through the [Defendant] Fund to Todd Hicks."  (Am.
Compl. ¶¶ 12, 18, 19, 24).  In fact, Plaintiffs specifically allege that "[s]ince the Hicks
Defendant requested and received, and Children's National Medical Center agreed to
provide (in exchange for the promise of payment and/or the assignment of *benefits under
the [named] 639 Defendant's health policy administered through the [Defendant] Fund*),
the medical care, services, and goods provided, the parties had a contract for medical
care."  (Am. Compl. ¶ 18 (emphasis added.)).  Moreover, had Plaintiffs properly pleaded
this action as a claim for benefits pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C.
§1132 (a)(1)(B), the plan documents describing the benefits available from the Fund
would necessarily be referenced in the Complaint.  Accordingly, the Court may properly
consider the plan documents in connection with this motion to dismiss.

specific mechanisms for the recovery of benefits and other enforcement of ERISA rights.

*See* 29 U.S.C. § 1132.  To insure the uniformity and effectiveness of ERISA's regulatory

scheme, Congress included an extremely broad preemption provision which provides, in

pertinent part, that ERISA "shall supersede *any and all State laws* as they may now or

hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a) (emphasis added).

The United States Supreme Court has determined that "ERISA pre-empts any state law

that refers to or has a connection with covered benefit plans . . . 'even if the law is not

specifically designed to affect such plans, or the effect is only indirect.'"  *District of*

*Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 129-130 (1992) (quoting

*Ingersoll-Rand Co. v. McClendon*, 489 U.S. 133, 139 (1990)).

       Pursuant to this statutory language, it is well-settled that ERISA preempts state

law claims that "relate to" any "employee benefit plan."  *See e.g., Aetna Health Inc. v.*

*Davila*, 542 U.S. 200, 209 (2004) ("[A]ny state-law cause of action that duplicates,

supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear

congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.").

A state law claim "relates to" an employee benefit plan if "it has a connection with or

reference to such a plan."  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987).

Significantly, "[i]t is not the label placed on a state law claim that determines whether it

is preempted, but whether in essence such a claim is for the recovery of an ERISA plan

benefit."  *Zuniga v. Blue Cross & Blue Shield of Mich.*, 52 F.3d 1395, 1401 (6th Cir.

1995) (quoting *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th

Cir. 1991)).

Plaintiffs' First Amended Complaint purports to assert the following state law claims: breach of contract, breach of duty of good faith and fair dealing, quantum meruit, misrepresentation and/or fraud, and alter ego.  According to Plaintiffs, the Fund failed to pay Children's National Medical Center for medical services rendered to Fund participant Defendant Hick's dependent son, Todd Hicks, Jr., after an alleged agent of the Fund supposedly "pre-certified the Hicks as being covered under the health policy, authorized Children's National Medical Center to provide medical care and services to [] Todd Hicks, Jr., and agreed to pay Children's National Medical Center for the care, services, and goods provided."  (Am. Compl. ¶¶ 12).  Although Plaintiffs' Amended Complaint fails to recognize that the Fund is an "ERISA plan," it does acknowledge that the Fund is a "employee health fund".  (Am. Compl. ¶ 5.)  In this case, Plaintiffs' claims against the Fund derive from and exist only because Defendant Hicks was participating in an "employee health fund" governed exclusively by ERISA.

The D. C. Circuit, as well as other federal courts do not countenance state law claims seeking benefits from ERISA-covered employee benefit plans.  In the first place, the D.C. Circuit Court has acknowledged that "ERISA's preemption clause … has been interpreted extremely broadly…."  *Bd. of Trs. of the Hotel & Rest. Employees Local 25 v. Madison Hotel, Inc.*, 97 F. 3d 1479, 1486-87 (D.C. Cir. 1996) (citation omitted).  As explained in *Madison Hotel*, "even general common law causes of action, such as breach of contract, which were not specifically intended to apply to benefit plans covered by ERISA, will nonetheless be preempted insofar as they affect ERISA protected rights."  *Madison Hotel*, 97 F. 3d at 1486-87.  *See also Moore v. Blue Cross & Blue Shield of the*

*Nat'l Capital Area,* 70 F. Supp. 2d 9, 19 (D.D.C. 1999) (recognizing that the phrase "relate to" in Section 514(a) of ERISA is to be given an "expansive reading.").

Following this principle, several courts within this Circuit have held that state law claims of breach of contract, breach of duty of good faith and fair dealing, misrepresentation, and fraud brought against ERISA plans – like the claims here – are squarely preempted by ERISA. For example, in *Krooth & Altman v. North Am. Life Assur. Co.*, 134 F. Supp. 2d 96, 101 (D.D.C. 2001), the court expressly found that such claims "directly 'relate to' the employee benefit plan because such claims presuppose the existence of a contract", and therefore, "[t]hese claims must be dismissed as preempted by ERISA." Similarly, in *Coleman v. Pension Benefit Guar. Corp.*, 196 F.R.D. 193, 197 (D.D.C. 2000), the court concluded "that plaintiffs' common law misrepresentation claim is preempted by ERISA and must be dismissed."

Likewise, in *Psychiatric Inst. of Wash., D.C., Inc.*, for example, a health care provider brought state law claims for breach of contract and promissory estoppel against a patient's health insurer to recover payment for services rendered allegedly as a result of an oral verification of coverage. Following removal from state court, the insurer moved to dismiss the health care provider's claims on ERISA preemption grounds. The District Court held that ERISA preempted the state law claims because they "not only 'relate' to an employee benefit plan, they depend on an employee benefit plan." *Id.* According to the Court, the provider's "allegations and requested relief are centrally 'connected to the concerns addressed by ERISA' … and directly 'affect relations among principal ERISA entities – the employer, the plan fiduciaries, the plan, and the beneficiaries – as such.'" *Id.* at 29 (citations omitted).

Plaintiffs' state law claims against the Fund in this case squarely "relate to" the scope of benefits available to Fund participant Defendant Hicks and his dependent son, Todd Hicks, Jr., and, more particularly, to the unambiguous coverage exclusion (described in the last section of this Memorandum) that required the Board of Trustees of the Fund to deny authorization for payment of the bill submitted by Children's National Medical Center in the first place.  Because the scope of benefits provided by an ERISA plan to its participants and beneficiaries is a "central[] . . . concern[] addressed by ERISA," Plaintiffs' state law claims against the Fund must be deemed preempted as a matter of law.  *Psychiatric Inst. of Wash., D.C.,* 780 F. Supp. at 29.  *See also Thayer v. Group Hospitalization & Medical Servs., Inc.*, 674 F. Supp. 924, 925 (D.D.C. 1987) (preempting state law breach of contract claim).

Numerous courts in other jurisdictions follow this same reasoning and hold that state law claims brought by providers and others against ERISA plans are preempted by ERISA.  *See, e.g., Variety Children's Hosp. Inc. v. Century Med. Health Plan Inc.*, 57 F.3d 1040 (11th Cir. 1995) (health care provider's state law fraud and misrepresentation claims related to ERISA plan because they were based on plan's nonpayment of benefits); *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272 (6th Cir. 1991) (health care provider's state law claims for promissory estoppel and negligent misrepresentation for medical services rendered to a participant preempted by ERISA), *cert. dismissed*, 505 U.S. 1233 (1992); *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569 (5th Cir. 1992) (health care provider's state law claims for estoppel and negligence preempted by ERISA).  In accordance with these precedents, Plaintiffs' state law claims for breach of contract, breach of duty of good faith and fair dealing, quantum

meruit, misrepresentation and/or fraud, and alter ego against the Fund are preempted by

ERISA and must be dismissed.

## II.    In The Alternative, Plaintiffs' Claims Must Be Dismissed As Time-Barred Or Otherwise Failing to State a Claim Upon Which Relief Can Be  Granted

### A.    Plaintiffs' Claims Against The Fund Are Time-Barred By The Applicable Statute of Limitations, And Therefore, Should Be Dismissed

Assuming the truth of all well-pleaded factual allegations, and liberally construing

those allegations in a light most favorable to Plaintiffs, it remains clear from the face of

Plaintiffs' First Amended Complaint that their claims for breach of contract, breach of

duty of good faith and fair dealing, quantum meruit, misrepresentation and/or fraud, and

alter ego are time-barred by the applicable statute of limitations.  Accordingly, dismissal

is required.

Plaintiffs' claims for breach of contract and breach of duty of good faith and fair

dealing are governed by D.C. Code Section 12-301(7), which provides that actions on a

"simple contract, express or implied," must be filed within three years from the time the

right to maintain the action accrues.  *See Allison v. Howard Univ*., 209 F. Supp. 2d 55, 59

(D.D.C. 2002) ("To maintain a cause of action on an express or implied contract in the

District of Columbia, a plaintiff must bring a lawsuit within three years following the

accrual of the claim.") (citing D.C. Code § 12-301(7)).  A three-year statute of limitations

also governs Plaintiffs' claims for quantum meruit, misrepresentation, and fraud.  *See*

*Smith v. Brown & Williamson Tobacco Corp*., 3 F. Supp. 2d 1473, 1476 (D.D.C. 1998)

("A three-year statute of limitations … governs a plaintiff's claims of fraud….") (citing

D.C. Code § 12-301(8)); *Union Labor Life Ins. Co. v. Sheet Metal Workers Nat'l Health*

*Plan,* No. 90-2728 (RCL), 1991 U.S. Dist. LEXIS 13613, at *14 (D.D.C. Sept. 30, 1991)

("[T]he statute of limitations for quantum meruit … is three years in [] the District of Columbia….") (citing D.C. Code § 12-301(7)); *Lawson v. Nationwide Mortgage Corp.*, 628 F. Supp. 804, 806 (D.D.C. 1986) ("[T]here is a three-year statute of limitations for fraud claims, and that period begins to run from the time the fraud or misrepresentation is discovered or reasonably should have been discovered."). To the extent the alter ego allegations purport to state a claim against the Fund, the claim is time-barred by the three year catch-all statute of limitations in the District of Columbia, D.C. Code § 12-301(8).

All of Plaintiffs' claims against the Fund arise from their allegations that "Children's National Medical Center provided necessary medical care, services, and goods" to Todd Hicks, Jr. in connection with the injuries he suffered from a motor vehicle accident on January 12, 2003, and that "upon Todd Hicks, Jr.'s admission to Children's National Medical Center [on January 12, 2003], the [Fund's] agent pre-certified the Hicks as being covered under the health policy, authorized Children's National Medical Center to provide medical care and services to [] Todd Hicks, Jr., and agreed to pay Children's National Medical Center for the care, services, and goods provided." (Am. Compl. ¶¶ 11, 12). As such, Plaintiffs' right to maintain claims against the Fund for breach of contract, breach of duty of good faith and fair dealing, quantum meruit, misrepresentation and/or fraud, alter ego accrued on January 12, 2003 (and no later than January 14, 2003, the last date Children's National Medical Center provided services to Todd Hicks, Jr.). (Am. Compl. ¶ 11.). Plaintiffs therefore had three years from January 14, 2003, the date their right to maintain these actions accrued, to bring such claims against the Fund. Plaintiffs, however, did not file their First Amended Complaint in Superior Court purporting to add the Fund as a party to the case until

February 3, 2006.  Since Plaintiffs brought these claims against the Fund outside the applicable statute of limitations period, Plaintiffs' claims against the Fund are time-barred and should be dismissed with prejudice.

The relation back doctrine found in Federal Rule Civil Procedure 15(c) does not save Plaintiffs' claims against the Fund from being time-barred.  The Federal courts in this circuit recognize that Rule 15(c) "permits a plaintiff to correct the situation where the proper, but misnamed, defendant is before the court [,]" but does not permit a plaintiff to amend the complaint in the situation where "'the plaintiff fails to originally name a defendant because he lacks knowledge of [its] identity.'"  *Gipson v. Wells Fargo Corp*., 382 F. Supp. 2d 116, 119 (D.D.C. 2005) (citing *Rendall-Speranza v. Nassim*, 107 F.3d 913, 918 (D.C. Cir. 1997)).  In the latter situation – where a party amends a pleading to substitute or add a new defendant that is not already before the court, and the effect is not merely to correct the name under which the party was sued – "a new defendant cannot [] be substituted or added by amendment *after the statute of limitations has run.*"  *Grigsby v. Johnson*, No. 95-213 (TFH/DAR), 1996 U.S. Dist. LEXIS 7034, at *18 (D.D.C. May 13, 1996) (emphasis added) (quoting *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993)).

Plaintiffs' First Amended Complaint purports to *add* the Fund as a *new* party to the case in addition to the two defendants named in the Original Complaint.  Plaintiffs' First Amended Complaint, however, was not filed until February 3, 2006.  The statute of limitations for Plaintiffs' claims expired on January 12, 2006 (or no later than January 14, 2006, three years from the last date that Plaintiffs allege Children's National Medical Center provided services to Todd Hicks, Jr.).  Because Plaintiffs' First Amended

Complaint was filed after the applicable statute of limitations had run on their claims

against the Fund, Plaintiffs cannot amend the Original Complaint to *add* the Fund as a

*new* defendant.[6]  *See Gipson*, 382 F. Supp. 2d at 119 (D.D.C. 2005); *Grigsby*, 1996 U.S.

Dist. LEXIS 7034, at *15-20.  Plaintiffs' claims against the Fund should therefore be

dismissed as time-barred.

Plaintiffs' "information and belief" alter ego allegations do not save the claims

from being time-barred either.  The law recognizes the legal separateness of employee

benefit plans under ERISA and the local unions and employers that sponsor them, as

explained in the next section of this memorandum.

**B.    Plaintiffs' "Alter Ego" Claim Fails To Save Plaintiffs' Other Claims From Being Time-Barred, And Must Be Dismissed In Any Event**

As an initial matter, Plaintiffs' First Amended Complaint arguably does not assert

an "alter ego" claim against the Defendant Fund.  Plaintiffs allege that the Local 639

Defendant "is liable for the Fund's obligations because it is effectively one and the same,

or *alter ego*, of the [Local] 639 Defendant and, thus, it is fair and just to hold the [Local]

639 Defendant liable for the 639 Health Fund's obligations."  (Am. Compl. ¶ 35.).  To

the extent Plaintiffs are not asserting an "alter ego" claim against the Fund, no response is

required.

To the extent that the First Amended Complaint can be read to set forth an "alter

ego" claim against the Fund, the alter ego claim must be dismissed.  "Although a plaintiff

is not held to a very high standard in a motion to dismiss for failure to state a claim, some

---

[6] To the extent Plaintiffs' allege that the Fund had notice of their claims because the Original Complaint was served on Mark Winter on January 17, 2006, Plaintiffs' claims are still time-barred because Plaintiffs failed to give the Fund notice of the Original

minimal pleading standard does exist." *Kowal v. MCI Comm. Corp.*, 16 F. 3d 1271, 1277 (D.C. Cir. 1994). The Court should not accept inferences drawn by Plaintiffs if such inferences are unsupported by facts set out in the complaint, nor must the Court accept legal conclusions cast in the form of factual allegations. *See id.*

Plaintiffs' First Amended Complaint pleads a series of conclusory alter ego allegations based upon "information and belief" with no supporting facts. Thus, the Plaintiffs allege: (1) that, upon information and belief, Defendant Fund is operating as a "d/b/a entity of the [Local] 639 Defendant"; (2) that, upon information and belief, there is "a unity ownership and interest between the [Local] 639 Defendant and the [] Fund"; (3) that, upon information and belief, the named 639 Defendant's conduct has "resulted in control over the [Fund] to the degree that one cannot reasonably separate" the Local 639 Defendant's interests from the Fund's interest; (4) that, upon information and belief, the Local 639 Defendant "used the [] Fund to carry out its business"; and (5) that, upon information and belief, the Local 639 Defendant "used the [] Fund fraudulently to protect the [Local] 639 Defendant's business from the claims of creditors." (Am. Compl. ¶¶ 30-34.). Importantly, Plaintiffs allege *no facts* to support these conclusory statements, and in this respect, the First Amended Complaint fails to meet even the most minimal pleading standard. *Kowal*, 16 F. 3d at 1277. Because Plaintiffs' fail to allege *facts* to support their alter ego claim, the claim should be dismissed. *See Kowal*, 16 F.3d at 1276.

Even if the court finds that the alter ego claim satisfies the minimal pleading requirements of the Federal Rules, the text of ERISA supplies a separate reason for dismissing the claim. ERISA expressly recognizes that an employee benefit plan is a

---

Complaint (to which it was not a named defendant) within the applicable statute of

legal entity, with capacity to sue or be sued under ERISA.  *See* 28 U.S.C. § 1132(d)(1)

("An employee benefit plan may sue or be sued under this title as an entity…").  ERISA

further recognizes that "[a]ny money judgment [ordered under ERISA] against an

employee benefit plan shall be enforceable *only against the plan* as an entity and shall not

be enforceable against any other person *unless* liability against such person is established

in his *individual capacity* under [ERISA]."  28 U.S.C. §1132(d)(1) (emphasis added.).

These requirements mean that Plaintiffs must plead and prove that each defendant is

individually responsible for paying ERISA benefits.  Bald, unsupported allegations that

the Fund is an alter ego of the local union do not meet this statutory requirement.

The case law under ERISA also recognizes the important legal distinction

between employee benefit plans and the unions and employers that sponsor the plans

and/or appoint the plan fiduciaries.  *See e.g., NLRB v. Amax Coal Co*., 453 U.S. 322

(1981) (holding that the ERISA fiduciary duties and responsibilities and duties of an

employee benefit fund trustee are separate and distinct from the duties and

responsibilities of the union which appoints that trustee); *Brown v. Int'l Union, UAW*, 689

F.2d 69, 72 (6th Cir. 1982) (stating that absent special situations (not alleged in the

instant First Amended Complaint), the union-appointed trustee could not act as an agent

of the Union when performing or failing to perform his duties as a fiduciary); *Yares v.*

*Great Cleveland Pipefitting Training Fund*, 782 F. Supp. 68, 70 (N.D. Ohio 1990), *aff'd*,

929 F.2d 702 (6th Cir. 1991) (holding that trustees of a collectively bargained benefit

fund "cannot be considered agents of the person or organization responsible for

appointing them.").

---

limitations.

For all of these reasons, the Plaintiffs' unsupported allegation that the Fund is the "alter ego" of the local union cannot stand. The allegation cannot stand as a basis to resurrect the time-barred status of Plaintiffs' other claims, and it cannot stand to the extent it purports to state a substantive claim.

### C.    Plaintiffs' Claim For Fraud And/Or Misrepresentation Fails To Meet The Pleading Requirement of Fed. R. Civ. P. 9(b), And Therefore, Should Be Dismissed

The Federal Rules of Civil Procedure clearly state that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). In the District of Columbia, the elements of fraudulent misrepresentation in tort and common law fraud are the same. *See Howard v. Riggs National Bank*, 432 A.2d 701 (D.C. 1981); *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977), *cert. denied*, 434 U.S. 1034 (1978). To state a claim for fraud, Plaintiffs must demonstrate the following elements: (1) false representation or willful omission; (2) a material fact; (3) knowledge of the falsity; (4) an intention to induce reliance; and (5) action taken in reliance on the representation. *See Howard*, 432 A.2d at 706. To survive dismissal under Rule 12(b)(6), a claim for fraud must specifically allege the time, place, and nature of the fraud. *See Witherspoon v. Philip Morris, Inc*., 964 F. Supp. 455, 459 (D.D.C. 1997). *See also* Fed. R. Civ. P. 9(f). Because Plaintiffs' allegation of fraud is conclusory and contains insufficient factual support, their claim for fraud and/or misrepresentation fails to meet this heightened pleading requirement, and should be dismissed.

The factual allegations supporting Plaintiffs' claim are almost nonexistent. In essence, Plaintiffs state in a conclusory fashion that Defendant Fund "knowingly made

material misrepresentations, and/or committed fraud with the intent to deceive Children's

National Medical Center, by pre-certifying the Hicks Defendant for treatment and by

agreeing to pay for the care, services, and good provided." (Am. Compl. ¶ 28.) Plaintiffs

further allege that Children's National Medical Center reasonably relied on the [Fund's]

and/or [its] agent's pre-certification and/or conduct, and has been injured as a result of

the [Fund's] conduct." (Am. Compl. ¶ 28.). These conclusory statements contain none

of the required elements to state a claim for fraud. For example, Plaintiffs wholly fail to

identify the contents, time, place or the speaker who made the alleged misrepresentations.

Moreover, Plaintiffs fail to allege any facts suggesting that the Fund intended to induce

reliance by Children's National Medical Center, or that Children's National Medical

Center would not have rendered medical services to Todd Hicks, Jr. in the absence of the

alleged representation by the Fund.

Plaintiffs' conclusory allegation that the Fund "knowingly made material

misrepresentations and/or committed fraud with the intent to deceive" is simply

insufficient to support a cause of action for fraud under Rule 9, and should therefore be

dismissed. *See Bender v. Rocky Mountain Drilling Assocs.*, 648 F. Supp. 330, 336

(D.D.C. 1986) (finding that a complaint replete with conclusory and unsubstantiated

allegations of fraud is "patently insufficient under Rule 9(b).") (citing *Equitable Life*

*Assurance Society v. Alexander Grant & Co.*, 627 F. Supp. 1023, 1030 (S.D.N.Y. 1985)).

**III.    To The Extent Plaintiffs' Claims Against The Fund Are Re-characterized As
Claims Under Section 502 Of ERISA, The Claims Fail As A Matter Of Law**

Because Plaintiffs' state law claims against the Fund are preempted by ERISA,

the only claim that could possibly lie is a re-characterized claim for benefits under

ERISA. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64-66 (1987) (re-characterizing

preempted state law claims as arising under federal law for purposes of determining federal question jurisdiction and the existence of complete preemption).  Under Section 502(a)(1)(B) of ERISA, a claim to recover benefits from an employee benefit plan may only be brought by a plan participant or beneficiary.  *See* 29 U.S.C. § 1132(a)(1)(B). Although Plaintiffs are not one of the enumerated parties under Section 502 of ERISA, some courts have recognized an exception where the participant has assigned his or her rights under the plan to a non-enumerated party, thereby giving the assignee the derivative right to bring a claim against the plan under Section 502.  *See e.g., HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005 (4th Cir. 1996); *Cromwell*, 944 F.2d at 1277; *Kennedy v. Conn. General Life Ins. Co.,* 924 F.2d 698, 700 (7th Cir. 1991); *Michael Reese Hosp. and Medical Ctr. v. Solo Cup Employee Health Benefit Plan,* 899 F.2d 639, 640 (7th Cir. 1990); *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286 (5th Cir. 1988); *Psychiatric Inst. of Wash., D.C.,* 780 F. Supp. at 29-30.

Plaintiffs allege that Defendant Hicks assigned his rights to receive benefits from the Fund to Children's National Medical Center (Am. Compl. ¶ 12.).  As such, Children's National Medical Center "stands-in-the-shoes" of Defendant Hicks with regard to its right to bring a claim against the Fund under Section 502(a)(1)(B) of ERISA.  *Psychiatric Inst. of Wash., D.C.,* 780 F. Supp. at 30 (health care provider that is an assignee of a participant's benefit has derivative standing to sue under ERISA).  As explained below, however, even if Children's National Medical Center stands in Defendant Hicks' shoes as an assignee of his benefits, Plaintiffs' claim for benefits from the Fund fails as a matter of law.

### A.    Plaintiffs' Failed To Exhaust Their Administrative Remedies Under The Plan

Although ERISA itself does not specifically require the exhaustion of remedies available under employee benefit plans, it is well-settled that before filing a suit for benefits under an ERISA-governed employee benefit plan, claimants must exhaust their administrative remedies by filing a claim for the benefits through the claim and review process provided by the plan.  *See e.g., Communications Workers of America v. American Tel & Tel. Co.,* 40 F.3d 426 (D.C Cir. 1994); *Diaz v. United Agr. Employee Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995); *Kennedy v. Empire Blue Cross and Blue Shield* , 989 F.2d 588, 593 (2d Cir. 1993); *Medina v. Anthem Life Ins. Co*., 983 F.2d 29, 33 (5th Cir. 1993); *Smith v. Blue Cross & Blue Shield United of Wisc*., 959 F.2d 655, 658-59 (7th Cir. 1992); *Baxter v. C.A. Muer Corp*., 941 F.2d 451 (6th Cir. 1991); *Springer v. Wal-Mart Associates' Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990); *Weldon v. Kraft, Inc*., 896 F.2d 793, 800 (3d Cir. 1990); *Makar v. Health Care Corp*., 872 F.2d 80, 83 (4th Cir. 1989).

The D.C. Circuit expressly requires exhaustion of administrative remedies.  *See Communications Workers of America v. AT&T*, 40 F.3d 426, 431-32 (D.C. Cir. 1994) ("It is well established that, barring exceptional circumstances, plaintiffs seeking a determination pursuant to ERISA of rights under their [employee benefit] plans 'must ... exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court.'").  The Court of Appeals described the rationale for the ERISA exhaustion requirement as follows:

> much like the exhaustion doctrine in the context of judicial review of administrative agency action, the exhaustion requirement in the ERISA context serves several important purposes.  By preventing premature

judicial interference with a pension plan's decisionmaking processes, the exhaustion requirement enables plan administrators to apply their expertise and exercise their discretion to manage the plan's funds, correct errors, make considered interpretations of plan provisions, and assemble a factual record that will assist the court reviewing the administrator's actions.

*Id.* at 432.

Here, the Fund's SPD specifically informs claimants of their right under section 502(a) of ERISA to file suit in federal court, but only *after* the claimant has (1) submitted a written claim for benefits, (2) been notified that the claim is denied, (3) filed a timely written request for a review of the claim, and (4) been notified in writing that the denial of the claim has been affirmed on appeal.  (Mele Dec., ¶ 8 and Ex. 2.).  To the extent that Children's National Medical Center "stands-in-the-shoes" of Defendant Hicks, it too must follow the claims and appeal procedure prescribed in the SPD *before* seeking judicial intervention.

In the First Amended Complaint, Plaintiffs allege that Children's National Medical Center "filed a claim with the Fund for payment, and otherwise complied with all conditions precedent."  (Am. Compl. ¶ 13).  Assuming, arguendo, that submission of a bill constitutes a claim for benefits under the Plan, nonpayment means that Plaintiffs were obligated to file a written request for a review by the Fund's Board of Trustees before going to court.  They did not.  (Mele Dec. ¶ 9.).  Because Plaintiffs failed to appeal the non-payment of the bill, Plaintiffs' claim for benefits should be dismissed for failing to exhaust administrative remedies.

**B.**      **In Any Case, Plaintiffs Are Not Entitled To Benefits Because Defendant Hicks Failed To Provide The Fund With a Completed Subrogation Agreement, As Required By the Fund's SPD**

Defendant Hicks' dependent son, Todd Hicks, Jr., was injured in a motor vehicle accident and a third party has accepted responsibility in connection with the accident. (Mele Dec. ¶ 7.).  As an assignee of Defendant Hicks' benefits under the Fund, Children's National Medical Center is entitled to no more than the benefits available to Defendant Hicks under the terms of the Fund's plan of benefits.  *See* 29 U.S.C. § 1132(a)(1)(B).  Those terms are discussed in the Fund's SPD.  Specifically, the Fund's SPD provides that the Fund will cover certain hospitalization charges and other medical costs incurred by participants and their eligible dependents who are injured, but that coverage is conditional.  In cases where a third party is responsible for causing the participant's or participant's dependent's injuries – such as the case here – the SPD contains a specific and unambiguous condition to providing covered benefits.  (Mele Dec. ¶ 4 and Ex. 2 at p.75-76.).  The SPD provides that the Fund "will provide covered benefits" to a participant or dependent for "injur[ies] caused by the action or inaction of another person or party" only if the participant agrees to repay the Fund "from any settlement, judgment or Workers' Compensation recovery [the participant or] dependent[] may receive."  (Mele Dec. ¶ 4 and Ex. 2 at p. 76.).  The participant is "required to sign a form that acknowledges the Fund's right to be reimbursed and verifies that 'the participant' will help the Fund secure its rights."  (Mele Dec. ¶ 4 and Ex. 2 at p. 76.).  Significantly, "[t]he form must be completed before the Fund will make payments on [the participants or participant's] dependent's behalf."  (Mele Dec. ¶ 4 and Ex. 2 at p. 76.).  The Trustees of the Fund interpret the cited language of the SPD to require a

participant's attorney to also sign the subrogation form in the spot designated for the attorney's signature before the form is deemed "completed."[7]  (Mele Dec. ¶ 5.).  In this case, Defendant Hicks' attorney either failed or refused to sign the subrogation form. (Mele Dec. ¶ 6.).  Because Defendant Hicks failed to comply with the SPD and provide the Fund with a *completed* subrogation agreement (i.e., one signed by his attorney recognizing the Fund's right to reimbursement in the event of a tort recovery), the Fund properly refused to pay Children's National Medical Center for the medical services provided to Todd Hicks, Jr.  (*See* Mele Dec. ¶ 7.).

Accordingly, to the extent that Plaintiffs' claims against the Fund are re-characterized as claims for benefits under Section 502(a)(1)(B) of ERISA, the unambiguous terms of the plan documents govern Plaintiffs' right of recovery.  Those terms required the Fund to deny coverage of the services provided by Children's National Medical Center to Todd Hicks, Jr., and they require the Court to deny Plaintiffs' claims

---

[7] The Trust Agreement for the Fund reserves to the Board of Trustees complete discretion to interpret the terms of the plan of benefits.  (Mele Dec. Ex.1 at Section 5.3 and Ex. 2 at p. 91.).  Accordingly, the Trustees' interpretation of the plan's requirements may not be questioned unless the interpretation is arbitrary and capricious as a matter of law.  *See Block v. Pitney Bowes, Inc*., 952 F.2d 1450 (D.C Cir. 1992).  Plaintiffs cannot show that the above-referenced interpretation is arbitrary and capricious as a matter of law.

for benefits from the Fund.  Plaintiffs' claims against the Fund, accordingly, fail as a matter of law.

## CONCLUSION

Plaintiffs' claims against the Fund for breach of contract, breach of duty of good faith and fair dealing, quantum meruit, misrepresentation and/or fraud, and alter ego are completely preempted by ERISA.  Alternatively, Plaintiffs' claims must be dismissed as time-barred or otherwise failing to state claims upon which relief can be granted.  To the extent the claims are re-characterized as claims for benefits under Section 502(a)(1)(B) of ERISA, the claims fail because (1) Plaintiffs' failed to exhaust their administrative remedies under the Plan; and (2) the Fund's SPD requires coverage denial in cases such as this, where a third party is responsible for the participant's dependent's injuries and the participant fails to complete a subrogation agreement.  Pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, Rule 56, Plaintiffs' claims against the Fund should be dismissed in their entirety, with prejudice.

Date: March 1, 2006                                    Respectfully submitted,


                              _____/s/_____
                              Donald L. Havermann (D.C. Bar No. 337774)
                              Bridgit M. DePietto (D.C. Bar No. 496400)
                              MORGAN, LEWIS & BOCKIUS LLP
                              1111 Pennsylvania Avenue, N.W.
                              Washington, D.C.  20004
                              202.739.3000 (Telephone)
                              202.739.3001 (Facsimile)
                              dhavermann@morganlewis.com
                              bdepietto@morganlewis.com

                              Attorneys for Defendant Teamsters Local
                              639 – Employers Health Trust Fund

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY, on this 1st day of March 2006, that a copy of the foregoing

Memorandum of Points and Authorities in Support of Defendant Teamsters Local 639 –

Employers Health Trust Fund's Motion to Dismiss or, in the Alternative, for Summary

Judgment was served on the following by the means indicated:

Via Certified Mail, Return Receipt Requested:

    Todd Hicks
    1011 Red Maple View Terrace
    Churchton, MD 20733

    Defendant Hicks

Via First Class Mail, postage pre-paid:

    L. Bradley Hancock
    Greenberg Traurig, LLP
    1000 Louisiana, Suite 1800
    Houston, TX 77002

    Kenneth P. Kaplan
    Greenberg Traurig, LLP
    800 Connecticut Avenue, NW, Suite 500
    Washington, DC 2006

    Attorneys for Plaintiffs Children's National
    Medical Center and Benefit Recovery
    Specialists, Inc.

Via First Class Mail, postage pre-paid:

    Local Union No. 639, Building, Inc. d/b/a
    International Brotherhood of Teamsters,
    Local 639 and d/b/a Local 639
    3100 Ames Place, N.E.
    Washington, DC 20018

    Named Local 639 Defendant

          /s/
          Bridgit M. DePietto