## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CHILDREN'S NATIONAL MEDICAL CENTER<br>111 Michigan Avenue, N.W.<br>Washington, DC 20010<br><br>&<br><br>BRSI, L.P. d/b/a BENEFIT RECOVERY SPECIALISTS<br>1100 North Loop West, Suite 1000<br>Houston, Texas 77008<br><br>Plaintiffs,<br><br>v.<br><br>TODD HICKS, INDIVIDUALLY, AND ON BEHALF OF TODD HICKS, JR., DECEASED,<br>1011 Red Maple View Terrace<br>Churchton, Maryland 20733<br><br>&<br><br>LOCAL UNION NO. 639, BUILDING, INC. d/b/a INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 639 and d/b/a LOCAL 639<br>3100 Ames Place, N.E.<br>Washington, DC 20018<br><br>&<br><br>LOCAL UNION NO. 639, BUILDING, INC. d/b/a INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 639 d/b/a Local 639 - Employer's Health Trust Fund<br>3100 Ames Place, NE<br>Washington DC 20018<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | No. 06-0317RJL |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION TO DISMISS OR,
<u>IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>
AND
PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
<u>IN SUPPORT OF MOTION TO REMAND</u>
AND
IN THE ALTERNATIVE, PLAINTIFFS' MEMORANDUM OF POINTS AND
<u>AUTHORITIES IN SUPPORT OF MOTION FOR CONTINUANCE</u>**

Pursuant to Rule 7, LCvR, Children's National Medical Center ("Children's") and

Benefit Recovery Specialists, Inc. ("BRSI") (collectively "Plaintiffs") file this Memorandum of

Points and Authorities in Opposition to Defendant Local Union No. 639, Building, Inc. d/b/a

International Brotherhood of Teamsters, Local 639 and d/b/a Local 639 - Employer's Health

Trust Fund's ("Health Fund") Motion to Dismiss or, in the alternative, for Summary Judgment

("Motion to Dismiss"). In conjunction with this Opposition, Plaintiffs file a Memorandum of

Points and Authorities in Support of their Motion to Remand. In the alternative, Plaintiffs file a

Memorandum of Points and Authorities in Support of their Motion for Continuance of the

District Court's resolution of the Motion to Dismiss.

## I.
## PROCEDURAL HISTORY

On January 12, 2006, Plaintiffs filed their Original Complaint against Defendants Todd

Hicks, Individually, and on behalf of Todd Hicks Jr., Deceased (collectively the "Hicks

Defendant" unless noted otherwise), and Local Union No. 639, Building, Inc. d/b/a International

Brotherhood of Teamsters, Local 639 and d/b/a Local 639 ("Local 639") in the Superior Court

for the District of Columbia. On February 3, 2006, Plaintiffs filed their First Amended

Complaint and a Motion for Leave seeking to add the Health Fund as a Defendant along with an

additional theory of recovery based on alter ego. *See* **Exhibit A** ("Plaintiffs' First Amended

Complaint"), which is incorporated here by reference.

2

The Health Fund filed its Notice of Removal with the Superior Court of the District of Columbia on or about February 23, 2006. Six days later, on March 1, 2006, prior to the commencement of discovery and before the initial scheduling conference, the Health Fund filed it Motion to Dismiss and Memorandum of Points and Authorities in Support of its Motion to Dismiss, or in the Alternative, Motion for Summary Judgment ("Defendant's Motion"). Under separate cover, for good cause shown, Plaintiffs now also file their Motion for Leave to file Plaintiffs' Second Amended Complaint and Second Amended Complaint. *See* **Exhibit B** ("Plaintiffs' Second Amended Complaint"), which is incorporated here by reference.

## II.
## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     On or about January 12, 2003, Todd Hicks, Jr., a minor, was in a serious automobile accident that required immediate medical care. *See* **Exhibit A**, ¶ 11. Todd Hicks, Jr. entered Children's National Medical Center for medical care relating to his injuries. *See* **Exhibit A**, ¶ 11. Todd Hicks, Jr. remained in the hospital from January 12, 2003 until his untimely death, which occurred on or about January 14, 2003. *See* **Exhibit A**, ¶ 11. Throughout this period, at the special request of the Defendants and in accordance with an agreement between Children's and the Defendants' managed care agent, Children's provided necessary medical care, services, and goods to Todd Hicks, Jr. in connection with his care and treatment. *See* **Exhibit A**, ¶¶s 11-12; **Exhibit C** (Declaration of Lester Poris), ¶¶s 2-3; **Exhibit D** (a true and correct selection from the billing section of Children's contract with Alliance/MAPSI); **Exhibit E** (a copy of the Alliance contract with Local 639), all of which are incorporated here by reference.

2.     Todd Hicks, Jr. was covered through a health insurance policy issued by Local 639 through the Health Fund to his father, Todd Hicks. *See* **Exhibit B**, ¶ 14; **Exhibit C,** ¶¶s 2-3. Local 639 and the Health Fund, either directly or indirectly through their agent (Alliance PPO/ or

3

MAMSI, "Alliance/MAMSI" hereinafter), had a contract with Children's ("Alliance/MAMSI Agreement"), in which Local 639 and the Health Fund were required to pay for covered services rendered to members of the Health Fund in accordance with a set fee schedule. *See* **Exhibit B**, ¶¶s 13-14; **Exhibit C**, ¶¶s 2-3; **Exhibit D**; **Exhibit E**. The Hicks were policy holders under the Local 639 insurance policy. *See* **Exhibit B**, ¶ 14. In fact, upon Todd Hicks, Jr.'s admission to Children's National Medical Center, Alliance/MAMSI, on Local 639 and the Health Fund's behalf, pre-certified Todd Hicks, Jr. as being covered under the health insurance policy, authorized Children's to provide medical care and services to him, and agreed to pay Children's for the care, services, and goods provided pursuant to the Alliance/MAMSI Agreement. *See* **Exhibit B**, ¶ 14; **Exhibit C**, ¶¶s 2-3.

### *Children's Pursuit for Payment:*

3.    After providing care, services, and goods to the Hicks Defendant, as required by Children's agreement with Alliance/MAMSI and in reliance on the Defendants' agent's promise of payment, Children's sent Alliance/MAMSI bills for the care, services, and goods provided in accordance with the Alliance/MAMSI Agreement. *See* **Exhibit B**, ¶ 15; **Exhibit C**, ¶ 4; **Exhibit D**; **Exhibit E**. The total amount due for the services at that time was approximately $88,595.95. *See* **Exhibit C**, ¶ 13. Children's filed a claim with Alliance/MAMSI for payment, and otherwise complied with all conditions precedent to the Alliance/MAMSI Agreement. *See* **Exhibit B**, ¶ 15; **Exhibit C**, ¶ 4; **Exhibit D**; **Exhibit E**. However, while Children's complied with all conditions precedent, neither Local 639, the Health Fund nor the Hicks Defendant initially responded with any payment. *See* **Exhibit B**, ¶ 15; **Exhibit C**, ¶¶s 7, 13. Instead, Local 639 through the Health Fund, eventually (on August 13, 2003) responded to the claim submitted to Alliance/MAMSI and informed the hospital that additional details and/or forms were required

before payment could be made and that payment was not yet due. *See* **Exhibit B**, ¶ 15; **Exhibit C**, ¶ 5.

4.      Children's followed up with the Hicks Defendant and Local 639 (or the Health Fund, which held itself out to Children's as "Local 639") to voluntarily comply with Local 639's requests for additional information. *See* **Exhibit B**, ¶ 16; **Exhibit C**, ¶ 5. However, in spite of Children's best efforts, none of the Defendants made any of the requested payments and payment was eventually *in*formally denied on May 31, 2005, subject to Children's ability to force Hicks' personal attorney to sign a subrogation (in addition to Mr. Hicks' signature). *See* **Exhibit B**, ¶ 16; **Exhibit C**, ¶ 13. This was the first time Children's was informed that its claim had been informally denied and it was the only basis, albeit vague, provided to Children's for denying the claim. *See* **Exhibit C**, ¶¶s 10-12.   As of the date of this filing, Children's has never received a written denial of its claim. *See* **Exhibit C**, ¶ 12.

5.      Children's then contracted with Plaintiff BRSI, as its agent to present the claims to the Defendants and to recover the benefits wrongfully withheld by the Defendants. *See* **Exhibit B**, ¶ 17. Instead of making any payments, both the Hicks Defendant and the Local 639 through the Health Fund, individually and through their counsel, maintained that additional documents were needed before payments would be due or paid, even though Childrens' could not force Mr. Hick's attorney to provide the document requested (signed by him personally as Mr. Hicks' counsel). *See* **Exhibit B**, ¶ 17; **Exhibit C**, ¶¶s 5-6, 9. At the same time, while contending that no payment would be made until or unless Mr. Hicks' attorney signed the subrogation form, the Defendants failed and refused to assist Children's in obtaining compliance with their futile request. *See* **Exhibit B**, ¶ 17; and **Exhibit C** ¶ 11.

6.      As a result of the Defendants' conduct, Plaintiffs were forced to bring suit against all Defendants for payment of the medical care, services, and goods provided to Todd Hicks, Jr. under the Service Agreement. *See* **Exhibit B, ¶ 18; Exhibit D; Exhibit E**. It is undisputed that Children's provided the care, that the care was appropriate and necessary, and that Children's charges for the care were appropriate and reasonable. Instead, Local 639 and the Health Fund contend that before payment will be made, Children's must obtain something that it cannot obtain -- a subrogation signed by Mr. Hicks' attorney (when he refuses to sign such a document), when Mr. Hicks' attorney is unquestionably beyond Children's control.

*The Alliance/MAMSI Agreement:*

7.      The Health Fund's Motion neglects to mention, let alone address, the Alliance/MAMSI Agreement which forms the basis of the claims in this matter. Instead, Defendant's Motion focuses its attention on an alleged assignment of health care benefits (as a first step to justify non-payment on the basis of its alleged "attorney signature" requirement). Without addressing the merits of the assignment, Plaintiffs elected, as they have the right to do, to assert their claim against the Health Fund based solely on the Alliance/MAMSI Agreement, which is a contract separate and apart from the Health Fund Plan. Since Plaintiffs' claims arise under the Alliance/MAMSI Agreement, ERISA[1] does not govern, control, or preempt the Alliance/MAMSI Agreement. The Alliance/MAMSI Agreement, instead, is governed or controlled by ordinary state contract law principles. Accordingly, Defendant's Motion is off point and does not address the breach of contract cause of action asserted under the Alliance/MAMSI Agreement. Since Plaintiffs' claims are for breach of contract and/or misrepresentation/fraud relating to the Alliance/MAMSI Agreement and the Plaintiffs' reliance

---

[1] Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1101.

6

on Defendants' agents' pre-certification of coverage under the Alliance/MAMSI Agreement, and

because they are not time barred, Defendants' Motion should be denied as further stated below.

### III.
### IN THE ALTERNATIVE, A MOTION FOR CONTINUANCE IS APPROPRIATE SINCE PLAINTIFFS HAVE NOT HAD AN OPPORTUNITY TO CONDUCT DISCOVERY

8.      When presented with a FED. R. CIV. P. 12(b)(6) motion, a district court must take

as true "the well-pleaded facts as they appear in the complaint, extending [the] plaintiff every

reasonable inference in his favor." *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 34 (1st

Cir. 2002) (citations omitted).   A complaint should not be dismissed under 12(b)(6) unless it

appears *beyond doubt* that the plaintiff can prove *no set of facts* in support of his claim which

would entitle him to relief. *Id.* (citations omitted). The facts previously recited and those facts

contained in Plaintiffs' Complaint justify a denial of Defendant's Motion because they support a

breach of contract claim, amongst other claims, against the Health Fund and because the claims

are not barred by limitations.

9.      However, Defendant's Motion, in reality, is more appropriately considered a

Motion for Summary Judgment. *See* FED. R. CIV. P. 12(b) ("If, on a motion asserting the defense

numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be

granted, matters outside the pleading are presented to and not excluded by the court, the motion

shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all

parties shall be given reasonable opportunity to present all material made pertinent to such a

motion by Rule 56"). The Health Plan's Motion presents and refers to a declaration, a Summary

Plan Description alleged to be the Health Plan's ERISA plan in place at the time of the care

provided, and other matters outside the pleadings. It should therefore be considered a Motion for

Summary Judgment under FED. R. CIV. P. 56. *See* FED. R. CIV. P. 12(b).

10.    After adequate time for discovery has passed, the court may grant summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552 (1986). However, Courts are reluctant to grant fact-based summary judgment motions early in the case, before discovery is completed. *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). In spite of this, however, the Health Fund has produced documents and declaration testimony for the Court to consider, without first having given the parties time for discovery (and before the Local 639 Defendant has made any appearance).

11.    Pursuant to FED. R. CIV. P. 56(f), a non-movant may request additional time for discovery to respond to a motion for summary judgment. Rule 56(f) motions should be granted "almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995). Plaintiffs request a continuance to be able to conduct discovery on the claims asserted and to give Plaintiffs ample opportunity to discover additional facts relating to Defendants' defenses.

12.    It is undisputed that Plaintiffs have not had the opportunity to conduct any discovery in this matter. Plaintiffs filed their First Amended Complaint and a Motion for Leave seeking to add the Health Fund on February 3, 2006, approximately 5 weeks ago. *See* **Exhibit A** ("Plaintiffs' First Amended Complaint"). The first time the Health Fund filed a pleading in this case was when the Health Fund filed its Notice of Removal on February 22, 2006, less than 3 weeks ago. The Health Fund then almost immediately filed its Motion to Dismiss (or in the alternative, Motion for Summary Judgment) on March 1, 2006, less than 2 weeks ago. Needless to say, Plaintiffs have had no time to conduct discovery of the multiple issues asserted by the Health Fund in its Motion or on any of the claims asserted. As a result, a delay in the Court ruling on the Motion to Dismiss (or in the alternative, Motion for Summary Judgment) would be

appropriate, so that Plaintiffs could conduct discovery. A continuance would also be in accord with providing Plaintiffs, as justice permits, an opportunity to conduct appropriate discovery on their claims and to adequately prepare a further response to Defendant's motion and summary judgment evidence.

## IV.
## ARGUMENT

### A.  PLAINTIFFS' CLAIMS ARISE AS A RESULT OF AN AGREEMENT BETWEEN THE PARTIES AND THUS ARE NOT PREEMPTED.

13.    Plaintiffs' claim against the Health Fund is based on an agreement it, along with the Health Fund, entered into with Alliance PPO, also sometimes referred to as MAMSI. *See* **Exhibit B**, ¶¶s 13-14; **Exhibit C**, ¶¶s 2-3; **Exhibit D**; **Exhibit E**. Alliance organizes a network of hospitals and other health care providers that have agreed to accept discounted payments from Alliance or its contracted companies (like Local 639 and the Health Fund) for medical services provided to beneficiaries of group health insurance in return for the insurance companies' use of the network hospitals and providers. *See* **Exhibit D**; **Exhibit E.**

14.    Alliance entered into such an arrangement with both the Health Fund and Children's. *See* **Exhibit C**, ¶¶s 2-5; **Exhibit D**; **Exhibit E.** The Alliance/MAMSI Agreement governs payments, and in this case, payments made by the Health Fund to Children's after they are pre-certified and process by Alliance. *See* **Exhibit C**, ¶ 5; **Exhibit D**; **Exhibit E.** In return, Children's provides the Health Fund, as it does other insurance plans within the Alliance/MAMSI network, a discounted rate for such goods and services in accordance with a

predetermined fee schedule. *See* **Exhibit C, ¶ 4; Exhibit D; Exhibit E**. This is the basis for Children's claim against the Health Fund.[2]  *See* **Exhibit B, ¶ 18**.

15.     The claim under the Alliance/MAMSI Agreement is not a claim that Children's could have asserted under ERISA and it is not pre-empted by ERISA. *See Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393 (3d Cir. 2004) (Justice Alito concurring), *cert. denied* 126 S.Ct. 336, 163 L.Ed.2d 48 (Oct 3, 2005) (holding that claim for breach of a subscriber agreement between the hospital and the plan, which alleged that the plan improperly calculated payments for services rendered to beneficiary, was not completely preempted by § 502). In other words, the Court held that the hospital's claims were not preempted because the state law claims were based on a legal duty independent of ERISA -- in this case, the interpretation of a network provider agreement between the Union health plan and an independent organizer of network hospitals, MagNet, Inc., where Pascack Valley Hospital was a third-party beneficiary of a provider agreement, very much like the Alliance/MAMSI Agreement. *Id.* at 402.

16.     The relevant facts in *Pascack* mirror the facts here in many respects. Pascack entered into a "Network Hospital Agreement" with MagNet. *Id.* at 396. MagNet organizes a network of hospitals that have agreed to accept discounted rates for medical services provided to beneficiaries of group health plans in return for the plans' promise to encourage beneficiaries to use network hospitals. *Id.* The Union health plan was one of these plans that entered into a subscriber agreement with MagNet. *Id.* In the "Subscriber Agreement," the Union health plan agreed to pay network hospitals for covered services provided to eligible persons within thirty

---

[2] Although Children's had initially alleged the existence of both the Alliance/MAMSI Agreement along with an assignment of benefits under Hick's medical plan, upon further investigation, Children's has discovered that no assignment from Mr. Hicks is in its records. *See* Exhibit C at 12. In conjunction with this Opposition, Children's also files a Motion for Leave to file its Second Amended Complaint adding Todd Hick, Jr.'s mother as a Defendant and clarifying the lack of an assignment.

(30) days of receipt of submitted claims. *Id.* The Union health plan also acknowledged in the "Subscriber Agreement" an obligation to pay within this time period, otherwise the Union health plan would lose its benefit of the MagNet discounted reimbursement rate and the hospital could then bill and collect its customary rate for the services rendered. *Id.*

17.    In 1999, Pascack provided covered medical services to Kimberly Rovetto and Betty Psaras both of whom were eligible persons under the "Subscriber Agreement." *Id.* The hospital in *Pascack* filed suit in state court, however, when the Union health plan failed to promptly pay these claims within the thirty (30) days of receipt of the claims. *Id.* The Union health plan removed the case to Federal District Court and then moved for summary judgment asserting that the hospital's claim in *Pascack* was preempted by ERISA. *Id.* at 397. The Third Circuit reversed the District Court and held that the "Subscriber Agreement" was **not** preempted by ERISA. *Id.* at 402. As a result, the Third Circuit remanded the case to state Court based on its finding that the hospital's complaint in *Pascack* did not present a federal question and thus removal of the case was inappropriate. *Id.* at 404. In his concurring opinion in *Pascacj*, Justice Alito indicated that even if there had been a valid assignment to the hospital by the participant under the ERISA plan, ERISA would still not preempt the hospital's claims.[3]    Pursuant to *Pascack*, Plaintiffs' claims are not preempted and dismissal (under 12(b)(6) or through summary judgment) is inappropriate.

---

[3] Although Justice Alito found ample evidence to support a finding that the claims had been assigned to the hospital, he nonetheless concurred in the judgment. *Id.* at 404-05. This reasoning is consistent with *Children's Hosp. Corp. v. Kindercare Learning Center, Inc.*, where the District Court held that the Hospital could disregard its assignment claim and instead pursue its claim for breach of a service agreement. *Id.* 360 F.Supp.2d 202, 206 (D.Mass. 2005).

       i.      **Plaintiffs Have Elected to Assert Their Claims Under the Alliance/MAMSI Agreement.**

      18.    Plaintiffs have elected, as they have the right to do, to assert their claims solely under the Alliance/MAMSI Agreement and not under §502 of ERISA. *See* **Exhibit B,** ¶ 18; *see also Children's Hosp. Corp. v. Kindercare Learning Center, Inc.*, 360 F.Supp.2d 202, 206 (D.Mass. 2005). *Children's Hospital* had an assignment of benefits from the participant of an employee health care plan and thus was entitled to sue under §502 as an assignee, but decided not to pursue such a claim as it was entitled to do. *Id.* "The fact that *Children's Hospital* could have sued as an assignee is not the test for complete preemption. As a matter of its own complaint, *Children's Hospital* had the right to assert independent causes of action regardless of the assignment." *Id.* at 207. Instead of explicitly asserting a claim under ERISA, *Children's Hospital* decided to assert claims against the plan, Blue Cross, based on the breach of a service agreement. *Id.* at 206. The Court held that the "breach of contract claim by the third party provider does not involve the ERISA plan, but an independent contract between the two entities." *Id.*; *see also Baylor Univ. Medical Center v. Epoch Group, L.C.*, 340 F.Supp.2d 749, 759 (N.D.Tex. 2004) (holding that a state contract claim by a health care provider under a service agreement was not preempted). As in *Children's Hospital* and *Epoch Group, L.C.,* this case involves a service agreement between the parties and Alliance PPO. Furthermore, even if Children's had an assignment from Mr. Hicks, Sr., which it has determined it did not, its claims would still not be preempted. *Id.; and see Pascack, Id.* at 404-05. As a result, the Court should not preempt Plaintiffs' claims under ERISA.

ii.    **Plaintiffs Do Not Have Standing to Prosecute Their Claim for Breach of the Service Agreement Under ERISA.**

19.    Plaintiffs do not have standing to prosecute their claim for breach of the Alliance/MAMSI Agreement under §502(a) of ERISA, which is distinct from ERISA. Section 502(a) allows a "participant or beneficiary" to bring suit to, amongst other things, "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiffs sue under the Alliance/MAMSI Agreement, which is not an ERISA plan and is not an ERISA preempted agreement. A participant is defined as any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type form an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit. 29 U.S.C. § 1002(7). A beneficiary is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

20.    The test for determining whether a cause of action is preempted by ERISA was set forth by the Supreme Court in *Aetna Health, Inc. v. Davila*, as follows:

> If an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan is violated, then the suit falls within the scope of ERISA § 502(a)(1)(B). In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's action is completely pre-empted by ERISA § 502(a)(1)(B).

542 U.S. 200, 210, 124 S.Ct. 2488, 2496 (2004) (citation omitted).

21.    In relying on Alliance/MAMSI's promise of payment on behalf of Local 639 and the Health Fund, Children's provided services to Todd Hicks, Jr. and agreed to accept payment from the Health Fund and/or Local 639 for services rendered to their subscribers according to a specified fee schedule contained in the Alliance/MAMSI Agreement. *See* **Exhibit C**, ¶ 4; **Exhibit D**; **Exhibit E.** Children's claims arise from the Alliance/MAMSI Agreement and could not be asserted by their patients, are not claims for benefits under the terms of ERISA plans, and thus do not fall within § 502(a)(1)(B). *See Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc.*, 187 F.3d 1045, 1050 (9th Cir. 1999). The court in *Anesthesia Care* held that claims asserted by health care providers against a health care plan for breach of their provider agreements were not pre-empted, regardless of the fact that beneficiaries of ERISA covered plans had assigned their rights to reimbursement to the health care providers. *Id.* at 1050-52. The dispute in *Anesthesia Care* was "not over the right to payment, which might be said to depend on the patients' assignments to the Providers, but the amount, or level, of payment, which depends on the terms of the provider agreements." *Id.* at 1051.

22.    Since the Hicks Defendant requested and received, and Children's agreed to provide, in accordance with the Alliance/MAMSI Agreement, medical care, services, and goods, the parties had a contract for medical care which is governed by the Alliance/MAMSI Agreement. *See* **Exhibit B**, ¶¶s 13-14; **Exhibit C**, ¶¶s 2-5; **Exhibit D**; **Exhibit E**. The Defendant's Motion, however, fails to address or distinguish the Alliance/MAMSI Agreement between the parties and, as the authorities above indicate, the claims under the Alliance/MAMSI Agreement are not preempted. As such, Defendant's Motion should be denied.

**B.    PLAINTIFFS CLAIMS FOR BREACH OF THE Alliance/MAMSI AGREEMENT ARE WELL WITHIN THE STATUTE OF LIMITATIONS AS A CAUSE OF ACTION FOR BREACH OF CONTRACT ACCRUES WHEN THERE IS A BREACH OF CONTRACT.**

23.     The Health Fund ignores well established District of Columbia law when it argues that the statute of limitations on this claim has expired or that it has run.  While the Health Fund is correct that this matter is governed by the three year period provided by D.C. Code § 12-301(7), no case or statute supports the contention that the three year period runs from the date that medical care was provided.  Instead, an action for breach of contract accrues only once the contract is breached.  *National R.R. Passenger Corp. v. Lexington Ins. Co.*, 357 F.Supp2d. 287, 293 (D.D.C. 2005).  An insurance contract, for example, is only breached when an insured party receives notice that a claim has been denied.  *Id.*; *see also Partnership Placements, Inc. v. Landmark Ins. Co.*, 722 A.2d 837, 841 (D.C. Cir. 1998); *Dillard v. Travelers Ins. Co.*, 298 A.2d 222, 224 (D.C. Cir. 1972).  Therefore, the three year period began to run against the Health Fund only once Children's received notice that the Health Fund would not abide by the contract and pay the medical expenses.

24.     In the present case, Children's claim accrued on May 31, 2005, the date on which Children's received notice that the Health Fund denied Children's' claim and thereby breached the Alliance/MAMSI Agreement.  *See* **Exhibit B**, ¶ 16; **Exhibit C**, ¶ 11.  There is a genuine issue of material fact as to the accrual of the limitations period.  The Health Fund's argument that the breach occurred when Mr. Hicks, Jr. was admitted to Children's and was pre-certified is without any basis in fact or law.  It is undisputed that the breach did not occur upon Mr. Hicks' admission to the hospital or upon his death.  The breach here was not Local 639 or the Health Fund's *agreement* (through Alliance/MAMSI) to cover Todd Hicks' Jr.'s medical expenses, but rather the Health Fund's or Local 639's May 31, 2005 *refusal* to pay for the agreed medical

expenses, which occurred on May 31, 2005, the date on which Children's was informally notified that its claim was denied on the trumped up basis that Mr. Hicks Sr.'s attorney would not personally sign a subrogation agreement.[4]  *See* **Exhibit B**, ¶ 16; **Exhibit C**, ¶ 11.

25.    The Health Plan claims, without the support of any legal authority, that the statute of limitations accrued on January 14, 2003, the last date that Children's provided medical services.  The Health Plan fails to offer any explanation as to the significance of this date because in the context of accrual of the statute of limitations this date has no legal significance. The Alliance/MAMSI Agreement was breached, at the earliest, on May 31, 2005 when Defendants provided oral notice that it was denying Children's claim until it received the signed subrogation form from Mr. Hicks Sr.'s attorney.  *See* **Exhibit B**, ¶ 16; **Exhibit C**, ¶ 11.  Because this lawsuit was filed less than three years after this date, the lawsuit is timely and Defendant's Motion should be denied.

C.    ALTER EGO.

26.    As indicated above, Fed.R.Civ.P. 56(f) discovery is needed in this matter since the Health Fund's motion constitutes a motion for summary judgment.  Additional discovery is also needed on Plaintiff's alternative alter-ego theory of recovery.[5]  The Plaintiffs allege alter-ego in this matter since, at least with their interactions with the hospital, the line between Local 639 and the Health Fund as distinct legal entities was not clearly marked and Plaintiffs want to avoid injustice.

---

[4] In the alternative, the earliest point at which limitation could have conceivably begun to run was on August 13, 2003, the date of the Explanation of Benefits.  However, the Health Fund did not deny coverage or breach the Alliance/MAMSI Agreement at that time, *See* **Exhibit C**, ¶ 6, instead the Health Fund requested additional information prior to payment. the denial did not occur, if at all, until May 31, 2005, when the Health Fund's attorney for the first time indicated the claim was denied and even then, expressly indicated that payment would be made if Children's could convince, Mr. Hicks Sr.'s attorney, Mr. Thrower to sign the subrogation form.  *See* **Exhibit C**, ¶ 11.

[5] To the extent the Health Fund is willing to stipulate that (1) it is the appropriate entity to be sued in this matter; (2) that the Health Fund is responsible for all communications with Children's; and (3) that it is adequately capitalized, Plaintiffs will waive their alter ego theory of recovery against Local 639.

27.    As the case law suggests, "alter-ego" refers to a judicially imposed exception to the principle of limited liability by which a Court can disregard the separateness of an entity and hold its parent or affiliate entity responsible for its action as if it were its own.  Generally, a "piercing claim," another reference for an alter-ego claim, is a theory of recovery to allow the recovery of a judgment against a parent or affiliate entity.  Piercing and/or alter-ego claims are asserted against parents or affiliate entities where justice so requires.  Specifically, in *In re Capital Hill Healthcare Group d/b/a Capital Hill Nursing Center*, 242 B.R. 199 (Bankr. D.C. 1999), the Court indicated that declaring an entity to be an alter ego of another entity is available "as the justice of the case may require and to avoid injustice."  *Id.*  Piercing the corporate veil, in other words, is a device for which "the ultimate principle is one permitting its use to avoid injustice" or to avoid a perversion of the truth.  *Id.*

28.    The Health Fund and Local 639 Defendants were named as d/b/a's in the First Amended Complaint because neither of these Defendants are registered to do business in the District of Columbia under the names the Health Fund refers to in its brief.  Specifically, a diligent review of the District of Columbia records indicates that neither Local 639 *nor* the Health Fund are registered to do business in the District of Columbia under the names "Teamsters Union Local 639" or "Teamsters Local 639 - Employers Health Trust Fund".  While so long as the Health Fund is adequately capitalized for purposes of a judgment against it Plaintiffs may elect not to pursue Local 639, for purposes of this Opposition, until after adequate time for discovery has been allowed to develop their claims and in the interest of justice, Plaintiffs ask the Court to take judicial notice of the lack of corporate filings within the District of Columbia as to Teamsters Union Local 639 or Teamsters Local 639 - Employers Health Trust Fund and their apparent failure to follow corporate formalities in the District.

29.    As indicated in the Declaration of Lester Poris, when Local 639 and/or the Health Fund representatives, the identity of which will be determined through discovery, spoke with Children's, they referred to their entities globally as "Local 639", an apparent d/b/a for both entities. The alter-ego theory of recovery is alleged to prevent Local 639 and/or the Health Fund from benefiting from their failure to identify themselves, avoiding judgment by failing to follow formalities, failing to register to do business in the District under their alleged names, from failing to maintain a registered office in the District of Columbia (even though they are both clearly doing business in the District), and from otherwise avoiding or failing to adhere to requirements and/or corporate formalities. Discovery is necessary under Fed.R.Civ.P. 56(f) to determine additional details regarding Local 639's and/or the Health Fund's business in the District, their lack of filings, and their conduct in the District to the extent an alter ego theory may be necessary to prevent injustice. Accordingly, insofar as Defendant asks the alter-ego theory of recovery to be dismissed, a dismissal would be inappropriate at this time.

### D.    PLAINTIFFS' ALLEGATIONS OF FRAUD AND/OR MISREPRESENTATION SATISFY THE PLEADING REQUIREMENTS OF THE FEDERAL RULES OF CIVIL PROCEDURE.

30.    FED. R. CIV. P. 9(b) should not be read in isolation of other procedural canons, but should be harmonized with Rule 8(a) and (e) that the pleadings should contain a short and plain statement of the claim or defense and that each averment should be simple concise and direct. *U.S. v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (citations omitted). Combing Rules 8 and 9(b), this Court requires that "the pleader ... state the time, place and content of the false misrepresentation, the fact misrepresented and what was retained or given up as a result of the fraud" and identify the individuals involved in the fraud. *Id.* (citations omitted).

31.    While Plaintiffs believe that the First Amended Complaint provides sufficient particularity as to their fraud and/or misrepresentation claims, Plaintiffs' Second Amended

Complaint also sets forth the time, place and content of the false misrepresentation along with the fact misrepresented, the damages sustained and the parties involved. *See* **Exhibit B**, ¶¶s 29-30 (which incorporates by reference ¶¶s 1-28). Plaintiffs' allegations of fraud and/or misrepresentation therefore satisfy the pleading requirements of the Federal Rules of Civil Procedure and dismissal is inappropriate, particularly at this stage in the proceeding.

32.     Alternatively, if the Court finds that Plaintiffs' Complaint is deficient in this regard, the Court may consider this Opposition and the attached Declaration of Lester Poris to satisfy the pleading requirements. For purposes of FED. R. CIV. P. 9(b), a party may supplement or amend its complaint through legal memorandum submitted as oppositions to motions for dismissal or summary judgment. *Shekoyan v. Sibley Int. Corp.*, 217 F.Supp.2d 59, 73 (D.D.C. 2002). Moreover, if the Court finds the allegations contained in both Plaintiffs' Complaint and this Opposition to be insufficient, Plaintiffs seek leave to amend their Complaint. Leave to amend should be allowed to cure deficiencies in pleading fraud. *Id.* at 74, *citing Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C.Cir. 1996). Accordingly, in the alternative, Plaintiffs seek leave to amend their Complaint to provide additional detail, if needed.

### E.    ALTERNATIVELY, PLAINTIFFS' EXHAUSTION OF ADMINISTRATIVE REMEDIES WOULD HAVE BEEN FUTILE.

33.     Although no longer relevant since Plaintiffs' claims for breach of contract under the Alliance/MAMSI Agreement are not preempted under ERISA, there was nevertheless no duty to exhaust administrative remedies if this had been an ERISA matter.

34.     To the extent a health care provider elects to bring a claim under ERISA, §502(a) allows a "participant or beneficiary" to bring suit to, amongst other things, "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). ERISA

heath care benefits are assignable to health care providers. *Hermann Hosp. v. Meba Medical & Benefits Plan*, 845 F.2d 1286, 1289 (5th Cir. 1988); *Misic v. Building Service Employee's Health*, 789 F.2d 1374, 1377 (9th Cir. 1986). As a claimant or assignee, a health care provider can elect to stand in the shoes of plan participants and can be authorized under §1132(a)(1)(B) to sue to recover benefits due under the plan. *The Psychiatric Institute of Washington, D.C. v. Connecticut General Life Ins.*, 780 F.Supp. 24, 30 (D.D.C. 1992).

35.    Children's had initially believed that, in addition to a claim under the Alliance/MAMSI Agreement, that it had received an assignment of health care benefits from Todd Hicks, Sr. Children's has since determined that it did not receive an assignment from Todd Hicks, Sr.[6] *See* **Exhibit C**, ¶ 12. As previously discussed, however, Plaintiffs are pursuing a breach of contract claim based on the Alliance/MAMSI Agreement instead of an ERISA claim.

36.    Although there is no controlling case law in this Circuit, other courts have found that health care providers who are assigned health care benefits must exhaust administrative remedies contained in plans prior to filing suit. *Weiner v. Klais and Co.*, 108 F.3d 86, 91 (6th Cir. 1997); *Tarr v. State Mutual Life Assurance Co.*, 913 F.Supp 40, 44 (D.Mass. 1996). Moreover, this Circuit has recognized an exception to the exhaustion of administrative remedies requirement when, as here, exhaustion of administrative remedies would be futile. *Communications Workers of America v. American Telephone and Telegraph Co.*, 40 F.3d 426, 432 (D.C. Cir. 1994).

---

[6] It is important to note that even though the Health Fund contends that Plaintiffs, as alleged assignees, are preempted from bringing claims for breach of contract, misrepresentation, or fraud, the Health Fund fails to show the Court that even the SPD attached to Defendant's Motion prohibits assignment, thereby eliminating any grounds -- under the Health Funds' argument -- for preemption arising from assignment. *See* SPD, Defendant's Exhibit 2 at p.77 "You cannot assign, pledge, or encumber or otherwise alienate any legal or beneficial interest in benefits under the Plan, and any attempt to do so will be void."

37.    Even if Plaintiffs' claims had been ERISA claims, under well established precedent, a failure to exhaust administrative remedies may be excused when the plan gives inadequate notice of both the denial of a participant's/beneficiary's claim and the available appeals procedure. *Dishman v. Unum Life Ins.*, 269 F.3d 974, 984-85 (9th Cir. 2001). A participant or beneficiary is also excused from exhausting administrative remedies when the plan does not follow its own rules and when the plan breaches ERISA duties such as failing to give specific reasons for denial and failing to cite to specific sections of the plan upon which denial is based. *Lee v. California Butchers' Pension Trust Fund*, 154 F.3d 1075, (9th Cir. 1998), *citing* 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(f);[7] *see also Conley v. Pitney Bowes*, 34 F.3d 714, 718-19 (8th Cir. 1994) (plan is required to inform claimant of appeal procedure at the time its denies benefits). As indicated in the Declaration of Lester Poris, the Health Fund never gave Children's notice of the alleged reasons for denial, never referred to its Plan documents, its provisions, or any ERISA appeal requirement. *See* **Exhibit C**, ¶ 12. Failure to inform a participant/beneficiary of the available and required internal administrative remedies is a violation of ERISA, and at the very minimum excuses the exhustion of administrative remedies

---

[7] In accordance with regulations by the Secretary, every employee benefit plan shall --

    (1)  provide adequate notice in writing to any participant or beneficiary whose claim for benefits has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

    (2)  afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review....

29 U.S.C. § 1133.

(f) Content of notice. A plan administrator ... shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:

    (1) the specific reason or reasons for denial;

    (2) specific reference to pertinent plan provisions on which the denial is based;

    (3) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

    (4) appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503-1(f).

until the plan informs the participant/beneficiary of such requirements. *Back v. Danka Corp.*, 335 F.3d 790, 792 (8th Cir. 2003), *citing* 29 U.S.C. § 1022(b). Here, the Health Fund has not produced any evidence that it provided the required notice to Children's. In fact, the evidence is to the contrary. The Declaration of Lester Poris clearly indicates that the required notice was not given. *See* **Exhibit C**, ¶¶s 10-12.

38.     Estoppel may also be applied to preclude the assertion of failure to exhaust administrative remedies as a defense where the failure results from the participant's/beneficiary's reliance on a misrepresentation by the plan administrator. *Gallegos v. Mt. Sinai Medical Center*, 210 F.3d 803, 810 (7th Cir. 2000). Here, a failure by the Health Fund to even indicate the existence of any Plan documents, and the Health Fund's apparent reliance on their failure to notify Children's of the alleged appeal requirements constitutes grounds for estopping the Health Fund from relying on terms that were not made known to Children's until the Health Fund filed its motion to dismiss or, in the alternative, motion for summary judgement.

39.     Futility is also grounds for excusing any failure to exhaust administrative remedies. If ERISA had applied in this instance, an exhaustion of administrative remedies here would be futile for several reasons. First, the Health Fund failed to follow the administrative remedies (or provide notice of them) in the Plan and thus is estopped from demanding compliance with the exhaustion of those remedies. For example, the Health Fund never sent Children's a formal written denial or notified Children's of the reasons for denial or provided any notice of any ERISA appeal rights or obligations and thus failed to comply with its own Plan requirements. *See* **Exhibit C**, ¶ 12. The Health Plan failed to provide Children's with the specific reason why it was denying the claim. **Exhibit C**, ¶ 12. The Health Fund also failed to inform Children's of the existence of any administrative remedies that needed to be exhausted,

such as the right to appeal, the identity and contact information for the appropriate appellate body, or the time limits applicable to an appeal. *See* **Exhibit C**, ¶ 12. Next, on May 31, 2005, the Health Fund simply orally told Children's that Hicks' lawyer needed to sign the subrogation agreement, but failed to cite any section in the Plan that made such a requirement binding on a health care provider. *See* **Exhibit C**, ¶¶s 10, 12. Further, the Health Fund should be estopped from precluding the assertion of failure to exhaust administrative remedies since the Health Fund misrepresented that the claim had been approved and that it would be paid. *See* **Exhibit C**, ¶¶s 5, 7-8. Finally, since Mr. Hicks' attorney indicated that he will not sign an subrogation form, the Health Fund's catch-22 with respect to their alleged requirement for an attorney signature provides sufficient basis for a finding of futility as to Defendant's exhaustion defense. *See* **Exhibit C, ¶ 11.**

40.    Plaintiffs are not asserting a claim under an ERISA Plan. However, had they elected to do so, or to the extent the Court believes a claim under ERISA has been asserted, the estoppel and/or futility defenses to the exhaustion of administrative remedies would have excused Plaintiffs from exhausting administrative remedies under the Plan. At the very least, genuine issues of material fact exist on this issue so as to preclude summary judgment.

F.    **DEFENDANT HICKS' FAILURE TO PROVIDE THE FUND WITH A SUBROGATION AGREEMENT SIGNED BY AN ATTORNEY HAS NO BEARING ON THE CLAIMS ASSERTED BY PLAINTIFFS AGAINST THE HEALTH FUND.**

41.    The Health Fund fails to provide any legal support for its argument that Plaintiffs have a legal duty to see to it that Hicks' lawyer signs a subrogation agreement.

42.    Plaintiffs have no control over Hicks or his lawyer. *See* **Exhibit C**, ¶ 11. There is no evidence of agency, employment or other special relationship between Plaintiffs and Hicks' attorney where Plaintiffs can compel Hicks's attorney to sign a subrogation form. Furthermore,

the uncontroverted evidence indicates that Mr. Hicks' attorney has refused to sign a subrogation form. *See* **Exhibit C**, ¶ 11.

43.    Aside from the Health Fund providing proof of a special relationship between Plaintiffs and Hicks or his lawyer, or establishing that Plaintiffs have a right or an ability to force Hicks' lawyer to sign subrogation form, there is no evidence that Plaintiffs can comply with the Health Fund's newfound requirement, which is not stated in the SPD provided by the Health Fund as summary judgment evidence.  Instad, ignoring the plan documents, the Health Fund neglects to address the lack of any such requirement in the Alliance/MAMSI Agreement OR the alleged plan documents.  The Alliance/MAMSI Agreement forms the basis of Plaintiffs' claims and the Alliance/MAMSI Agreement does not require a plan participant/beneficiary's lawyer to complete a subrogation form.  As such, the Health Fund's insistence on a signed subrogation form Hicks' lawyer is misguided as no such requirement exists under the Alliance/MAMSI Agreement.  *See* **Exhibit D**; **Exhibit E**.  At the very least, there is a genuine issue of material fact on this issue that precludes summary judgment as a matter of law.

44.    Although the Health Fund claims that there is a requirement under the SPD for a plan participant's attorney to sign a subrogation form before health care providers will be paid for their services, this requirement is not stated in the SPD and there is no arguable basis for including this requirement.  At the very least, to the extent any of Plaintiffs claims had been preempted, which they should not be, Plaintiffs would be entitled to some discovery relating to the Health Fund's abuse of discretion in reading the alleged requirement into the SPD.  This is particularly true given that a plain reading of the SPD does not require a subrogation form signed by the participant/beneficiary's lawyer.  *See* **Defendant's Exhibit 2**, at pgs. 75-76.  Even if such were a requirement under the SPD, Plaintiffs' claims arise from an independent contract, the

Alliance/MAMSI Agreement, which does not contain any such requirement. *See* **Exhibit D**; **Exhibit E**.

V.
**MOTION FOR REMAND**

45.    A civil action filed in state court may be removed if the claim is one arising under federal law. 28 U.S.C. §§ 1331, 1441(a); *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 398 (3d Cir. 2004). Additionally, under *Davila*, a case is removable only if (1) the health care provider could have brought its breach of contract claim under § 502(a), and (2) no other legal duty supports the health care provider's claim. 542 U.S. 200, 210, 124 S.Ct. 2488, 2496 (2004). Since another legal duty supports Plaintiffs' claims -- the Alliance/MAMSI Agreement -- removal was inappropriate. For the reasons stated in ¶¶s 13-22 of Plaintiffs' Opposition, which are incorporated here by reference, Plaintiffs' claims are not preempted, and a remand to the Superior Court for the District of Columbia is appropriate.

46.    Because Plaintiffs' claims are not preempted, the federal court lacks subject matter jurisdiction over Plaintiffs' Complaint. When there is no subject matter jurisdiction, a remand is mandatory. 28 U.S.C. § 1447(c); *International Primate Prot. League v. Tulane Educ. Fund*, 500 U.S. 72, 89, 111 S.Ct. 1700, 1710 (1991). Accordingly, Plaintiffs respectfully request that the Court enter an order of remand, remanding all claims and all parties back to the Superior Court for the District of Columbia and granting Plaintiffs such further relief as justice allows.

## VI.
## CONCLUSION AND PRAYER

WHEREFORE, Plaintiffs, Children's National Medical Center and Benefit Recovery Specialists, Inc. request that Defendant Local Union No. 639, Building, Inc. d/b/a International Brotherhood of Teamsters, Local 639 and d/b/a Local 639 - Employer's Health Trust Fund's Motion to Dismiss, or in the alternative, Motion for Summary Judgment, be denied in its entirety.  Moreover, Plaintiffs request that their Motion to Remand be granted.  Alternatively, to the extent Plaintiffs' Motion for Remand is denied, Plaintiffs ask the Court to defer its ruling on the Health Fund's Motion to Dismiss or in the alternative, pursuant to Plaintiffs' Motion for Continuance, to grant Plaintiffs additional time to conduct FED. R. CIV. P. 56(f) discovery to more fully address the issues in the Health fund's Motion.  Plaintiffs additionally request for any other and further relief to which Plaintiffs may be entitled.

Dated this 13th day of March 2006.

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: _____
L. Bradley Hancock *(Admitted Pro Hac Vice)*
District of Columbia Bar No. 465746
GREENBERG TRAURIG, LLP
1000 Louisiana, Suite 1800
Houston, TX  77002
(713) 374-3500 (Telephone)
(713) 374-3505 (Facsimile)

Kenneth P. Kaplan
District of Columbia Bar No. 460614
GREENBERG TRAURIG, LLP
800 Connecticut Avenue, NW, Suite 500
Washington, DC 20006
(202) 331-3191 (Telephone)
(202) 261-0156 (Facsimile)


**ATTORNEYS FOR PLAINTIFFS CHILDREN'S NATIONAL MEDICAL CENTER AND BENEFIT RECOVERY SPECIALISTS, INC.**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was forwarded to all known counsel of record in accordance with the Federal Rules of Civil Procedure on this ____ day of March, 2006.

_____
L. Bradley Hancock