UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
CHILDREN'S NATIONAL MEDICAL         )
CENTER,                             )
                                    )
    and                             )
                                    )
BRSI, L.P. d/b/a BENEFIT RECOVERY   )   No.:   06-0317RJL
SPECIALISTS,                        )
                                    )
                                    )
                Plaintiffs,         )
                                    )
    v.                              )
                                    )
Todd Hicks,                         )
                                    )
    and                             )
                                    )
LOCAL UNION NO. 639, BUILDING,      )
INC. d/b/a INTERNATIONAL            )
BROTHERHOOD OF TEAMSTERS,           )
LOCAL 639 and d/b/a LOCAL 639,      )
                                    )
    and                             )
                                    )
LOCAL UNION NO. 639, BUILDING,      )
INC. d/b/a INTERNATIONAL            )
BROTHERHOOD OF TEAMSTERS,           )
LOCAL 639 d/b/a LOCAL 639 –         )
Employer's Health Trust Fund,       )
3130 Ames Place, NE                 )
Washington, DC 20018,               )
                                    )
                Defendants.         )
_____)

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT TEAMSTERS
LOCAL 639 – EMPLOYERS HEALTH TRUST FUND'S MOTION TO
<u>DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>**

Pursuant to LCvR 7(d), Defendant Teamsters Local 639 – Employers Health

Trust Fund ("Defendant Fund" or the "Fund"), through its undersigned counsel, hereby

files this Reply Memorandum in Support of its Motion to Dismiss, or in the Alternative, for Summary Judgment. We note in particular, that even though the Plaintiffs seek to recast their claims in an effort to avoid the *complete preemption* effect of ERISA § 502(a), they still continue to present state law claims against an ERISA-regulated employee benefit plan, and these claims cannot stand as a matter of *conflict preemption* under ERISA § 514, as explained below. The Defendant Fund will oppose Plaintiffs' ERISA complete preemption argument in a separately filed Opposition to Plaintiffs' Motion to Remand later this week. Complete preemption is a necessary prerequisite for removal jurisdiction, and the Defendant Fund will explain in its to-be-filed Opposition why *complete preemption* is present on these facts. But, with respect to the question of whether the Plaintiffs can maintain any state law claims against the Defendant Fund at all, the issue is one of *conflict preemption* and that is discussed below.

## ARGUMENT

**I.     Plaintiffs' Claims Against The Fund Are Conflict Preempted By ERISA Section 514**

Plaintiffs' First Amended Complaint purports to assert the following state law claims: breach of contract, breach of duty of good faith and fair dealing, quantum meruit, misrepresentation and/or fraud, and alter ego. It is well-settled that ERISA § 514 preempts state law claims that "relate to" any "employee benefit plan." *See e.g., Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted."). A state law claim "relates to" an employee benefit plan if "it has a connection with or reference to such a plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987).

Significantly, "[i]t is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Zuniga v. Blue Cross & Blue Shield of Mich.*, 52 F.3d 1395, 1401 (6th Cir. 1995) (quoting *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991)).

As noted above, Plaintiffs now assert that their claims against Defendant Fund are based on an alleged agreement (the "Alliance/MAMSI Agreement") between Children's National Medical Center and Alliance PPO, Inc. ("Alliance"), whereby Children's "agreed to accept discounted payments from Alliance or its contracted companies … for medical services provided to beneficiaries of group health insurance in return for the insurance companies' use of the network hospitals and providers."[1] Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss or, in the Alternative, for Summary Judgment ("Plaintiffs' Memorandum") ¶¶ 13, 18. They argue simplistically that since the Alliance/MAMSI Agreement is not an ERISA plan, their claims are not preempted by ERISA. Plaintiffs' Memorandum ¶ 19.

Plaintiffs' argument misses the point. The only reason why the Defendant Fund allegedly has an obligation to pay money to the Plaintiffs is because Todd Hicks Jr. was

---

[1] Although Plaintiffs allege that their claims against the Defendant Fund are based on the Alliance/MAMSI Agreement, the Defendant Fund is not a party to that Agreement. Plaintiffs have conveniently failed to attach the entire Agreement to their Opposition Motion or Plaintiff's Memorandum, apparently to hide the actual parties to this Agreement. The agreements provided by Plaintiffs where Defendant Fund is identified as a party are: (1) a Membership Agreement, whereby Defendant Fund agreed to participate in the Health Care Cost Containment Corporation of Mid-Atlantic Region, Inc. ("HCCCC"); and (2) a Participation Agreement with Alliance and HCCCC, whereby Defendant Fund elected to participate in the Purchaser Services Agreement the HCCCC entered into with Alliance PPO Inc. and agreed to pay Alliance a monthly contribution obligation in accordance with the schedule set forth in the Purchaser Services Agreement and agreed to pay HCCCC an administrative fee per participant for tasks performed by HCCCC. None of these agreements, the Membership Agreement, Participation Agreement, or Purchaser Service Agreement govern Todd Hicks's eligibility for benefits or the types of covered benefits under the Fund which Todd Hicks, or Children's National Medical Center by virtue of an assignment, is entitled to recover.

treated at Children's National Medical Center and Todd Hicks Jr. was covered by the Defendant Fund's ERISA plan. Absent the Defendant Fund's coverage of Todd Hicks, Jr., the Defendant Fund would have no alleged obligation to the Plaintiffs. Indeed, the Plaintiffs have not alleged, nor could they, that the Alliance/MAMSI contract identifies the persons who are entitled to receive health coverage under the Defendant Fund and on whose behalf the Defendant Fund will make payments and in what circumstances. ERISA provides that ERISA plans have to state the eligibility and coverage terms. *See* ERISA §§ 3(1) and 102 ("The summary plan description shall contain … the plan's requirements respecting eligibility for participation and benefits … [and] circumstances which may result in disqualification, ineligibility, or denial or loss of benefits"), 29 U.S.C. §§ 1002(1) and 1022. Accordingly, the Court necessarily has to examine the Defendant Fund's ERISA plan in order to determine, at the outset, the scope of coverage that the Defendant Fund extended to Todd Hicks Jr. and the circumstances that precluded or circumscribed that coverage.

As noted in the Fund's Motion to Dismiss, the D. C. Circuit recognizes that "ERISA's preemption clause … has been interpreted extremely broadly…." *Bd. of Trs. of the Hotel & Rest. Employees Local 25 v. Madison Hotel, Inc.*, 97 F. 3d 1479, 1486-87 (D.C. Cir. 1996) (citation omitted). As explained in *Madison Hotel*, "even general common law causes of action, such as breach of contract, which were not specifically intended to apply to benefit plans covered by ERISA, will nonetheless be preempted insofar as they affect ERISA protected rights." *Madison Hotel*, 97 F. 3d at 1486-87. *See also Moore v. Blue Cross & Blue Shield of the Nat'l Capital Area,* 70 F. Supp. 2d 9, 19

(D.D.C. 1999) (recognizing that the phrase "relate to" in Section 514(a) of ERISA is to be given an "expansive reading.").

Following this principle, courts in this Circuit have held that state law claims of breach of contract, breach of duty of good faith and fair dealing, misrepresentation, and fraud brought against ERISA plans – like the claims here – are squarely preempted by ERISA. *See Krooth & Altman v. North Am. Life Assur. Co.*, 134 F. Supp. 2d 96, 101 (D.D.C. 2001) (finding that such claims "directly 'relate to' the employee benefit plan because such claims presuppose the existence of a contract", and therefore, "[t]hese claims must be dismissed as preempted by ERISA."); *Coleman v. Pension Benefit Guar. Corp.*, 196 F.R.D. 193, 197 (D.D.C. 2000) (concluding "that plaintiffs' common law misrepresentation claim is preempted by ERISA and must be dismissed."); *Psychiatric Institute of Washington, D.C., Inc., v. Connecticut General Life Ins. Co.*, 780 F. Supp. 24 (D.D.C. 1992) (holding that ERISA preempted the health care providers state law claims because they "not only 'relate' to an employee benefit plan, they depend on an employee benefit plan.").

The authorities cited by the Plaintiffs, *e.g.*, *Pascack Valley Hosp. Inc.*, *v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F. 3d 393 (3d Cir. 2004)(a complete preemption/removal jurisdiction case), do not change the ERISA conflict preemption result. *See Pascack Valley Hosp.* at 404 (recognizing that the hospital's state law claims may nevertheless be preempted under Section 514 of ERISA).

In accordance with the precedents inside and outside of this Circuit, Plaintiffs' state law claims for breach of contract, breach of duty of good faith and fair dealing,

quantum meruit, misrepresentation and/or fraud, and alter ego against the Fund are preempted by ERISA and must be dismissed.

## II. Plaintiffs' Do Not Contest The Fund's Argument That Its Claims Other Than The Breach Of Contract Claim Are Time-Barred By The Applicable Statute of Limitations

Plaintiffs' Opposition Motion submits that Defendant Fund's "Motion relating to Defendant's claim of bar under the applicable three (3) years statue of limitations … should be denied because limitations have not run on Plaintiffs' claims." Plaintiffs' Memorandum, however, addresses only Plaintiffs' breach of contract claims against the Fund. Accordingly, to the extent Plaintiffs fail to oppose Defendant Fund's Motion to dismiss Plaintiffs' remaining claims as barred by the applicable statute of limitations, Plaintiffs concede that such claims are untimely. *See Fox v. Am. Airlines, Inc.*, 2003 WL 21854800, at *2 (D.D.C. Aug. 5, 2003) ("[W]hen a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded…").

## III. Plaintiffs' Claim For Fraud And/Or Misrepresentation Still Fails To Meet The Pleading Requirement of Fed. R. Civ. P. 9(b)

Plaintiffs' Memorandum contends that Plaintiffs' allegations of fraud and/or misrepresentation contained in their First Amended Complaint satisfy the pleading requirements of the Federal Rules of Civil Procedure. Plaintiffs provide no support for their contention, and instead cite to their Second Amended Complaint, which the Court has not yet granted Plaintiffs leave to file, and a declaration of an employee of Children's National Medical Center, which by its terms, demonstrates that the declarant lacks personal knowledge of many of the facts attested to. Nevertheless, even if the Court allows Plaintiffs to supplement or amend their fraud and/or misrepresentation claim with

their Second Amended Complaint and the Declaration of Lester Poris, Plaintiffs still fail to state their claim "with particularity," as required by Federal Rule Civil Procedure 9(b).

As explained more fully in Defendant Fund's Motion, the factual allegations supporting Plaintiffs' claim are almost nonexistent.  In essence, Plaintiffs state in a conclusory fashion that Defendant Fund "knowingly made material misrepresentations, and/or committed fraud with the intent to deceive Children's National Medical Center, by pre-certifying the Hicks Defendant for treatment and by agreeing to pay for the care, services, and good provided."  (Am. Compl. ¶ 28.)  Plaintiffs further allege that Children's National Medical Center reasonably relied on the [Fund's] and/or [its] agent's pre-certification and/or conduct, and has been injured as a result of the [Fund's] conduct."  (Am. Compl. ¶ 28.).  Plaintiffs' Second Amended Complaint mirrors the conclusory allegations contained in their First Amended Complaint, with the exception that Plaintiffs' Second Amended Complaint adds the allegations that Defendant Fund "knowingly made material misrepresentations, and/or committed fraud with the intent to deceive Children's National Medical Center … by agreeing to pay for 100% of the care, services, and goods provided in accordance with the Alliance/MAMSI Agreement. Additionally, [Defendant Fund] admitted that they would pay the bill incurred as a result of the care, services, and goods provided."  Plaintiffs' Second Amended Complaint ¶ 30.

These conclusory statements contain none of the required elements to state a claim for fraud.  For example, Plaintiffs to fail to allege:  who at Alliance/MAMSI represented "that Local 639 would pay the charges that we had agreed to with our contract with Alliance/MAMSI" (Poris Dec. ¶ 3); who at Children's National Medical Center accepted the representation and proceeded to provide care without "request[ing]

payment up front" (*Id.*); who at Alliance represented to Plaintiffs that they had authority to act on behalf of the Defendant Fund in matters involving coverage and eligibility (*See id.*); and who at Children's National Medical Center received that representation. Further, Plaintiffs fail to allege any facts suggesting that the Fund intended to induce reliance by Children's National Medical Center, or that Children's National Medical Center would not have rendered medical services to the severely injured Todd Hicks, Jr. in the absence of the alleged representation by the Defendant Fund. Plaintiffs' conclusory allegation that the Fund "knowingly made material misrepresentations and/or committed fraud with the intent to deceive" is simply insufficient to support a cause of action for fraud under Rule 9, and should therefore be dismissed. *See Bender v. Rocky Mountain Drilling Assocs.*, 648 F. Supp. 330, 336 (D.D.C. 1986) (finding that a complaint replete with conclusory and unsubstantiated allegations of fraud is "patently insufficient under Rule 9(b).") (citing *Equitable Life Assurance Society v. Alexander Grant & Co.*, 627 F. Supp. 1023, 1030 (S.D.N.Y. 1985)).

**IV.    To The Extent Plaintiffs' Claims Against The Fund Are Re-characterized As Claims Under Section 502 Of ERISA, The Claims Fail As A Matter Of Law**

Because Plaintiffs' state law claims against the Fund are preempted by ERISA, the only claim that could possibly lie is a re-characterized claim for benefits under ERISA. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64-66 (1987) (re-characterizing preempted state law claims as arising under federal law for purposes of determining federal question jurisdiction and the existence of complete preemption). Under Section 502(a)(1)(B) of ERISA, a claim to recover benefits from an employee benefit plan may only be brought by a plan participant or beneficiary. *See* 29 U.S.C. § 1132(a)(1)(B). Although Plaintiffs are not one of the enumerated parties under Section 502 of ERISA,

some courts, including this Court, have recognized an exception where the participant has assigned his or her rights under the plan to a non-enumerated party, thereby giving the assignee the derivative right to bring a claim against the plan under Section 502.  *See e.g., HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005 (4th Cir. 1996); *Cromwell*, 944 F.2d at 1277; *Kennedy v. Conn. General Life Ins. Co.,* 924 F.2d 698, 700 (7th Cir. 1991)*; Michael Reese Hosp. and Medical Ctr. v. Solo Cup Employee Health Benefit Plan,* 899 F.2d 639, 640 (7th Cir. 1990)*; Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286 (5th Cir. 1988); *Psychiatric Inst. of Wash., D.C.,* 780 F. Supp. at 29-30.

Plaintiffs' First Amended Complaint alleges that Defendant Hicks assigned his rights to receive benefits from the Fund to Children's National Medical Center.  Plaintiffs' First Amended Complaint ¶ 12.  Indeed, Defendant Hicks *admits* that that he assigned his rights for medical coverage under the Fund to Children's National Medical Center.  Defendant Hicks' Answer ¶ 14 (originally filed in D.C. Superior Court).  *See* Exhibit A.  If the Plaintiffs are now contending there is no such assignment, then a recharacterized Section 502(a) claim fails as a matter of law.  If there is such an assignment, the recharacterized Section 502(a) claim fails for the following reasons.  In either case, the Complaints fail to state claims upon which relief may be granted or otherwise must be dismissed as a matter of law.

    A.    **Plaintiffs Failed To Exhaust Their Administrative Remedies Under The Plan**

Even if Children's National Medical Center stands in Defendant Hicks' shoes as an assignee of his benefits, Plaintiffs' claim for benefits from the Fund fails because Plaintiffs failed to exhaust their administrative remedies under the Plan.  As explained

more fully in Defendant Fund's Motion, although ERISA itself does not specifically require the exhaustion of remedies available under employee benefit plans, the D.C. Circuit expressly requires that, before filing a suit for benefits under an ERISA-governed employee benefit plan, all claimants must exhaust their administrative remedies by filing a claim for the benefits through the claim and review process provided by the plan. *See Communications Workers of America v. AT&T*, 40 F.3d 426, 431-32 (D.C. Cir. 1994).

Plaintiffs oppose Defendant Fund's Motion by asserting that "an exhaustion of administrative remedies here would be futile…." Plaintiffs' Memorandum ¶ 39. Plaintiffs cite to *Communications Workers of America v. American Telephone and Telegraph Co*., 40 F.3d 426, 432 (D.C. Cir. 1994), stating that "this Circuit has recognized an exception to the exhaustion of administrative remedies requirement when … exhaustion of administrative remedies would be futile." Plaintiffs' Memorandum ¶ 36. Although Plaintiffs are correct that this Court "as recognized a *discretionary* exception to the exhaustion requirement where resort to administrative remedies would be futile because of the certainty of an adverse decision," *Communications Workers of America*, 40 F.3d at 432 (emphasis added), this Court has also recognized that "'[t]he futility exception is, however, quite restricted,' and has been applied only when resort to administrative remedies is 'clearly useless.'" *Id*. (quoting *Randolph-Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 105 (D.C. Cir. 1986) ("In order to come under the futility exception, [plaintiffs] must show that it is *certain* that their claim will be denied on appeal, not merely that they doubt an appeal will result in a different decision.") (emphasis added)).

In *Communications Workers of America*, the district court held that exhaustion of remedies under the Plan would have been futile. On appeal, however, the D.C. Circuit disagreed, finding that:

> [o]ther than the denial of initial benefits claims, there [was] nothing in the record that demonstrate[d] that exhaustion of the Plan's administrative remedies by appellees would have been futile. Because the Plan's final review authority, the Benefits Committee, never had an opportunity to render a final determination on appellees' claims, [the Court] fail[ed] to see any basis for finding that an unfavorable decision by that Committee was a foregone conclusion. Even if one were to concede that an unfavorable decision from the Benefits Committee was *highly likely*, that does not satisfy [the] strict futility standard requiring a *certainty* of an adverse decision. Simply put, the denial of initial claims, which is all the record reveals, is not enough to show futility of internal Plan remedied.

*Id.* at 433 (concluding "that the District Court abused its discretion by excusing appellees' failure to exhaust their administrative remedies under the Plan.").

In the case at bar, Plaintiffs cite a list of reasons as the "basis for a finding of futility as to Defendant's exhaustion defense." Plaintiffs' Memorandum ¶ 39. None of the reasons cited by Plaintiffs, however, demonstrate that exhaustion of the Plan's administrative remedies by Plaintiffs would have been futile. Similar to the facts in *Communications Workers of America*, the Fund's final review authority never had an opportunity to hear or consider all of the facts surrounding Plaintiffs' claim of entitlement to payment (e.g. the facts identified in the Poris Declaration) or otherwise render a final determination on whether those facts have a bearing on the outcome of Plaintiffs' claim for benefits. Therefore, there is no basis for finding that "an unfavorable decision by [the Fund] was a foregone conclusion." 795 F.2d at 105. Furthermore, even if Plaintiffs had alleged, which they clearly do not, that an unfavorable decision from the Fund was *highly likely*, Plaintiffs' allegation would not satisfy the "strict futility standard requiring a

*certainty* of an adverse decision." *Id*. Because Plaintiffs failed to appeal the non-payment of the bill, Plaintiffs' claim for benefits should be dismissed for failing to exhaust administrative remedies.

> B.  **In Any Case, Plaintiffs Are Not Entitled To Benefits Because Defendant Hicks Failed To Provide The Fund With A Completed Subrogation Agreement, As Required By The Fund's SPD**

Plaintiffs' Memorandum contends that Defendant Hicks' failure to provide the Fund with a subrogation agreement signed by Defendant Hicks' attorney has no bearing on the claims asserted by Plaintiffs against the Fund. In support thereof, Plaintiffs assert that "Plaintiffs have no legal duty to see to it that Hicks' lawyer signs a subrogation agreement." Plaintiffs' Memorandum ¶ 41. Plaintiffs' argument misses the point. As explained in more detail in Defendant Fund's Motion, Defendant Hicks' dependent son, Todd Hicks, Jr., was injured in a motor vehicle accident and a third party has accepted responsibility in connection with the accident. As an assignee of Defendant Hicks' benefits under the Fund, Children's National Medical Center is entitled to no more than the benefits available to Defendant Hicks under the terms of the Fund's plan of benefits. *See* 29 U.S.C. § 1132(a)(1)(B). Those terms are discussed in the Fund's SPD.

Specifically, the Fund's SPD provides that the Fund will cover certain hospitalization charges and other medical costs incurred by participants and their eligible dependents who are injured, but that coverage is conditional. In cases where a third party is responsible for causing the participant's or participant's dependent's injuries – such as the case here – the SPD contains a specific and unambiguous condition to providing covered benefits. The SPD provides that the Fund "will provide covered benefits" to a participant or dependent for "injur[ies] caused by the action or inaction of another person

or party" *only if* the participant agrees to repay the Fund "from any settlement, judgment or Workers' Compensation recovery [the participant or] dependent[] may receive." The participant is "required to sign a form that acknowledges the Fund's right to be reimbursed and verifies that 'the participant' will help the Fund secure its rights." Significantly, "[t]he form must be completed before the Fund will make payments on [the participants or participant's] dependent's behalf." The Trustees of the Fund interpret the cited language of the SPD to require a participant's attorney to also sign the subrogation form in the spot designated for the attorney's signature before the form is deemed "completed."

With regard to the instant action, Defendant Hicks' attorney either failed or refused to sign the subrogation form (no doubt to avoid any responsibility for repaying the Fund out of the tort recovery). Because Defendant Hicks failed to comply with the SPD and provide the Fund with a *completed* subrogation agreement (i.e., one signed by his attorney recognizing the Fund's right to reimbursement in the event of a tort recovery), the Fund properly refused to pay Children's National Medical Center for the medical services provided to Todd Hicks, Jr.

Accordingly, to the extent that Plaintiffs' claims against the Fund are re-characterized as claims for benefits under Section 502(a)(1)(B) of ERISA, the unambiguous terms of the plan documents govern Plaintiffs' right of recovery. Although those terms do not require that Plaintiffs "see to it that Hicks' lawyers signs a subrogation agreement," those terms do require the Fund to deny coverage of the services provided by Children's National Medical Center to Todd Hicks, Jr. because Defendant Hicks failed to provide the Fund with a completed subrogation agreement (i.e., one signed by Defendant

Hicks and his attorney), and they also require the Court to deny Plaintiffs' claims for benefits from the Fund.

## **CONCLUSION**

Based on the foregoing, pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, Rule 56, Plaintiffs' claims against the Fund should be dismissed in their entirety, with prejudice.

Date: March 20, 2006                                   Respectfully submitted,

                                                                        /s/
                                                       Donald L. Havermann (D.C. Bar No. 337774)
                                                       Bridgit M. DePietto (D.C. Bar No. 496400)
                                                       MORGAN, LEWIS & BOCKIUS LLP
                                                       1111 Pennsylvania Avenue, N.W.
                                                       Washington, D.C.  20004
                                                       202.739.3000 (Telephone)
                                                       202.739.3001 (Facsimile)
                                                       dhavermann@morganlewis.com
                                                       bdepietto@morganlewis.com

                                                       Counsel for Defendant Teamsters Local
                                                       639 – Employers Health Trust Fund

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, on this 20th day of March 2006, that a copy of the foregoing Reply Memorandum in Support of Defendant Teamsters Local 639 – Employers Health Trust Fund's Motion to Dismiss or, in the Alternative, for Summary Judgment was served on the following by the means indicated:

Via First Class Mail, postage pre-paid:

> L. Bradley Hancock
> Greenberg Traurig, LLP
> 1000 Louisiana, Suite 1800
> Houston, TX 77002
>
> Kenneth P. Kaplan
> Greenberg Traurig, LLP
> 800 Connecticut Avenue, NW, Suite 500
> Washington, DC 20006
>
> Attorneys for Plaintiffs Children's National Medical Center and Benefit Recovery Specialists, Inc.

Via First Class Mail, postage pre-paid:

> Lawrence Thrower
> 1229 15th Street, NW
> Washington, DC 20005
>
> Attorney for Defendant Hicks

Via First Class Mail, postage pre-paid:

> Local Union No. 639, Building, Inc. d/b/a
> International Brotherhood of Teamsters,
> Local 639 and d/b/a Local 639
> 3100 Ames Place, N.E.
> Washington, DC 20018
>
> Named Local 639 Defendant

                                                       /s/_____
                                                       Bridgit M. DePietto