UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHILDREN'S NATIONAL MEDICAL CENTER, et. al, <br><br> Plaintiffs, <br><br> v. <br><br> TODD HICKS, et. al, <br><br> Defendants. | No.: 06-0317RJL |

**DEFENDANT TEAMSTERS LOCAL 639 – EMPLOYERS
HEALTH TRUST FUND'S MEMORANDUM
IN OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND**

Pursuant to LCvR 7(b), Defendant Teamsters Local 639 – Employers Health Trust Fund ("Defendant Fund" or the "Fund"), through its undersigned counsel, hereby files this Memorandum in Opposition to Plaintiffs' Motion for Remand. In particular, this Memorandum addresses the Plaintiffs' stunning decision to change the entire theory of their case in a futile effort to avoid the complete preemption effect of ERISA. We speak of the Plaintiffs' decision to recast the basis of their claims – from the premise that the Fund violated the terms of its own "health policy" or "health plan" (*See* First Amended Complaint ¶¶ 18, 19, 24 and 26) – to the current premise that the Fund somehow breached a contract to which it is not a party, i.e. the alleged contract between Alliance/MAMSI and Children's National Medical Center (*See* Second Amended Complaint ¶¶ 13, 14, 15, 16, 20, 21, 23, 28, & 30). Because Plaintiffs now say that their claims "arise under the Alliance/MAMSI Agreement," they argue that "ERISA does not govern, control, or preempt the Alliance/MAMSI Agreement" and "state contract law principles" necessarily apply. Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to

Dismiss or, in the Alternative, for Summary Judgment and Motion for Remand or, in the Alternative, Motion for Continuance ("Plaintiffs' Memorandum") ¶ 7. As explained more fully below, the Plaintiffs' recast legal theories do not change the ERISA complete preemption calculus applicable in this matter, or the end result that ERISA completely preempts their claims. Because Plaintiffs' state law claims continue to be completely preempted by ERISA, even as re-pled in the Second Amended Complaint, and, therefore, were properly removed to this Court, the Plaintiffs' Motion for Remand should be denied.

## ARGUMENT

### II. PLAINTIFFS' MOTION TO REMAND MUST BE RESOLVED BY APPLICATION OF THE RULES ARTICULATED BY THE SUPREME COURT IN *AETNA HEALTH, INC. V. DAVILA*

Before turning to Plaintiffs' legal claims and arguments, a brief review of the principles governing removal jurisdiction and ERISA complete preemption is in order. The Supreme Court recently had occasion to articulate those principles in *Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004). The Supreme Court's opinion in *Davila* begins with a restatement of the statutory basis for removal jurisdiction:

> "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal court. 28 U.S.C. § 1441(a). One category of cases of which district courts have original jurisdiction are "federal question" cases: cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

*Id.* at 2494. The Court next explains that a determination of whether a particular case "arises under federal law" typically turns on the "well-pleaded complaint rule" – the determination is made based on the face of the Complaint, rather than on any defense stated by the defendant. *Id.* The Court recognizes, however, that there is an exception to the well-pleaded complaint rule

"when a federal statute wholly displaces the state-law cause of action through complete preemption." *Id.* at 2495.

The Court holds further:

> This is so because "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *ERISA is one of these statutes.*

*Id.* (emphasis added).

Therefore, according to the Supreme Court, "[a]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* In fact, "the ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary preemptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* at 2496 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)).

Importantly, ERISA preempts not just "strictly duplicative causes of action." *Id.* at 210. To the contrary, ERISA preempts even those state law claims that have no analog under the federal statute. *Id.* In the words of the Supreme Court: "Congress' intent to make the ERISA civil enforcement mechanism exclusive would be undermined if state causes of action that supplement the ERISA § 502(a) remedies were permitted, even if the elements of the state cause of action did not precisely duplicate the elements of an ERISA claim." *Id.*[1]

---

[1] The remarkable breadth of ERISA preemption is fundamental to the statute's purpose. Congress enacted ERISA to serve as a uniform regulatory regime with an integrated enforcement mechanism to protect plan sponsors and their fiduciaries from the costs of complying with often conflicting state and local laws. *See Davila,* 542 U.S. at 209. The House and Senate sponsors of the statute emphasized the significance of its preemption provisions. Specifically, Representative Dent labeled the "reservation to Federal authority [of] the sole power to regulate the field of employee benefit plans" as ERISA's "crowning achievement." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987) (quoting 120 Cong. Rec. 29197 (1974)). Moreover, Senator Williams stated:

It is not uncommon for plaintiffs to attempt to avoid the expansive scope of ERISA preemption by claiming that they seek damages for violations of legal duties that arise independently of ERISA. The Supreme Court' opinion in *Davila*, however, circumscribes their ability to do so. *Davila* made clear that "state causes of action fall within the scope of ERISA," and are removable to federal district court, when allegedly "independent" claims are *derived from* or *dependent on* rights and obligations established by ERISA benefit plans. *See Davila*, 542 U.S. at 213, 220 (emphasis added). In other words, where, as here, there would be no liability absent the existence of an ERISA benefit plan, state law causes of action cannot escape the reach of ERISA preemption. *Id.* Similarly, although a plaintiff may try to cast his claim as one that exists outside of ERISA, the claim is preempted if he or she *could have* brought a claim under ERISA, and there exists no violation of an independent legal duty unrelated to the ERISA plan. *Id.* at 210.

The labels attached to a particular cause of action, a ploy that the Plaintiffs utilize here, cannot work to avoid the preemption bar. The Supreme Court specifically held in *Davila* that creative attempts at labeling claims are irrelevant to the preemption analysis: "Distinguishing between preempted and non-preempted claims based on the particular label affixed to them would 'elevate form over substance and allow parties to evade' the preemptive scope of ERISA simply 'by relabeling their contract claims as claims for tortious breach of contract.'" *Id.* at 213. Indeed, on the strength of this passage from *Davila* alone, the Plaintiffs' claims are preempted, and this Court's exercise of removal jurisdiction is proper.

---

> It should be stressed that with the narrow exceptions specified in the bill, the substantive and enforcement provisions of the conference substitute are intended to preempt the field for Federal regulations, thus *eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans.* This principle is intended to apply in its broadest sense to all actions of State or local governments, or any instrumentality thereof, which have the force or affect of law.

*Id.* (quoting 120 Cong. Rec. 29933 (1974)) (emphasis added).

## II. PLAINTIFFS' STATE LAW CLAIMS ARE COMPLETELY PREEMPTED BY ERISA AND REMOVABLE TO FEDERAL COURT

Plaintiffs Second Amended Complaint purports to state claims against the Fund for breach of contract, breach of the duty of good faith and fair dealing, quantum meruit, fraud/misrepresentation and alter ego. All of these claims are completely preempted under the rules articulated by the Supreme Court in *Davila*.

The state law claims examined by the Supreme Court in *Davila* were brought by two plan beneficiaries, not a service provider (like the Plaintiff Children's National Medical Center). So, the Supreme Court articulated the test for complete preemption under ERISA in the context of claims brought by plan beneficiaries:

> [I]f an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state of federal) independent of ERISA or the plan terms is violated, then the suit falls 'within the scope of' ERISA § 502(a)(1)(B) [and is completely preempted].

*Id.* at 210.

In *Davila*, the plaintiff beneficiaries sued an HMO alleging that the HMO had refused to cover certain medical services in violation of a duty to exercise ordinary care required by state law. In finding that the claims satisfied the complete preemption test for removal to federal court, the Supreme Court said that the only "coverage" involved was "coverage promised under the terms of ERISA-regulated employee benefit plans." *Id.* at 211. In addition, the Supreme Court reasoned that "interpretation of the terms of the respondents' benefit plans forms an essential part of their [state law claim] and [state law liability] would exist here only because of petitioners' administration of ERISA-regulated benefit plans." *Id.* at 213.

The D.C. Circuit has not yet had occasion to interpret *Davila*'s requirements for establishing complete preemption under ERISA. And, this Court has only issued one published decision citing *Davila*. That decision confirms that "duplication or supplementation [by state law] would conflict with legislative intent to make the ERISA remedy exclusive, and the 'policy choices reflected in the inclusion of certain remedies and the exclusion of others [under ERISA Section 502(a)] would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Stewart v. Nat'l Education Ass'n*, No. 02-2014 (CCK), 2005 U.S. Dist. LEXIS 38731, at *42 (D.D.C. Sept. 16, 2005). There is no precedent in this Circuit (at least the Defendant Fund did not find any such precedent) applying *Davila* to a derivative claim brought by a service provider – like Children's National Medical Center – seeking payment of money from an ERISA-regulated employee benefit plan for services provided to an individual covered by the ERISA plan.

Nevertheless, the Plaintiffs, here, believe they are entitled to be treated differently than a plan participant or beneficiary who is seeking benefits from an ERISA plan. They ask this Court to conclude that, even though *Davila* might completely preempt a state law claim brought by Defendant Hicks against the Fund, the state law claims that the Plaintiffs bring, seeking payment from the Fund for services rendered to Defendant Hicks' son, are not so preempted. Defendant Fund respectfully submits that *Davila* does not permit such a conclusion. It is inconceivable that Congress intended to restrict ERISA plan participant remedies to those available under ERISA § 502(a), while, at the same time, permitting medical service providers (who effectively stand in the participants' shoes) the unrestricted right to pursue claims under state law.

As noted above, Plaintiffs now assert that their claims against Defendant Fund are based on an alleged agreement between Children's National Medical Center and Alliance PPO, Inc.

("Alliance"), whereby Children's National Medical Center "agreed to accept discounted payments from Alliance or its contracted companies ... for medical services provided to beneficiaries of group health insurance in return for the insurance companies' use of the network hospitals and providers."[2] Plaintiffs' Memorandum ¶¶ 13, 18. They argue simplistically that since the agreement between Children's National Medical Center and Alliance is not an ERISA plan, their claims are not preempted by ERISA. Plaintiffs' Memorandum ¶ 19.

Plaintiffs' argument misses the point. The only reason why the Defendant Fund allegedly has an obligation to pay money to the Plaintiffs is because Todd Hicks Jr. was treated at Children's National Medical Center and Todd Hicks Jr. was covered by the Defendant Fund's ERISA plan. Absent the Defendant Fund's coverage of Todd Hicks, Jr. through the Fund's ERISA plan, the Defendant Fund would have no potential obligation whatsoever to Plaintiffs. Plaintiffs have not alleged, nor could they, that the Alliance/MAMSI contract specifies on whose behalf the Defendant Fund will extend health coverage and in what circumstances. Only ERISA plans can state health plan eligibility and coverage terms. *See* ERISA §§ 3(1) and 102, 29 U.S.C. §§ 1002(1) and 1022. Accordingly, the Court necessarily has to examine the Defendant Fund's ERISA plan in order to determine if the Defendant Fund has any liability.

So, how do the Plaintiffs argue against ERISA complete preemption? Despite having affirmatively alleged that there was an assignment of benefit rights between Todd Hicks Sr. and

---

[2] Although Plaintiffs allege that their claims against the Defendant Fund are based on the Alliance/MAMSI Agreement, the Defendant Fund is not a party to that Agreement. Plaintiffs conveniently failed to attach the entire Agreement to their Opposition to Defendant Fund's Motion to Dismiss or, in the Alternative, for Summary Judgment or Plaintiffs' Memorandum in support thereof, apparently to hide the actual parties to this Agreement. The agreements provided by Plaintiffs where Defendant Fund is identified as a party are: (1) a Membership Agreement, whereby Defendant Fund agreed to participate in the Health Care Cost Containment Corporation of Mid-Atlantic Region, Inc. ("HCCCC"); and (2) a Participation Agreement with Alliance and HCCCC, whereby Defendant Fund elected to participate in the Purchaser Services Agreement the HCCCC entered into with Alliance PPO Inc. and agreed to pay Alliance a monthly contribution obligation in accordance with the schedule set forth in the Purchaser Services Agreement and agreed to pay HCCCC an administrative fee per participant for tasks performed by HCCCC. None of these agreements, the Membership Agreement, Participation Agreement, or Purchaser Service Agreement govern Todd Hicks's eligibility for benefits or the types of covered benefits under the Fund which Todd Hicks, or Children's National Medical Center by virtue of an assignment, is entitled to recover.

Children's National Medical Center in their Original and First Amended Complaints (interestingly, a fact which Defendant Hicks specifically *admits* in his Answer to Plaintiffs' Complaint filed in Superior Court (a copy of which is attached hereto as Exhibit A)) they now claim that they cannot actually find one. Plaintiffs Memorandum ¶¶ 14 n.2, 18, & 35. Because they cannot find an assignment, they now claim they cannot bring a derivative claim under Section 502(a) of ERISA, which is authorized by *Psychiatric Institute of Washington, D.C., Inc., v. Connecticut General Life Ins. Co.*, 780 F. Supp. 24, 30 (D.D.C. 1992). And because they cannot find an assignment, and therefore allegedly cannot bring a derivative claim under Section 502(a) of ERISA, they claim that they fail to meet the test for complete preemption under *Davila*.

This Court does not need to resolve the question of whether or not Defendant Todd Hicks Sr. actually assigned his right to benefits from the Defendant Fund in order to determine whether the Plaintiffs' claims are completely preempted. The fact is, the Children's National Medical Center *could have* required Defendant Hicks to do so. And, by doing so, Children's National Medical Center *could have* perfected its right to sue under Section 502(a) of ERISA pursuant to the *Psychiatric Institute* precedent noted above. This case is no different than *Davila* in this respect. *See Davila* at 210 ("[I]f an individual, *at some point in time, could have brought* his claim under ERISA Section 502(a)(1)(B), ... then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)")(emphasis added). In *Davila*, the plaintiffs sought to recover compensatory damages for injuries resulting from denials of health coverage. The Supreme Court held that the plaintiffs there could have avoided the injuries resulting from the denial of coverage by paying for the services themselves and then suing the plans for reimbursement under Section 502(a) of ERISA. *Davila,* 542 U.S. at 211. Here, Plaintiffs could

have avoided the injuries associated with the non-payment of its bills by demanding and obtaining an assignment from Todd Hicks Sr. The fact that Plaintiffs now conveniently claim that they cannot find an assignment means only that they will not succeed on a re-characterized claim for benefits under Section 502(a) of ERISA. It does not mean that they never had the ability to state such a claim – or, that the test of complete preemption under *Davila* is not satisfied.

The Third Circuit's decision in *Pascack Valley Hosp.Inc., v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F. 3d 393 (3d Cir. 2004), relied on by the Plaintiffs to argue against complete preemption, is plainly distinguishable and, in any event, is not the law of this circuit. *Pascack Valley Hosp.*, which involved a lawsuit by a health care provider against an ERISA benefit plan based upon a discount payment agreement between the health care provider and the ERISA plan, did not involve the question of whether benefits had to be paid under the terms of the ERISA plan. Instead, it involved only the question of how much the payments should be. In fact, the Third Circuit expressly acknowledged this important distinction in its opinion: "'[T]he dispute here is not over the right to payment, which might be said to depend on the patients' assignments to the [Hospital], but the amount, or level, of payment, which depends on the terms of the [Subscriber Agreement]." *Id.* at 404. In other words, the legal duty was found to be independent of the ERISA plan, which determined whether benefits were payable in the first instance. The claims therefore failed the second part of the *Davila* test for complete preemption. In other words, "[t]he Hospital's right to recovery, if it exist[ed], depend[ed] entirely on the operation of third-party contracts executed by the Plan that are independent of the Plan itself." *Id.* Since the dispute was over "the *amount*, or level, or payment, which depend[ed] on the terms of the Subscriber Agreement," the court in *Pascack Valley Hosp.* concluded that the Hospital's

claims were not claims for benefits under the terms of an ERISA plan which would be completely pre-empted by ERISA. *Id.* (emphasis added).

The Ninth Circuit in *Blue Cross of California v. Anesthesia Care Associates*, 187 F.3d 1045 (9th Cir. 1999), another case cited by Plaintiffs in support of their opposition to Defendant Fund's Motion, made a similar distinction. In that case, the Ninth Circuit concluded that ERISA did not preempt medical providers' claims for fees under contracts between the medical providers and an HMO that provided benefits to ERISA-covered health plans. Although the contracts required that the providers obtain assignments from their patients, the court found that "[t]he dispute [was] not over the right to payment, which might be said to depend on the patients' assignments to the Providers, but the amount, or level, of payment, which depends on the terms of the provider agreements." 187 F.3d at 1051.

Based upon the distinction made by both the Third Circuit and Ninth Circuit, its follows that in cases -- such as this one -- where the claims are over the right to payment of benefits allegedly promised under an ERISA-regulated benefit plan (and not simply how much the payment will be after application of a negotiated discount), such claims are completely preempted by ERISA. Because Plaintiffs are clearly suing to rectify an allegedly wrongful denial of coverage promised under the terms of an ERISA-regulated employee benefit plan, coverage which arises solely under the terms of the Fund, as compared to the plaintiffs in *Pascack Valley Hosp.* and *Anesthesia Care Associates*, who sued over the amount, or level, of payment required, which arose solely under the terms of the provider agreements, Plaintiffs' claims are completely preempted by ERISA. A decision holding to the contrary on the instant facts, would effectively grant service providers the right to access the state courts in circumstances when plan participants and beneficiaries may not, thus enhancing the prospect of

"conflicting or inconsistent State and local regulation of employee benefit plans" – the very thing that Congress intended to avoid when it enacted ERISA. *See* 102 Cong. Rec. 29933 (1974) (Comments of Sen. Williams).

If, notwithstanding the above, the Court decides that the existence or non-existence of an assignment is somehow determinative of the complete preemption issue (and we submit that it should not so decide), the Court should stay its decision on remand pending discovery on that issue in light of the contradictory allegations about the existence of an assignment in the First and Second Amended Complaints (compare First Amended Complaint ¶¶ 14, 26, & 39 with Second Amended Complaint ¶¶ 14, 26, & 39), as well as Defendant Hicks' admission that he did, in fact, assign his rights to benefits to Children's. (Defendant Hicks' Answer ¶ 14 (a copy of which is attached as Exhibit A)).

## CONCLUSION

Based on the foregoing, Defendant Fund respectfully requests that the Court deny Plaintiffs' Motion for Remand.

Date: March 24, 2006

Respectfully submitted,

*/s/ Donald L. Havermann*

Donald L. Havermann (D.C. Bar No. 337774)
Bridgit M. DePietto (D.C. Bar No. 496400)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
202.739.3000 (Telephone)
202.739.3001 (Facsimile)
dhavermann@morganlewis.com
bdepietto@morganlewis.com

Counsel for Defendant Teamsters Local 639 – Employers Health Trust Fund

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, on this 24th day of March 2006, that a copy of the foregoing Memorandum in Opposition to Plaintiffs' Motion for Remand was served on the following by the means indicated:

<u>Via First Class Mail, postage pre-paid:</u>

L. Bradley Hancock
Greenberg Traurig, LLP
1000 Louisiana, Suite 1800
Houston, TX 77002

Kenneth P. Kaplan
Greenberg Traurig, LLP
800 Connecticut Avenue, NW, Suite 500
Washington, DC 20006

*Attorneys for Plaintiffs Children's National Medical Center and Benefit Recovery Specialists, Inc.*

Lawrence Thrower
1229 15th Street, NW
Washington, DC 20005

*Attorney for Defendant Todd Hicks*

Local Union No. 639, Building, Inc. d/b/a
International Brotherhood of Teamsters,
Local 639 and d/b/a Local 639
3100 Ames Place, N.E.
Washington, DC 20018

*Named Local 639 Defendant*

Sheila Sesker
1057 Marlboro Road
Lothian, MD 20711

*Defendant Sheila Sesker*

_____
Bridgit M. DePietto