# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHILDREN'S NATIONAL MEDICAL CENTER,<br><br>and<br><br>BRSI, L.P. d/b/a BENEFIT RECOVERY SPECIALISTS,<br><br>            Plaintiffs,<br><br>    v.<br><br>Todd Hicks,<br><br>and<br><br>LOCAL UNION NO. 639, BUILDING, INC. d/b/a INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 639 and d/b/a LOCAL 639,<br><br>and<br><br>LOCAL UNION NO. 639, BUILDING, INC. d/b/a INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 639 d/b/a LOCAL 639 – Employer's Health Trust Fund, 3100 Ames Place, NE Washington, DC 20018,<br><br>            Defendants. | No.:   06-0317RJL |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TEAMSTERS LOCAL 639 – EMPLOYERS HEALTH TRUST FUND'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiffs, Children's National Medical Center and Benefit Recovery Specialists, Inc., commenced this action against two named Defendants, Defendant Todd Hicks, individually and on behalf of Todd Hicks, Jr., deceased, ("Defendant Hicks"), and Defendant "Local Union No. 639, Building, Inc. d/b/a International Brotherhood of Teamsters Local 639 and d/b/a Local 639" (the named "Local 639 Defendant"), by filing an Original Complaint in the Superior Court of the District of Columbia, Civil Action No. 00-0000172, on January 12, 2006.[1]  Plaintiffs' Original Complaint asserts state law claims of breach of contract, breach of duty of good faith and fair dealing, quantum meruit, and misrepresentation and/or fraud as a result of medical services that Children's National Medical Center rendered to Todd Hicks, Jr., son and dependent of Defendant Hicks.

On February 3, 2006, Plaintiffs filed a First Amended Complaint in Superior Court seeking to add a third defendant, the Teamsters Local 639 – Employers Health Trust Fund ("Fund" or "Defendant Fund"), as a party to the case, together with a "Motion to Amend Complaint to Add a New Defendant and Cause of Action."  Plaintiffs' First Amended Complaint adds a cause of action for "alter ego" against the Local 639 Defendant, alleging that it is liable for the Defendant Fund's "obligations because it is effectively one and the same, or *alter ego*, of the [Defendant Fund]."  (First Amended Complaint ¶ 37.).

The Fund removed this case to this Court on February 22, 2006 on the grounds that Plaintiffs' claims necessarily arose under federal law – the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*  On March 1, 2006, the Fund then

---

[1] The Teamsters Local 639 – Employers Health Trust Fund is not named as a defendant in the Original Complaint.

moved to dismiss Plaintiffs' claims against the Fund for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment.

Plaintiffs' filed their Opposition to Defendant Fund's Motion to Dismiss or, in the alternative, for Summary Judgment on March 13, 2006, along with a Motion to Remand, a Motion for Continuance, and a Motion for Leave to File Plaintiffs' Second Amended Complaint. On March 21, 2006 this Court granted Plaintiffs leave to file Plaintiffs' Second Amended Complaint. Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56, the Fund now moves to dismiss Plaintiffs' Second Amended Complaint for failure to state a claim upon which relief can be granted or , in the alternative, for summary judgment.[2]

## STATEMENT OF UNDISPUTED MATERIAL FACTS[3]

1.      The named Local 639 Defendant is a local union in Washington, D.C., affiliated with the International Brotherhood of Teamsters, a national union.  (Second Amended Complaint ("Second Am. Compl.") ¶ 4.).

2.      The Fund is an employee welfare benefit plan organized and established under ERISA.  (Declaration of Laurie Mele ("Mele Dec.") ¶ 2.).  The Fund is operated and administrated by a Board of Trustees, which is comprised of four (4) trustees appointed by Local 639 and four (4) trustees appointed by the employers that contribute to the Fund.  (Mele Dec. ¶ 2 and Ex. 1.).  The Board of Trustees conducts business of the Fund in the name of the Teamsters Local 639 – Employers Health Trust Fund.  (Mele Dec. ¶ 2 and Ex. 1.).

4.      The Trust Agreement governs the operation of the Fund.  Pursuant to the terms of

---

[2] Defendant Fund filed an Opposition to both Plaintiffs' Motion for Remand and Motion for Continuance on March 24, 2006.

[3] Defendant Fund submits these undisputed material facts in connection with its alternative request for summary judgment.

the Trust Agreement, the Board of Trustees has established a program of medical and related benefits to provide health benefits to eligible participants and dependents. (Mele Dec. ¶ 2 and Ex. 1.).

5.     Todd Hicks, Jr. was injured in a motor vehicle accident on January 12, 2003, and was taken to Children's National Medical Center for medical care relating to his injuries. (Sec. Am. Compl. ¶ 13.). He remained at Children's National Medical Center until his death on or about January 14, 2003. (Sec. Am. Compl. ¶ 13.).

6.     At the time of Todd Hicks, Jr.'s motor vehicle accident on January 12, 2003, Defendant Hicks was a participant in the Fund, and Todd Hicks, Jr. was the son and dependent of Defendant Hicks. (Second Am. Compl. ¶ 14; Mele Dec. ¶ 3.).

7.     After providing medical services to Todd Hicks, Jr. in connection with the injuries he suffered in the motor vehicle accident on January 12, 2003, Children's National Medical Center sought payment from the Fund for such services. (Sec. Am. Compl. ¶ 15)

8.     The Summary Plan Description ("SPD") for the Fund provides that the Fund "will provide covered benefits" to a participant or dependent for "injur[ies] caused by the action or inaction of another person or party" only if the participant agrees to repay the Fund "from any settlement, judgment or Workers' Compensation recovery [the participant or] dependent[] may receive." (Mele Dec. ¶ 4 and Ex. 2 at p. 75-76.). The participant is "required to sign a form that acknowledges the Fund's right to be reimbursed and verifies that "the participant" will help the Fund secure its rights." (Mele Dec. ¶ 4 and Ex. 2 at p. 76.). "The form must be *completed* before the Fund will make payments on [the participants or participant's] dependent's behalf." (Mele Dec. ¶ 4 and Ex. 2 at p. 76(emphasis added).). The Trustees of the Fund interpret this

language to require the participant's attorney's signature on the subrogation form in the spot indicated for the participant's attorney to sign before it is deemed "complete." (Mele Dec. ¶ 5.).

9.     On July 8, 2004, Defendant Hicks signed a subrogation agreement with the Fund whereby he acknowledged the Fund's right to be reimbursed for any payments it made to cover medical expenses incurred by his son, Todd Hicks, Jr., caused by the action or inaction of another person. (Mele Dec. ¶ 6 and Ex. 3.). Defendant Hicks' attorney, however, failed or refused to sign the subrogation agreement.[4] (Mele Dec. ¶ 6 and Ex. 3.).

10.    The Fund subsequently denied payment of the bill submitted by Children's National Medical Center in connection with the services rendered to Todd Hicks Jr. because Todd Hicks Jr.'s injuries were the result of a motor vehicle accident for which a third party was responsible, and Defendant Hicks failed to provide the Fund with a completed subrogation agreement, as required by the terms of the SPD. (Mele Dec. ¶ 7.).

11.    The Fund's SPD specifically informs claimants of their right under Section 502(a) of ERISA to file suit in federal court. (Mele Dec. ¶ 8 and Ex. 2.). Under the terms of the SPD, a claimant may bring an action under Section 502(a) of ERISA only after the claimant has (1)

---

[4] The Fund expects to be reimbursed for the medical benefits it advances on a participant's behalf, when the participant obtains a monetary recovery from a third party tortfeasor who is responsible for causing the injury. Hence, the Fund's subrogation form, which the Fund's rules say must be completed *before* the Fund will make the benefit payments on the participant's behalf. Hick's attorney failed or refused to sign the subrogation form acknowledging his obligation to honor the Fund's right to reimbursement so that he could settle Hick's tort claim, disburse the settlement proceeds presumably to Hicks and Sesker and keep his attorneys fee without having to first reimburse the Fund from the settlement proceeds. These facts are not material to the disposition of the instant motion but they do explain why Hicks' attorney never signed the subrogation form and why Hicks signed over a year and one half after the hospital bills were incurred. If the Fund simply paid Hick's hospital bills now, after the settlement proceeds have been completely disbursed, and notwithstanding Hick's and Hick's attorney's non-compliance with the Funds rules, the Fund would be harmed because the bill payments would not be offset by the settlement recovery.

submitted a written claim for benefits, (2) been notified that the claim is denied, (3) filed a timely

written request for a review of the claim, and (4) been notified in writing that the denial of the

claim has been affirmed on appeal.  (Mele Dec. ¶ 8 and Ex. 2.).

      12.     Plaintiffs' filed the Second Amended Complaint on March 21, 2006 without first

filing a timely written request for a review of their claim by the Fund's Board of Trustees.  (Mele

Dec., ¶ 9.).

## ARGUMENT

I.    **Plaintiffs' State Law Claims Against The Fund Are Preempted By ERISA, And Therefore, Must Be Dismissed**

    A.    **The Fund Is An Employee Welfare Benefit Plan Covered By ERISA**

As demonstrated both by statutory definition and the express terms of its plan

documents,[5] the Fund is an "employee welfare benefit plan" within the meaning of Section 3(1)

and (3) of ERISA.  *See* 29 U.S.C. §§ 1002(1) and (3).  The terms "employee welfare benefit

---

[5] This Court has held that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim.  *See Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) (holding that "where a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.").  *See also Marsh v. Hollander*, 339 F. Supp. 2d 1, 5 n.4 (D.D.C. 2004) (stating that even thought the Court considered exhibits submitted by the defendant that were attached to motion to dismiss, the Court did not convert the motion to one for summary judgment because documents the attached documents were referred to in the complaint and central to the plaintiff's claim).  When such documents are attached to a motion to dismiss, the defendant is merely assisting the court in making the elementary determination of whether a claim has been stated.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000).  In the Second Amended Complaint, Plaintiffs specifically reference a "health policy" that was allegedly "issued by the [Local] 639 Defendant through the [Defendant] Fund to … Todd Hicks, Sr."  Plaintiffs also allege that the agent of the Local 639 Defendant and Defendant Fund pre-certified Defendant Hicks as being covered under such "health policy."  (Second Am. Compl. ¶¶ 14, 21).  The "health policy" to which Plaintiffs refer is, in fact, a Summary Plan Description, which is required by ERISA (*See* ERISA § 102(a), 29 U.S.C. §1022(a)), and which describes the benefits that the Defendant Fund makes available to eligible participants and beneficiaries.

plan" and "welfare plan" are defined in Section 3(1)(a) of ERISA to include "plan[s], fund[s] or programs" – such as the Fund – that provide "medical, surgical, or hospital care or benefits" to participants or beneficiaries. 29 U.S.C. § 1002(1)(a).

The language of the Fund's Summary Plan Description ("SPD") confirms that the Fund is covered under the terms of ERISA. (Mele Dec. ¶ 2 and Ex. 2.). Specifically, the SPD states that "[t]he Plan is an 'employee welfare benefit plan' under ERISA." (Mele Dec. Ex. 2.). "The Plan provides hospitalization, surgical and medical, disability, dental, vision care, prescription drugs, and major medical benefits to eligible participants and their eligible dependents on a self insured basis."[6] (Mele Dec. Ex. 2.).

## B.     Plaintiffs' State Law Claims Are Preempted By ERISA

Congress designed ERISA to be a comprehensive scheme for regulating the administration of employee benefit plans. To that end, the statutory language provides specific mechanisms for the recovery of benefits and other enforcement of ERISA rights. *See* 29 U.S.C. § 1132. To insure the uniformity and effectiveness of ERISA's regulatory scheme, Congress included an extremely broad preemption provision which provides, in pertinent part, that ERISA "shall supersede *any and all State laws* as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). The United States Supreme Court has determined that "ERISA pre-empts any state law that refers to or has a connection with covered benefit plans . . . 'even if the law is not specifically designed to affect such plans, or the effect is only indirect.'" *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 129-

---

Because this document is referenced in the Second Amended Complaint, the Court may properly consider it on this Motion to Dismiss.
[6] There is no insurance policy funding the medical benefits because the Defendant Fund is self insured.

130 (1992) (quoting *Ingersoll-Rand Co. v. McClendon*, 489 U.S. 133, 139 (1990)).

Pursuant to this statutory language, it is well-settled that ERISA preempts state law claims that "relate to" any "employee benefit plan." *See e.g., Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."). A state law claim "relates to" an employee benefit plan if "it has a connection with or reference to such a plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987). Significantly, "[i]t is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Zuniga v. Blue Cross & Blue Shield of Mich.*, 52 F.3d 1395, 1401 (6th Cir. 1995) (quoting *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991)).

Plaintiffs' Second Amended Complaint purports to assert the following state law claims: breach of contract, breach of duty of good faith and fair dealing, quantum meruit, misrepresentation and/or fraud, and alter ego. According to Plaintiffs, the Fund failed to pay Children's National Medical Center for medical services rendered to Fund participant Defendant Hick's dependent son, Todd Hicks, Jr., after an alleged agent of the Fund supposedly "pre-certified [] Hicks as being covered under the health policy, authorized Children's National Medical Center to provide medical care and services to [] Todd Hicks, Jr., and agreed to pay Children's National Medical Center for the care, services, and goods provided under the Alliance/MAMSI Agreement." (Second Am. Compl. ¶ 14). Although Plaintiffs' Second Amended Complaint fails to recognize that the Fund is an "ERISA plan," it does acknowledge that the Fund is an "employee health fund." (Second Am. Compl. ¶ 5.) In this case, Plaintiffs'

claims against the Fund derive from and exist only because Defendant Hicks was participating in an "employee health fund" governed exclusively by ERISA.

The D.C. Circuit, as well as other federal courts do not countenance state law claims seeking benefits from ERISA-covered employee benefit plans. In the first place, the D.C. Circuit Court has acknowledged that "ERISA's preemption clause … has been interpreted extremely broadly…." *Bd. of Trs. of the Hotel & Rest. Employees Local 25 v. Madison Hotel, Inc.*, 97 F. 3d 1479, 1486-87 (D.C. Cir. 1996) (citation omitted). As explained in *Madison Hotel*, "even general common law causes of action, such as breach of contract, which were not specifically intended to apply to benefit plans covered by ERISA, will nonetheless be preempted insofar as they affect ERISA protected rights." *Madison Hotel*, 97 F. 3d at 1486-87. *See also Moore v. Blue Cross & Blue Shield of the Nat'l Capital Area,* 70 F. Supp. 2d 9, 19 (D.D.C. 1999) (recognizing that the phrase "relate to" in Section 514(a) of ERISA is to be given an "expansive reading.").

Following this principle, several courts within this Circuit have held that state law claims of breach of contract, breach of duty of good faith and fair dealing, misrepresentation, and fraud brought against ERISA plans – like the claims here – are squarely preempted by ERISA. For example, in *Krooth & Altman v. North Am. Life Assur. Co.*, 134 F. Supp. 2d 96, 101 (D.D.C. 2001), the court expressly found that such claims "directly 'relate to' the employee benefit plan because such claims presuppose the existence of a contract", and therefore, "[t]hese claims must be dismissed as preempted by ERISA." Similarly, in *Coleman v. Pension Benefit Guar. Corp.*, 196 F.R.D. 193, 197 (D.D.C. 2000), the court concluded "that plaintiffs' common law misrepresentation claim is preempted by ERISA and must be dismissed."

Likewise, in *Psychiatric Inst. of Wash., D.C., Inc.*, for example, a health care provider brought state law claims for breach of contract and promissory estoppel against a patient's health insurer to recover payment for services rendered allegedly as a result of an oral verification of coverage. Following removal from state court, the insurer moved to dismiss the health care provider's claims on ERISA preemption grounds. The District Court held that ERISA preempted the state law claims because they "not only 'relate' to an employee benefit plan, they depend on an employee benefit plan." *Id.* According to the Court, the provider's "allegations and requested relief are centrally 'connected to the concerns addressed by ERISA' … and directly 'affect relations among principal ERISA entities – the employer, the plan fiduciaries, the plan, and the beneficiaries – as such.'" *Id.* at 29 (citations omitted).

Plaintiffs' state law claims against the Fund in this case squarely "relate to" the scope of benefits available to Fund participant Defendant Hicks and his dependent son, Todd Hicks, Jr., and, more particularly, to the unambiguous coverage exclusion (described in the last section of this Memorandum) that required the Board of Trustees of the Fund to deny authorization for payment of the bill submitted by Children's National Medical Center in the first place. Because the scope of benefits provided by an ERISA plan to its participants and beneficiaries is a "central[] . . . concern[] addressed by ERISA," Plaintiffs' state law claims against the Fund must be deemed preempted as a matter of law. *Psychiatric Inst. of Wash., D.C.,* 780 F. Supp. at 29. *See also Thayer v. Group Hospitalization & Medical Servs., Inc.,* 674 F. Supp. 924, 925 (D.D.C. 1987) (preempting state law breach of contract claim).

Numerous courts in other jurisdictions follow this same reasoning and hold that state law claims brought by providers and others against ERISA plans are preempted by ERISA. *See, e.g., Variety Children's Hosp. Inc. v. Century Med. Health Plan Inc.,* 57 F.3d 1040 (11th Cir. 1995)

(health care provider's state law fraud and misrepresentation claims related to ERISA plan

because they were based on plan's nonpayment of benefits); *Cromwell v. Equicor-Equitable

HCA Corp.*, 944 F.2d 1272 (6th Cir. 1991) (health care provider's state law claims for

promissory estoppel and negligent misrepresentation for medical services rendered to a

participant preempted by ERISA), *cert. dismissed*, 505 U.S. 1233 (1992); *Hermann Hosp. v.

MEBA Med. & Benefits Plan*, 959 F.2d 569 (5th Cir. 1992) (health care provider's state law

claims for estoppel and negligence preempted by ERISA).

In accordance with these precedents, Plaintiffs' state law claims for breach of contract,

breach of duty of good faith and fair dealing, quantum meruit, misrepresentation and/or fraud,

and alter ego against the Fund are preempted by ERISA and must be dismissed.

## II.    In The Alternative, Plaintiffs' Claims Must Be Dismissed As Failing to State a Claim Upon Which Relief Can Be Granted

### A.    Plaintiffs' "Alter Ego" Claim Fails To State a Claim Upon Which Relief Can Be Granted, And Therefore, Should Be Dismissed

As an initial matter, we note that Plaintiffs' Second Amended Complaint appears to assert

the "alter ego" claim, not against the Defendant Fund, but rather against the union. Plaintiffs

allege that the Local 639 Defendant "is liable for the Fund's obligations because it is effectively

one and the same, or *alter ego*, of the [Local] 639 Defendant and, thus, it is fair and just to hold

the [Local] 639 Defendant liable for the 639 Health Fund's obligations." (Second Am. Compl. ¶

37.). To the extent Plaintiffs assert this claim against the Local 639 Defendant (i.e., the union)

and not against the Fund, no response is required.

To the extent that the Second Amended Complaint can be read to set forth an "alter ego"

claim against the Defendant Fund, the alter ego claim must be dismissed. "Although a plaintiff

is not held to a very high standard in a motion to dismiss for failure to state a claim, some

minimal pleading standard does exist." *Kowal v. MCI Comm. Corp.*, 16 F. 3d 1271, 1277 (D.C.

Cir. 1994). The Court should not accept inferences drawn by Plaintiffs if such inferences are unsupported by facts set out in the complaint, nor must the Court accept legal conclusions cast in the form of factual allegations. *See id.*

Plaintiffs' Second Amended Complaint pleads a series of conclusory alter ego allegations based upon "information and belief" with no supporting facts. Thus, the Plaintiffs allege: (1) that, upon information and belief, Defendant Fund is operating as a "d/b/a entity of the [Local] 639 Defendant"; (2) that, upon information and belief, there is "a unity ownership and interest between the [Local] 639 Defendant and the [] Fund"; (3) that, upon information and belief, the Local 639 Defendant's conduct has "resulted in control over the [Fund] to the degree that one cannot reasonably separate" the Local 639 Defendant's interests from the Fund's interest; (4) that, upon information and belief, the Local 639 Defendant "used the [] Fund to carry out its business"; and (5) that, upon information and belief, the Local 639 Defendant "used the [] Fund fraudulently to protect the [Local] 639 Defendant's business from the claims of creditors." (Second Am. Compl. ¶¶ 32-36.). Importantly, Plaintiffs allege *no facts* to support these conclusory statements, and in this respect, the Second Amended Complaint fails to meet even the most minimal pleading standard. *Kowal*, 16 F. 3d at 1277. Because Plaintiffs' fail to allege *facts* to support their alter ego claim, the claim should be dismissed. *See Kowal*, 16 F.3d at 1276.

Furthermore, the text of ERISA supplies a separate reason for dismissing the "alter ego" claim. ERISA expressly recognizes that an employee benefit plan is a legal entity, with capacity to sue or be sued under ERISA. *See* 28 U.S.C. § 1132(d)(1) ("An employee benefit plan may sue or be sued under this title as an entity...."). ERISA further recognizes that "[a]ny money judgment [ordered under ERISA] against an employee benefit plan shall be enforceable *only against the plan* as an entity and shall not be enforceable against any other person *unless* liability

against such person is established in his *individual capacity* under [ERISA]." 28 U.S.C.

§1132(d)(1) (emphasis added.). These requirements mean that Plaintiffs must plead and prove

that each defendant is individually responsible for paying ERISA benefits. Bald, unsupported

allegations that the Fund is an alter ego of the local union do not meet this statutory requirement.

The case law under ERISA plainly recognizes the legal distinction between employee

benefit plans and the unions and employers that sponsor the plans and/or appoint the plan

fiduciaries. *See e.g., NLRB v. Amax Coal Co.*, 453 U.S. 322 (1981) (holding that the ERISA

fiduciary duties and responsibilities and duties of an employee benefit fund trustee are separate

and distinct from the duties and responsibilities of the union which appoints that trustee); *Brown*

*v. Int'l Union, UAW*, 689 F.2d 69, 72 (6th Cir. 1982) (stating that absent special situations (not

alleged in the instant Second Amended Complaint), the union-appointed trustee could not act as

an agent of the Union when performing or failing to perform his duties as a fiduciary); *Yares v.*

*Great Cleveland Pipefitting Training Fund*, 782 F. Supp. 68, 70 (N.D. Ohio 1990), *aff'd*, 929

F.2d 702 (6th Cir. 1991) (holding that trustees of a collectively bargained benefit fund "cannot

be considered agents of the person or organization responsible for appointing them.").

For all of these reasons, Plaintiffs' unsupported allegation that the Fund is the "alter ego"

of the local union cannot stand.

**B.**    **Plaintiffs' Claim For Fraud And/Or Misrepresentation Fails To Meet The**
         **Pleading Requirement of Fed. R. Civ. P. 9(b), And Therefore, Should Be**
         **Dismissed**

The Federal Rules of Civil Procedure clearly state that "[i]n all averments of fraud or

mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.

R. Civ. P. 9(b). In the District of Columbia, the elements of fraudulent misrepresentation in tort

and common law fraud are the same. *See Howard v. Riggs National Bank*, 432 A.2d 701 (D.C.

1981); *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977), *cert. denied*, 434 U.S. 1034 (1978). To

state a claim for fraud, Plaintiffs must demonstrate the following elements:  (1) false

representation or willful omission; (2) a material fact; (3) knowledge of the falsity; (4) an

intention to induce reliance; and (5) action taken in reliance on the representation. *See Howard*,

432 A.2d at 706.  To survive dismissal under Rule 12(b)(6), a claim for fraud must specifically

allege the time, place, and nature of the fraud. *See Witherspoon v. Philip Morris, Inc.*, 964 F.

Supp. 455, 459 (D.D.C. 1997). *See also* Fed. R. Civ. P. 9(f).  Because Plaintiffs' allegation of

fraud is conclusory and contains insufficient factual support, their claim for fraud and/or

misrepresentation fails to meet this heightened pleading requirement, and should be dismissed.

   The factual allegations supporting Plaintiffs' claim are almost nonexistent.  In essence,

Plaintiffs state in a conclusory fashion that Defendant Fund "knowingly made material

misrepresentations, and/or committed fraud with the intent to deceive Children's National

Medical Center, by pre-certifying the Hicks Defendant for treatment and by agreeing to pay for

100% of the care, services, and good provided in accordance with the Alliance/MAMSI

Agreement;" that Defendant Fund "admitted that [it] would pay the bill incurred as a result of the

care, services, and goods provided;" and that Children's National Medical Center "reasonably

relied on the [Defendant Fund's] and/or [its] agent's pre-certification and/or conduct, and has

been injured as a result of the [Fund's] conduct."  (Second Am. Compl. ¶ 30.).

   These conclusory statements contain none of the required elements to state a claim for

fraud.  For example, Plaintiffs wholly fail to identify the contents, time, place or the speaker who

made the alleged misrepresentations.  Moreover, Plaintiffs fail to allege any facts suggesting that

the Fund intended to induce reliance by Children's National Medical Center, or that Children's

National Medical Center would not have rendered medical services to Todd Hicks, Jr. in the absence of the alleged representation by the Fund.

Plaintiffs' conclusory allegation that the Fund "knowingly made material misrepresentations and/or committed fraud with the intent to deceive" is simply insufficient to support a cause of action for fraud under Rule 9, and should therefore be dismissed. *See Bender v. Rocky Mountain Drilling Assocs.*, 648 F. Supp. 330, 336 (D.D.C. 1986) (finding that a complaint replete with conclusory and unsubstantiated allegations of fraud is "patently insufficient under Rule 9(b).") (citing *Equitable Life Assurance Society v. Alexander Grant & Co.*, 627 F. Supp. 1023, 1030 (S.D.N.Y. 1985)).

**III.    To The Extent Plaintiffs' Claims Against The Fund Are Re-Characterized As Claims Under Section 502 Of ERISA, Plaintiffs Lack Standing To Bring Such Claims Or, In The Alternative, Such Claims Fail As A Matter Of Law**

**A.    Plaintiffs Lack Standing To Bring A Claim For Benefits Against The Fund**

Because Plaintiffs' state law claims against the Fund are preempted by ERISA, the only claim that could possibly lie is a re-characterized claim for benefits under Section 502(a)(1)(B) of ERISA. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64-66 (1987) (re-characterizing preempted state law claims as arising under federal law for purposes of determining federal question jurisdiction and the existence of complete preemption). To the extent Plaintiffs' claims against the Fund are re-characterized as claims under Section 502 of ERISA, such claims should be dismissed because Plaintiffs lack standing to file a Section 502(a)(1)(B) claim for benefits against the Fund. Standing to bring a claim under Section 502(a)(1)(B) of ERISA to recover benefits from an employee benefit plan is expressly limited to participants in or beneficiaries of an ERISA plan. *See* 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has narrowly construed Section 502 to permit only the parties enumerated therein to sue directly for relief under ERISA.

*See Franchise Tax Bd. v. Const. Laborers Vacation Trust for S. Cal.*, 463 US 1, 27 (1983).  A

participant in an ERISA plan is "any employee who is or may be eligible to receive a benefit of

any type from an employee benefit plan." 29 U.S.C. § 1002(7).  A beneficiary of an ERISA plan

is "a person designated by a participant, or by the terms of an employee benefit plan, who is or

may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).  Plaintiffs, a hospital and its

agent, are neither participants in nor beneficiaries of an ERISA plan.  Consequently, Plaintiffs

lack standing to bring a claim against the Fund to recover benefits.

**B.      Even If Plaintiffs Have Standing To Bring A Section 502(a)(1)(B) Claim For
          Benefits Against The Fund, Such Claim Fails As A Matter Of Law**

As stated above, the only parties with standing to pursue an ERISA claim under Section

502(a)(1) are participants in or beneficiaries of an ERISA plan. *See* 29 U.S.C. § 1132(a)(1).

Some courts, however, have recognized an exception to the standing requirement where the

participant has assigned his or her rights under the plan to a non-enumerated party, thereby

giving the assignee the derivative right to bring a claim against the plan under Section 502. *See*

*e.g., HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005 (4th Cir. 1996);

*Cromwell*, 944 F.2d at 1277; *Kennedy v. Conn. General Life Ins. Co.,* 924 F.2d 698, 700 (7th

Cir. 1991); *Michael Reese Hosp. and Medical Ctr. v. Solo Cup Employee Health Benefit Plan,*

899 F.2d 639, 640 (7th Cir. 1990); *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d

1286 (5th Cir. 1988); *Psychiatric Inst. of Wash., D.C.,* 780 F. Supp. at 29-30.

Plaintiffs' Original Complaint and First Amended Complaint both alleged that Defendant

Hicks assigned his rights to receive benefits from the Fund to Children's National Medical

Center.  (Original Complaint ¶ 10; First Amended Complaint 12.).  The same allegation does not

appear in Plaintiffs' Second Amended Complaint.  Defendant Hicks, however, admitted in his

answer to Plaintiffs' Complaint that he assigned his rights for medical coverage under the Fund

to Children's National Medical Center.  (Defendant Hicks' Answer ¶ 14 (originally filed in D.C.

Superior Court).  *See* Exhibit A.  If Children's National Medical Center did not obtain an

assignment from Defendant Hicks, the case is over; Children's National Medical Center's state

law claims cannot lie because of ERISA preemption and Children's National Medical Center's

ERISA claims fails due to the lack of an assignment.  If Children's National Medical Center does

have an assignment, Children's National Medical Center may "stand-in-the-shoes" of Defendant

Hicks with regard to its right to bring a claim against the Fund under Section 502(a)(1)(B) of

ERISA.  *Psychiatric Inst. of Wash., D.C.,* 780 F. Supp. at 30 (health care provider that is an

assignee of a participant's benefit has derivative standing to sue under ERISA).  But for the

reasons explained below, the Section 502(a)(1)(B) claim fails as a matter of law.

1.   **Plaintiffs' Failed To Exhaust Their Administrative Remedies Under The Plan**

Although ERISA itself does not specifically require the exhuestion of remedies available

under employee benefit plans, it is well-settled that before filing a suit for benefits under an

ERISA-governed employee benefit plan, claimants must exhaust their administrative remedies

by filing a claim for the benefits through the claim and review process provided by the plan.  *See*

*e.g., Communications Workers of America v. American Tel & Tel. Co.,* 40 F.3d 426 (D.C Cir.

1994); *Diaz v. United Agr. Employee Welfare Benefit Plan & Trust,* 50 F.3d 1478, 1483 (9th Cir.

1995); *Kennedy v. Empire Blue Cross and Blue Shield ,* 989 F.2d 588, 593 (2d Cir. 1993);

*Medina v. Anthem Life Ins. Co.,* 983 F.2d 29, 33 (5th Cir. 1993); *Smith v. Blue Cross & Blue*

*Shield United of Wisc.,* 959 F.2d 655, 658-59 (7th Cir. 1992); *Baxter v. C.A. Muer Corp.,* 941

F.2d 451 (6th Cir. 1991); *Springer v. Wal-Mart Associates' Group Health Plan,* 908 F.2d 897,

899 (11th Cir. 1990); *Weldon v. Kraft, Inc.,* 896 F.2d 793, 800 (3d Cir. 1990); *Makar v. Health*

*Care Corp.,* 872 F.2d 80, 83 (4th Cir. 1989).

The D.C. Circuit expressly requires exhaustion of administrative remedies. *See Communications Workers of America v. AT&T*, 40 F.3d 426, 431-32 (D.C. Cir. 1994) ("It is well established that, barring exceptional circumstances, plaintiffs seeking a determination pursuant to ERISA of rights under their [employee benefit] plans 'must ... exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court.'"). The Court of Appeals described the rationale for the ERISA exhaustion requirement as follows:

> much like the exhaustion doctrine in the context of judicial review of administrative agency action, the exhaustion requirement in the ERISA context serves several important purposes. By preventing premature judicial interference with a pension plan's decisionmaking processes, the exhaustion requirement enables plan administrators to apply their expertise and exercise their discretion to manage the plan's funds, correct errors, make considered interpretations of plan provisions, and assemble a factual record that will assist the court reviewing the administrator's actions.

*Id.* at 432.

Here, the Fund's SPD specifically informs claimants of their right under Section 502(a) of ERISA to file suit in federal court, but only *after* the claimant has (1) submitted a written claim for benefits, (2) been notified that the claim is denied, (3) filed a timely written request for a review of the claim, and (4) been notified in writing that the denial of the claim has been affirmed on appeal. (Mele Dec., ¶ 8 and Ex. 2.). To the extent that Children's National Medical Center "stands-in-the-shoes" of Defendant Hicks, it too must follow the claims and appeal procedure prescribed in the SPD *before* seeking judicial intervention.

In the Second Amended Complaint, Plaintiffs allege that Children's National Medical Center "sent Alliance PPO, and eventually (as a result of non-payment) all Defendants, bills for the care, services, and goods provided in accordance with the Alliance/MAMSI Agreement" and "filed a claim with the [Local] 639 Defendant for payment, and otherwise complied with all conditions precedent of the Alliance/MAMSI Agreement." (Second Am. Compl. ¶ 15).

Assuming *arguendo* that submission of a bill constitutes a claim for benefits under the Plan, nonpayment means that Plaintiffs were obligated to file a written request for a review by the Fund's Board of Trustees before going to court. They did not. (Mele Dec. ¶ 9.). Because Plaintiffs failed to appeal the non-payment of the bill, Plaintiffs' claim for benefits should be dismissed for failing to exhaust administrative remedies.

2.   **In Any Case, Plaintiffs Are Not Entitled To Benefits Because Defendant Hicks Failed To Provide The Fund With a *Completed* Subrogation Agreement, As Required By The Fund's SPD**

Defendant Hicks' dependent son, Todd Hicks, Jr., was injured in a motor vehicle accident and a third party has accepted responsibility in connection with the accident. (Mele Dec. ¶ 7.). If Defendant Hicks' assigned his benefits under the Fund to Children's National Medical Center, then, as an assignee, Children's National Medical Center is entitled to no more than the benefits available to Defendant Hicks under the terms of the Fund's plan of benefits. *See* 29 U.S.C. § 1132(a)(1)(B). Those terms are discussed in the Fund's SPD.

Specifically, the Fund's SPD provides that the Fund will cover certain hospitalization charges and other medical costs incurred by participants and their eligible dependents who are injured, but that coverage is conditional. In cases where a third party is responsible for causing the participant's or participant's dependent's injuries – such as the case here – the SPD contains a specific and unambiguous condition to providing covered benefits. (Mele Dec. ¶ 4 and Ex. 2 at p.75-76.). The SPD provides that the Fund "will provide covered benefits" to a participant or dependent for "injur[ies] caused by the action or inaction of another person or party" only if the participant agrees to repay the Fund "from any settlement, judgment or Workers' Compensation recovery [the participant or] dependent[] may receive." (Mele Dec. ¶ 4 and Ex. 2 at p. 76.). The participant is "required to sign a form that acknowledges the Fund's right to be reimbursed and

verifies that 'the participant' will help the Fund secure its rights." (Mele Dec. ¶ 4 and Ex. 2 at p.

76.). Significantly, "[t]he form must be completed before the Fund will make payments on [the

participants or participant's] dependent's behalf." (Mele Dec. ¶ 4 and Ex. 2 at p. 76.). The

Trustees of the Fund interpret the cited language of the SPD to require that a participant ensure

that his or her attorney also signs the subrogation form in the spot designated for the attorney's

signature before the form is deemed "completed." (Mele Dec. ¶ 5.). The Trust Agreement for

the Fund reserves to the Board of Trustees complete discretion to interpret the terms of the plan

of benefits. (Mele Dec. Ex. 1 at Section 5.3 and Ex. 2 at p. 91.). Accordingly, the Trustees'

interpretation of the "completed" language of the SPD may not be questioned unless the

interpretation is arbitrary and capricious as a matter of law. *See Block v. Pitney Bowes, Inc.*, 952

F.2d 1450 (D.C Cir. 1992).

        As a matter of law, the Trustees interpretation of the "completed" language of the SPD is

neither arbitrary nor capricious. The Fund's subrogation form is drafted to put the participant

*and the participant's attorney on notice* of the Fund's subrogation requirements. Thus, the

subrogation form explains that: (1) "The undersigned Participant or dependent(s) *and his or*

*their undersigned attorney* shall not do, or sign anything that would impair the Participant' s or

dependent(s) right to recover damages, without first securing the Fund's written agreement"

(Mele Dec. Ex. 3 at ¶ 3 (emphasis added).); (2) "If the undersigned Participant or dependent(s)

recovers money from a third party who is or may be liable for the illness or injury that gave rise

to the claim for benefits ... , the Participant, dependent(s) *and the undersigned attorney* ... shall

hold the money in constructive trust for repayment to the Fund, and shall promptly repay the

Fund for the benefits advanced up to the amount of the recovery" (*Id.* at ¶ 4 (emphasis added).);

(3) "This repayment obligation applies to the recovery of any monies, regardless of whether the

payment is characterized is characterized as compensation for pain and suffering or something else, and regardless of whether the Participant or dependent(s) has been made whole as a result of the recovery" (*Id.*); (4) "The undersigned Participant or dependent(s) *and his or their undersigned attorney (if the attorney is holding the monetary recovery)* shall be fiduciaries with respect to the monies held in constructive trust" (*Id.* (emphasis added).); and, (5) "[T]he Fund has an equitable lien upon any recovery received by the Participant, dependent(s), *or undersigned attorney (if the attorney is holding the monetary recovery)* as a result of compromise or by way of judgment on the claims" (*Id.* at ¶ 5 (emphasis added).). Even more importantly, the subrogation form makes the participant's attorney a formal "party" to the agreement. (*Id.* at p. 2 of 3.). That way, the participant and the participant's attorney are both bound by the promise in paragraph 7 of the subrogation form that says: "*All parties to this Agreement agree that the undersigned Participant's or dependent(s)' obligation to repay the Fund has priority over other obligations they may have, including any obligation to pay attorneys fees out of the recovery.*" (*Id.* at ¶ 7 (emphasis added).).

If a participant has not retained an attorney, the participant must complete the form by checking a box on the form that so states. Beneath that box is an admonition to "notify the Fund Office immediately" if "you retain an attorney at a later date." (*Id.* at p. 2 of 3.). Of course, if the participant has retained an attorney, as Defendant Hicks did, the participant is required to complete the form by printing the attorney's name, filling in the attorney's telephone number and date and securing the attorney's signature on the line so marked. (*Id.*). The attorney section of Hicks' subrogation form is not completed. (*Id.*) Conspicuously absent is a signature from Hicks' attorney indicating his agreement to be bound by the Funds subrogation rules, including the rule stating that Hicks' obligation to repay the Fund has priority over other obligations

[Hicks] may have, "including any obligation to pay attorneys fees out of the recovery." (*Id.* at ¶ 7).

Significantly, Hicks could have directed his attorney to sign the subrogation form so that his hospital bills could be paid by the Fund or he could have hired another lawyer who would agree to be bound by the Fund's rules on priority reimbursement out of any tort recovery before attorneys' fees are paid. Instead, Hicks did neither. He provided the Fund with an incomplete form a year and one half after incurring charges at Children's National Medical Center. As a result of Hicks' non-compliance with Fund rules, the Fund properly refused to pay Children's National Medical Center for the medical services provided to Todd Hicks, Jr. (*See* Mele Dec. ¶ 7.). Children's National Medical Center may have a right to proceed against Hicks to secure reimbursement for medical services rendered, but it has no ERISA claim against the Defendant Fund.

Accordingly, to the extent that Plaintiffs' claims against the Fund are re-characterized as claims for benefits under Section 502(a)(1)(B) of ERISA, the unambiguous terms of the plan documents govern Plaintiffs' right of recovery. Those terms required the Fund to deny coverage of the services provided by Children's National Medical Center to Todd Hicks, Jr., and they require the Court to deny Plaintiffs' claims for benefits from the Fund. Plaintiffs' claims against the Fund, accordingly, fail as a matter of law.

## CONCLUSION

Plaintiffs' claims against the Fund for breach of contract, breach of duty of good faith and fair dealing, quantum meruit, misrepresentation and/or fraud, and alter ego are preempted by ERISA. Alternatively, Plaintiffs' claims must be dismissed as otherwise failing to state claims upon which relief can be granted. To the extent the claims are re-characterized as claims for

benefits under Section 502(a)(1)(B) of ERISA, the claims fail because Plaintiffs lack standing or, in the alternative, fail as a matter of law.  Pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, Rule 56, Plaintiffs' claims against the Fund should be dismissed in their entirety, with prejudice.

Date: August 21, 2006                              Respectfully submitted,

Donald L. Havermann (D.C. Bar No. 337774)
Bridgit M. DePietto (D.C. Bar No. 496400)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
202.739.3000 (Telephone)
202.739.3001 (Facsimile)
dhavermann@morganlewis.com
bdepietto@morganlewis.com

*Attorneys for Defendant Teamsters Local
639 – Employers Health Trust Fund*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, on this 21st day of August 2006, that a copy of the foregoing Memorandum of Points and Authorities in Support of Defendant Teamsters Local 639 – Employers Health Trust Fund's Motion to Dismiss Plaintiffs' Second Amended Complaint or, in the Alternative, for Summary Judgment was served on the following by the means indicated:

Via Certified Mail, Return Receipt Requested:

Todd Hicks
1011 Red Maple View Terrace
Churchton, MD 20733

Defendant Hicks

Via First Class Mail, postage pre-paid:

L. Bradley Hancock
Greenberg Traurig, LLP
1000 Louisiana, Suite 1800
Houston, TX 77002

Kenneth P. Kaplan
Greenberg Traurig, LLP
800 Connecticut Avenue, NW, Suite 500
Washington, DC 2006

Attorneys for Plaintiffs Children's National
Medical Center and Benefit Recovery
Specialists, Inc.

Via First Class Mail, postage pre-paid:

Local Union No. 639, Building, Inc. d/b/a
International Brotherhood of Teamsters,
Local 639 and d/b/a Local 639
3100 Ames Place, N.E.
Washington, DC 20018

Named Local 639 Defendant

Bridgit M. DePietto