IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CHILDREN'S NATIONAL MEDICAL CENTER | § § § | |
| & | § § § | |
| BRSI, L.P. d/b/a BENEFIT RECOVERY SPECIALISTS | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 06-0317RJL |
| TODD HICKS, INDIVIDUALLY, AND ON BEHALF OF TODD HICKS, JR., DECEASED | § § § § | |
| & | § § | |
| LOCAL UNION NO. 639, BUILDING, INC. d/b/a INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 639 and d/b/a LOCAL 639 | § § § § | |
| & | § § | |
| LOCAL UNION NO. 639, BUILDING, INC. d/b/a INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 639 d/b/a Local 639 - Employer's Health Trust Fund | § § § § § | |
| Defendants. | § § | |

## PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

Children's National Medical Center ("Children's") and Benefit Recovery Specialists, Inc.

("BRSI") (collectively "Plaintiffs") file this Reply Memorandum of Points and Authorities in

Support of their Motion to Remand.

# I.
## ARGUMENT

**A.    THE HEALTH FUND'S ANALYSIS OF THE SUPREME COURT'S OPINION IN *AETNA HEALTH, INC. V. DAVILA* IS CONTRARY TO THE SUPREME COURT'S FINDINGS AND HOLDING.**

1.    The Health Fund misquotes or incorrectly cites to *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 124 S.Ct. 2488, 159 L.Ed.2d 312 (U.S. 2004).  On page 4 of the Health Fund's Memorandum in Opposition, the Health Fund, citing to *Davila*, states that, "Davila made clear that 'state causes of action fall within the scope of ERISA,' and are removable to federal district court, when allegedly 'independent' claims are derive from or dependent on rights and obligation established by ERISA benefit plans."  The Supreme Court in *Davila*, however, stated as follows:

> Thus, interpretation of the terms of respondents' benefit plans forms an essential part of their THCLA claim, and THCLA liability would exist here only because of petitioners' administration of ERISA-regulated benefit plans.  Petitioners' potential liability under the THCLA in these cases, then, derives entirely from the particular rights and obligations established by the benefit plans.  So, unlike the state-law claims in *Caterpillar, supra*, respondents' THCLA causes of action are not entirely independent of the federally regulated contract itself.

> *Davila* at 213.

2.    The Health Fund also misquotes or incorrectly cites to *Davila*, for the proposition that, "[i]n other words, where, as here, there would be no liability absent the existence of an ERISA benefit plan, state law causes of actions cannot escape the reach of ERISA preemption."  *See* Health Fund's Memorandum in Opposition, page 4.  There is simply no support for such a proposition within the Court's opinion.

3.    Instead, a proper reading shows that the Supreme Court, in *Davila*, set forth a test to determine if a cause of action is completely preempted by ERISA, which requires the court to determine (1) if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and (2) where there is no other independent legal duty that is implicated by a

2

defendant's actions, then the individual's cause of action is completely preempted by ERISA. *Id.* at 210. Causes of action within the civil enforcement provisions of § 502(a) of ERISA are removable to federal court. *Id.*

4.    In any event, the facts in *Davila* are vastly different from the facts here. Respondent Juan Davila was a participant and respondent Ruby Calad a beneficiary under an ERISA employee benefits plan. *Id.* at 204. Both Mr. Davila and Mr. Calad filed suit because they alleged they suffered injuries as a result of Aetna's and Cigna's decisions not to provide coverage for certain treatment and services recommended by respondents' treating physicians. *Id.* at 204-05. The Supreme Court held that respondents' state causes of action fell within the scope of ERISA § 502(a)(1)(B) and were therefore completely preempted by ERISA and removable to federal district court. *Id.* at 214. In contrast here, Plaintiffs are neither a participant or beneficiary under an ERISA employee benefit plan.

5.    Moreover, the Health Fund's argument that *Davila* allows Plaintiffs to force Mr. Hicks' father to sign an assignment of benefits at any time, which would then allow Plaintiffs to assert a claim under § 502(a). Following this logic, every health care provider would be able to assert a claim under § 502(a) because a participant or beneficiary could provide their health care provider with an assignment at any point in the future, whether it was 1 year, 5 years, 10 years or longer, after medical services were provided. The Supreme Court's opinion does not support such an expansive interpretation. In this same respect, the Health Fund neglects the ordinary and plain meaning of the phrase "could have brought his claim" as referred to in *Davila*. Instead of focusing on the ordinary and plain meaning of this phrase, the Health Fund interprets the "could have brought his claim" as meaning some hypothetical possible future claim. There is simply no support in the Court's opinion for such a broad interpretation.

**B.    HICKS WAS AN ELIGIBLE PERSON UNDER THE SUBSCRIBER AGREEMENT AND THE MEDICAL SERVICES PROVIDED TO HICKS WERE COVERED SERVICES UNDER THE SUBSCRIBER AGREEMENT.**

6.    In *Pascack*, the Third Circuit found that the hospital provided medical services to Kimberly Rovetto and Betty Psaras. See *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 396 (3d Cir. 2004) (Justice Alito concurring), *cert. denied* 126 S.Ct. 336, 163 L.Ed.2d 48 (Oct 3, 2005). The Court also found that both Psaras and Rovetto were "Eligible Persons" under the Subscriber Agreement and the medical services provided them were "Covered Services" under the Subscriber Agreement. *Id.* The hospital in *Pascack* alleged that it was a third-party beneficiary to the Subscriber Agreement between an independent consultant and the employee benefit plan, under which the plan became obligated to pay the hospital for eligible medical services provided by the hospital. *Id.* at 397. Although the Health Fund contends otherwise, these facts are identical to the facts in this case. Here, Children's Hospital on or about the same day Mr. Hicks was admitted, confirmed through Alliance/MAMSI that Children's was authorized to provide care to Mr. Hicks and that Teamster's Local 639 would pay 100% of the charges as agreed between Children's and Alliance/MAMSI in their contract with each other. *See* Poris Declaration at para 3. Therefore, under the Service Agreement, which forms the basis for Plaintiffs' claims, it is undisputed that Mr. Hicks was an "Eligible Person" and the medical services provided him were "Covered Services."

7.    While the Health Fund attempts to distinguish *Pascack*, its analysis misses the mark. The Health Fund continuously claims that the issue here is about a denial of coverage. What the Health Fund, however, neglects to mention is that the denial of coverage, even if such were based on an ERISA plan, has no bearing on the Health Fund's independent legal duty under the Subscriber Agreement. As such, any discussion about the failure of Mr. Hicks or his lawyer

4

to properly complete and submit a form as allegedly required under an ERISA plan is irrelevant to Plaintiffs' claims here.

8.    Additionally, the Third Circuit in *Pascack* makes no reference to the denial of coverage in its analysis, but instead focuses on whether the medical services provided were "Covered Services" under the Subscriber Agreement. *Id.* at 396. Consistent with *Pascack*, Plaintiffs here have demonstrated that the medical services provided Mr. Hicks were "Covered Services" under the Subscriber (or Service) Agreement. *See* Poris Declaration at para 3 (Attached as Exhibit C to Plaintiffs' Opposition to the Motion to Dismiss and incorporated herein). The Health Fund's denial of coverage under the Plan is irrelevant to Plaintiffs' claims that Mr. Hicks was eligible and received "Covered Services" under the Subscriber Agreement, since Plaintiffs' claims are based on the Subscriber Agreement and not the Plan. The only evidence before the court on this issue demonstrates that the medical services provided Mr. Hicks were "Covered Services" under the Subscriber Agreement at issue. *See Id.*

## C.    THE HEALTH PLAN FAILED TO SATISFY ITS BURDEN AND PROVE THAT REMOVAL IS PROPER.

9.    This case is removable only if (1) Plaintiffs could have brought their breach of contract claim under ERISA § 502(a)(1)(B), *and* (2) no other independent legal duty supports Plaintiffs' claims. *Pascack* at 400; *see also Davila* at 210. Because the Health Plan is seeking removal, it bears the burden of proving that Plaintiffs' claim is an ERISA claim. *Id.* at 401. It is undisputed that Plaintiffs are not asserting claims here as beneficiaries or participants under an ERISA employee benefit plan in which case Plaintiffs do not have standing to assert a claim under § 502(a). Therefore, the Health Plan must first establish that Children's received an assignment of a claim by a participant or beneficiary. *Id.* Because the Health Plan has failed to demonstrate that Plaintiffs obtained an assignment, the Health Plan cannot demonstrate that

Plaintiffs have standing to sue under ERISA § 502(a). *See id.* at 402. The Health Plan has failed to produce any evidence that Children's received an assignment of a claim by a participant or beneficiary here. As a result, Plaintiffs state law claims could not have been brought under the scope of ERISA § 502(a) and are not completely preempted by ERISA. *See id.* "[T]he absence of an assignment is dispositive of the complete pre-emption question." *Id.* at 404.

**10.** Because the Health Fund has failed to satisfy the requirements of the first prong of this test, removal is inappropriate. Nevertheless, Plaintiffs will briefly address the second prong as the court did in *Pascack*. Based on virtually identical facts as those presented in this case, the *Pascack* Court concluded that the hospital's state law claims were predicated on a legal duty independent of ERISA. *Id.* Although the Court admitted that the hospital's claims were derived from and exist only because of ERISA plan, the Court found that the crux of the parties' dispute was the meaning of the Subscriber Agreement. *Id.* "Were coverage and eligibility disputed in this case, interpretation of the Plan might form an essential part of the Hospital's claims." *Id.* Coverage and eligibility were not in dispute, but instead the lawsuit hinged upon the interpretation of the Subscriber Agreement, not the ERISA plan. *Id.* "The Hospital's right to recovery, if its exists, depends entirely on the operation of third-party contracts executed by the Plan that are independent of the Plan itself." *Id.*

**11.** Here, the Health Plan has admitted that Mr. Hicks was an eligible member. *See* Mele Declaration para 3. The Health Fund then fails to introduce any evidence that the medical services provided Mr. Hicks were not covered benefits under the Subscriber Agreement. Plaintiffs, however, produced evidence which shows that the Health Fund agreed to reimburse Children's for the medical services Children's provided Mr. Hicks. *See* Poris Declaration at para 3. This establishes that the medical services provided Mr. Hicks by Children's were covered

6

benefits under the Subscriber Agreement.  Therefore, coverage and eligibility, like in *Pascack*, are not in dispute here.  The dispute here, like in *Pascack*, is not over the right to payment, but the amount or level of payment, which depends on the terms of the Subscriber Agreement.  *See id.* at 403-404.

> **D.**  **THE HEALTH FUND IGNORES FEDERAL JURISPRUDENCE WHICH HOLDS THAT CLAIMS WHICH ARISE AS A RESULT OF AN AGREEMENT BETWEEN THE PARTIES, SUCH AS THE CLAIMS ASSERTED BY PLAINTIFFS HERE, ARE <u>NOT</u> PREEMPTED BY ERISA.**

12.     It is well established that a subscriber agreement between a health care provider and a health care plan, as Plaintiffs are asserting here, is not preempted by ERISA.  *See Pascack supra* (holding that claim for breach of a subscriber agreement between the hospital and the plan, which alleged that the plan improperly calculated payments for services rendered to beneficiary, was not completely preempted by § 502); *Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc.*, 187 F.3d 1045, 1054 (9th Cir. 1999) (holding that claims asserted by health care providers against a health care plan for breach of their provider agreements do not fall under either ERISA's complete or conflict preemption provisions); *Children's Hosp. Corp. v. Kindercare Learning Center, Inc.*, 360 F.Supp.2d 202, 206 (D.Mass. 2005) (the "breach of contract claim by a third party provider does not involve the ERISA plan, but an independent contract between the two entities"); *Baylor Univ. Medical Center v. Epoch Group, L.C.*, 340 F.Supp.2d 749, 759 (N.D.Tex. 2004) (holding that a state contract claim by a health care provider under a service agreement was not preempted).

13.     Instead of directly addressing this overwhelming line of jurisprudence, the Health Fund argues that its obligation to reimburse Plaintiffs is due to Todd Hicks, Jr. being covered under the Health Fund's ERISA plan and that the Court has to examine the ERISA plan in order

to determine the scope of coverage. These arguments, however, were the exact same arguments addressed and dismissed by the Third Circuit in *Pascack*.

> The Hospital's claims, to be sure, are derived from an ERISA plan, and exist only because of that plan. . . . Were coverage and eligibility disputed in this case, interpretation of the Plan might form an essential part of the Hospital's claim. Coverage and eligibility, however, are not in dispute. Instead, the resolution of this lawsuit requires interpretation of the Subscriber Agreement, not the Plan. The Hospital's right to recovery, if it exists, depends entirely on the operation of third-party contracts executed by the Plan that are independent of the Plan itself.

*See Pascack* at 402.

14.     Children's claims here also involve interpretation of a Subscriber Agreement -- the Alliance/MAMSI agreement -- not the Health Fund's ERISA plan. *See* Section C supra. The Health Fund fails to refer the Court to any legal authority which is inconsistent from the *Pascack* line of cases cited above. The Health Fund also fails to refer the Court to any legal authority which has held that ERISA preemption applies to claims like those asserted by Plaintiffs here. The only legal authority before the Court on this issue is the *Pascack* line of cases which clearly stand for the proposition that ERISA does not completely preempt Plaintiffs' state law claims.

E.     **BY FAILING TO SATISFY ITS BURDEN AND PROVING THAT COMPLETE PREEMPTION APPLIES, REMOVAL IS INAPPROPRIATE REGARDLESS OF WHETHER CONFLICT PREEMPTION APPLIES.**

15.     Conflict or ordinary ERISA preemption cannot serve as the basis for removal jurisdiction. *McClelland v. Gronwaldt*, 155 F.3d 507, 516 (5th Cir. 1998), *citing Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). "In contrast to ordinary preemption, complete preemption not only displaces substantive state law, but also 'recharacterizes' preempted state law claims as 'arising under' federal law for the purposes of determining federal question jurisdiction." *Id.* It is an abuse of discretion for a federal district

court to continue to exercise removal jurisdiction if the federal district court determines that only ERISA conflict preemption applies, but complete preemption does not. *Id.* at 521.

16.    Under the well pleaded complaint rule, the plaintiff if ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim. *Pascack* at 398 (3d Cir. 2004), *citing*, *Beneficial Nat'l. Bank v. Anderson*, 539 U.S. 1, 6 (2003). To support removal, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. *Id.*

17.    In the context of complete versus conflict preemption under ERISA, the Third Circuit further elaborated as follows:

> Pre-emption under § 514(a) of ERISA, 29 U.S.C. § 1144(a), must be distinguished from complete pre-emption under § 502(a) of ERISA, 29 U.S.C. § 1132(a). Only the latter permits removal of what would otherwise be a state law claim under the well-pleaded complaint rule. Under § 514(a), ERISA supersedes state laws that "relate to" an ERISA plan. 29 U.S.C. § 1144(a). Unlike the scope of § 502(a), which is jurisdictional and creates a basis for removal to federal court, § 514(a) merely governs the law that will apply to state law claims, regardless of whether the case is brought in state or federal court. *Lazorko v. Pa. Hosp.*, 237 F.3d 242, 248 (3d Cir. 2000). Section 514(a), therefore, does not permit removal of an otherwise well-pleaded complaint asserting only state law claims. *Pryzbowski*, 245 F.3d at 275 ("[W]hen the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption)."

*See Pascack Valley*, at 398 n.4.

18.    In *Pascack*, the Court held that under the well-pleaded complaint rule, the hospital's complaint did not present a federal question that would support removal. *Id.* at 395. The Court further held that the hospital's state law breach of contract claims are not completely preempted by ERISA's civil enforcement provision because the hospital could not have brought its claims under ERISA. *Id.*

9

19.    Since the Hospital's claims in *Pascack* could not have been brought under section 502(a) of ERISA, the Court held that the claims were not completely preempted. *Id.* at 402. The Court did leave open the possibility that conflict preemption applied, but deferred that decision to the state court -- "It may very well be that that Hospital's breach of contract claim against the Plan will fail under state law, or that the Hospital's state law claims are pre-empted under § 514(a). These matters, however, go to the merits of the Hospital's breach of contract claim, which can only be adjudicated in state court." *Id.* at 404.

20.    In the context of third-party health care providers asserting breach of contract claims based on their own contracts with an insurer, such as Plaintiffs' claims here, federal jurisprudence holds, as previously stated, that complete preemption does <u>not</u> apply. *See Pasack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393 (3d Cir. 2004); *Blue Cross of California v. Anesthesia Care Assoc. Medical Group, Inc.*, 187 F.3d 1045 (9th Cir. 1999); *Baylor University Medical Center v. Epoch Group, L.C.*, 340 F.Supp.2d 749, 760 (N.D.Tex. 2004); *Children's Hospital Corp. v. Kindercare Learning Centers, Inc.*, 360 F.Supp.2d 202, 206-07 (D.Mass. 2005). Many federal courts stop there since such a finding eliminates federal removal jurisdiction. In *Anesthesia Care*, however, the Court went one step further and held that neither complete nor conflict preemption applied to such claims. *Id.* at 1054; *see also Orthopaedic Surgery Associates of San Antonio v. Prudential Health Care Plan, Inc.*, 147 F.Supp.2d 595, 603 (W.D.Tex. 2001).

21.    Plaintiffs here are similarly asserting various breach of contract claims based on their contract with the Health Fund. The only federal jurisprudence currently before the court on this issue holds that ERISA complete preemption does <u>not</u> apply to such claims. Moreover, even

if the Health Fund believes ERISA conflict preemption applies, which Plaintiffs deny, that issue should be decided by the state court. Remand of all of Plaintiffs' claims is thus appropriate.

## II.
## CONCLUSION AND RELIEF REQUESTED

WHEREFORE, Plaintiffs request that their Motion to Remand be granted. Alternatively, to the extent Plaintiffs' Motion for Remand is denied, Plaintiffs ask the Court to defer its ruling on the Health Fund's Motion to Dismiss or in the alternative, pursuant to Plaintiffs' Motion for Continuance to take Fed. R. Civ. p. 56(f) discovery. Plaintiffs additionally request for any other and further relief to which Plaintiffs may be entitled.

Dated this 21st day of August 2006.

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: _____

L. Bradley Hancock *(Admitted Pro Hac Vice)*
District of Columbia Bar No. 465746
GREENBERG TRAURIG, LLP
1000 Louisiana, Suite 1800
Houston, TX 77002
(713) 374-3500 (Telephone)
(713) 374-3505 (Facsimile)

Kenneth P. Kaplan
District of Columbia Bar No. 460614
GREENBERG TRAURIG, LLP
800 Connecticut Avenue, NW, Suite 500
Washington, DC 20006
(202) 331-3191 (Telephone)
(202) 261-0156 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS CHILDREN'S NATIONAL MEDICAL CENTER AND BENEFIT RECOVERY SPECIALISTS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of August 2006, I caused a true and correct copy of the foregoing to be served by electronic mail through CM/ECF on all known counsel of record and via certified mail, return receipt requested upon:

Todd Hicks
1011 Red Maple View Terrace
Churchton, MD 20733

Local Union No. 639 Building, Inc.
3100 Ames Place, NE
Washington, DC 20018

Kenneth P. Kaplan

12