## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CHILDREN'S NATIONAL MEDICAL CENTER | § § § | |
| & | § § § | |
| BRSI, L.P. d/b/a BENEFIT RECOVERY SPECIALISTS | § § § § | |
| Plaintiffs, | § § § | |
| v. | § § § | No. 06-0317RJL |
| TODD HICKS, INDIVIDUALLY, AND ON BEHALF OF TODD HICKS, JR., DECEASED | § § § § § | |
| & | § § § | |
| LOCAL UNION NO. 639 BUILDING, INC. d/b/a INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 639 and d/b/a LOCAL 639 | § § § § § | |
| & | § § § | |
| LOCAL UNION NO. 639 BUILDING, INC. d/b/a INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 639 d/b/a LOCAL 639 - Employer's Health Trust Fund | § § § § § § | |
| Defendants. | § § § | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
AND
IN THE ALTERNATIVE, PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CONTINUANCE TO CONDUCT RULE 56 DISCOVERY**

Pursuant to Rule 7(b), LCvR, Children's National Medical Center ("Children's") and Benefit Recovery Specialists, Inc. ("BRSI") (collectively "Plaintiffs") file this Memorandum of Points and Authorities in Opposition to Defendant Local Union No. 639 Building, Inc. d/b/a International Brotherhood of Teamsters, Local 639 and d/b/a Local 639 - Employer's Health Trust Fund's ("Health Fund") Motion to Dismiss Plaintiff's Second Amended Complaint or, in the alternative, for Summary Judgment ("Motion to Dismiss"). In the alternative, Plaintiffs file a Memorandum of Points and Authorities in Support of their Motion for Continuance to Conduct Discovery under Rule 56(f).

## I.
## PROCEDURAL HISTORY

1.      On January 12, 2006, Plaintiffs filed their Original Complaint against Defendants Todd Hicks, Individually, and on behalf of Todd Hicks Jr., Deceased (collectively the "Hicks Defendant" unless noted otherwise), and Local Union No. 639 Building, Inc. d/b/a International Brotherhood of Teamsters, Local 639 and d/b/a Local 639 ("Local 639") in the Superior Court for the District of Columbia. On February 3, 2006, Plaintiffs filed their Motion for Leave to File their First Amended Complaint seeking to add the Health Fund as a Defendant along with an additional theory of recovery based on alter ego.

2.      The Health Fund then filed its Notice of Removal with the Superior Court of the District of Columbia on or about February 23, 2006. Six days later, on March 1, 2006, prior to the commencement of discovery and before the initial scheduling conference, the Health Fund filed its initial Motion to Dismiss and Memorandum of Points and Authorities in Support of its Motion to Dismiss, or in the Alternative, Motion for Summary Judgment with respect to Plaintiffs' First Amended Complaint. In addition to responding to the Health Fund's initial Motion to Dismiss, Plaintiffs filed a Motion to Remand and in the alternative, a Motion for

2

Continuance.

3.    After further investigating the facts, claims, damages and the relationship between the parties, Plaintiffs then sought leave on March 13, 2006, to file their Second Amended Complaint. *See* **Exhibit A** ("Plaintiffs' Second Amended Complaint"), which is incorporated herein by reference. On March 21, 2006, this Court granted leave to file Plaintiffs' Second Amended Complaint. The parties then filed, and the Court approved, two consecutive motions to stay all proceedings from approximately March 31, 2006 through August 6, 2006. The Health Fund's second Motion to Dismiss was filed on August 21, 2006.

## II.
## PLAINTIFFS' CONTENTIONS

4.    Plaintiffs contend that their state law claims are not completely preempted by application of Section 514 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1144, that their state law claims for alter ego and fraud and/or misrepresentation should not be dismissed, that Plaintiffs have standing to file a claim to recover benefits against the Health Fund, and that Plaintiffs are not required to exhaust administrative remedies. Plaintiffs contend that their causes of action are based upon state law contractual claims, and that any pleading deficiencies have been cured.

## III.
## STATEMENT OF UNDISPUTED MATERIAL FACTS

5.    On or about January 12, 2003, Todd Hicks, Jr., a minor, was in a serious automobile accident that required immediate medical care. *See* **Exhibit A, ¶ 13.** Todd Hicks, Jr. entered Children's for medical care relating to his injuries. *See* **Exhibit A, ¶ 13.** Todd Hicks, Jr. remained in Children's from January 12, 2003 until his untimely death, which occurred on or about January 14, 2003. *See* **Exhibit A, ¶ 13.** Throughout this period, at the special request of

3

the Defendants and in accordance with an agreement between Children's and the Defendants' managed care agent, Children's provided necessary medical care, treatment, services, and goods to Todd Hicks, Jr. *See* **Exhibit A,** ¶¶s 13-14; **Exhibit B** (Declaration of Lester Poris), ¶¶s 2-3; **Exhibit C** (a true and correct selection from the billing section of Children's contract with Alliance/MAPSI); **Exhibit D** (a copy of the Alliance contract with Local 639), all of which are incorporated herein by reference.

6.      For more than eighteen (18) years Children's has been a party to a Hospital Services Agreement with M.D. Individual Practice Association, Inc. ("M.D. IPA") ("Children's Service Agreement"). *See* **Exhibit E.** As a result of Children's Service Agreement, Children's agreed to provide covered medical services to M.D. IPA's members. *See id.* Since 1992, the Health Care Cost Containment Corporation of Mid-Atlantic Region ("HCCCC") and Alliance PPO, Inc. ("Alliance") have been parties to a Purchase Service Agreement ("HCCCC Service Agreement"). *See* **Exhibit F.** In accordance with the HCCCC Service Agreement, Alliance agreed to arrange health care providers for HCCCC's members. *See id.* As set forth in the Declaration of Lester Poris, the Health Fund and/or Local 639 are members of HCCCC and Alliance. *See* Exhibit 2 to **Exhibit B.** On information and belief, M.D. IPA and Alliance are subsidiaries of Mid Atlantic Medical Services, LLC (MAMSI).

7.      Todd Hicks, Jr. was eligible for benefits under a health insurance policy issued by Local 639 through the Health Fund to Todd Hicks. *See* **Exhibit A,** ¶ 14; **Exhibit B,** ¶¶s 2-3. Local 639 and the Health Fund, either directly or indirectly through their agent Alliance or MAMSI (hereinafter "Alliance/MAMSI"), had a contract with Children's ("Alliance/MAMSI Agreement") in which Local 639 and the Health Fund were required to pay for covered services rendered to members of the Health Fund in accordance with a set fee schedule. *See* **Exhibit A,**

4

¶¶s 14-15; **Exhibit B**, ¶¶s 2-3; **Exhibit C**; **Exhibit D**. Upon Todd Hicks, Jr.'s admission to Children's, Alliance/MAMSI, on behalf of Local 639 and the Health Fund, pre-certified Todd Hicks, Jr. as being covered under the health insurance policy, authorized Children's to provide medical care and services to him, and agreed to pay Children's for the care, services, and goods provided pursuant to the Alliance/MAMSI Agreement. *See* **Exhibit A**, ¶ 14; **Exhibit B**, ¶¶s 2-3.

### *Children's Pursuit for Payment:*

8.     After providing care, treatment, services, and goods to the Hicks Defendant, as required by Children's agreement with Alliance/MAMSI and in reliance on the Defendants' agent's promise of payment, Children's sent Alliance/MAMSI bills for the care, treatment, services, and goods provided in accordance with the Alliance/MAMSI Agreement. *See* **Exhibit A**, ¶ 15; **Exhibit B**, ¶ 4; **Exhibit C**; **Exhibit D**. The total amount due for the services at that time was approximately $88,595.95. *See* **Exhibit B**, ¶ 13. Children's filed a claim with Alliance/MAMSI for payment, and otherwise complied with all conditions precedent to the Alliance/MAMSI Agreement. *See* **Exhibit A**, ¶ 15; **Exhibit B**, ¶ 4; **Exhibit C**; **Exhibit D**. However, while Children's complied with all conditions precedent, neither Local 639, nor Health Fund nor the Hicks Defendant arranged for payment of the claim. *See* **Exhibit A**, ¶ 15; **Exhibit B**, ¶¶s 7, 13. Eventually (on August 13, 2003), Local 639 through the Health Fund represented to Children's that additional details and/or forms were required before payment could be made and that payment was not yet due. *See* **Exhibit A**, ¶ 15; **Exhibit B**, ¶ 5.

9.     Children's used its best efforts to comply with the request for additional details and/or forms. *See* **Exhibit A**, ¶ 16; **Exhibit B**, ¶ 5. However, in spite of Children's best efforts, none of the Defendants arranged for payment of the claim. On May 31, 2005, Children's claim was *informally* denied for failure to provide a completed subrogation agreement. Completion of

the subrogation agreement would have required Children's to acquire the signatures of Todd

Hicks and his personal attorney, persons over whom Children's has no control. *See* **Exhibit A,** ¶

16; **Exhibit B,** ¶ 13. The Defendants have failed and refused to assist Children's in obtaining a

completed subrogation agreement. *See* **Exhibit A,** ¶ 17; and **Exhibit B** ¶ 11. Children's

thereafter contracted with Plaintiff BRSI, as its agent, to pursue recovery of its claim against the

Defendants. *See* **Exhibit A,** ¶ 17. Children's has never received a formal, written denial of its

claim. *See* **Exhibit B,** ¶ 12. As a result of the Defendants' conduct, Plaintiffs were forced to

bring suit against all Defendants for payment of the medical care, treatment, services, and goods

provided to Todd Hicks, Jr. under the Service Agreement. *See* **Exhibit A,** ¶ 18; **Exhibit C;**

**Exhibit D.** It is undisputed that Children's provided the care, that the care was appropriate and

necessary, and that Children's charges for the care were appropriate and reasonable.

### *The Alliance/MAMSI Agreement:*

      10.    The Health Fund's Motion to Dismiss neglects to mention, let alone address, the

Alliance/MAMSI Agreement which forms the basis of the claims in this matter. Instead,

Defendant's Motion to Dismiss focuses its attention on an alleged assignment of health care

benefits (as a first step to justify non-payment on the basis of its alleged "attorney signature"

requirement). Without addressing the merits of the assignment, Plaintiffs elected, as they have

the right to do, to assert their claim against the Health Fund based solely on the Alliance/MAMSI

Agreement, which is a contract separate and apart from the Health Fund Plan. Since Plaintiffs'

claims arise under the Alliance/MAMSI Agreement, state law controls and ERISA does not

govern, control, or preempt the Alliance/MAMSI Agreement. Since Plaintiffs' claims are for

breach of contract and/or misrepresentation/fraud relating to the Alliance/MAMSI Agreement

and Plaintiffs' reliance on Defendants' agents' pre-certification of coverage under the

Alliance/MAMSI Agreement, Defendants' Motion to Dismiss should be denied as further stated below.

### IV.
### IN THE ALTERNATIVE, A MOTION FOR CONTINUANCE IS APPROPRIATE SINCE PLAINTIFFS HAVE NOT HAD AN OPPORTUNITY TO CONDUCT DISCOVERY

11.     When presented with a FED. R. CIV. P. 12(b)(6) motion, a district court "must construe a plaintiff's claim liberally" in its favor, giving it "the benefit of all favorable inferences that can be drawn from the alleged facts." *Equal Employment Opportunity Comm'n. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). A complaint should not be dismissed under 12(b)(6) unless "it appears *beyond doubt* that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (emphasis added). The facts previously recited and those facts contained in Plaintiffs' Second Amended Complaint justify a denial of Defendant's Motion because they support a breach of contract claim, amongst other claims, against the Health Fund.

12.     However, Defendant's Motion, in reality, is more appropriately considered a Motion for Summary Judgment. *See* FED. R. CIV. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56"). The Health Plan's Motion presents and refers to a declaration, a trust agreement, a subrogation agreement, and a Summary Plan Description alleged to be the Health Plan's ERISA plan in place at the time of the care provided. It should therefore be considered a Motion for Summary Judgment under FED. R. CIV. P. 56. *See* FED. R. CIV. P. 12(b).

13.    After adequate time for discovery has passed, the court may grant summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552 (1986). However, Courts are reluctant to grant fact-based summary judgment motions early in the case, before discovery is completed. *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). Here, adequate time for discovery has not passed. No discovery has yet been conducted. Egregiously, in support of its Motion to Dismiss, Health Fund attempts to introduce multiple documents along with a declaration for the Court to consider, without first having given the parties time for discovery (and before the Local 639 Defendant has made any appearance).

14.    Pursuant to FED. R. CIV. P. 56(f), a non-movant may request additional time for discovery to respond to a motion for summary judgment. Rule 56(f) motions should be granted "almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995). Plaintiffs therefore request a continuance under Rule 56(f) to conduct discovery on the claims asserted and to give Plaintiffs ample opportunity to discover additional facts relating to Defendants' defenses.

15.    It is undisputed that Plaintiffs have not had the opportunity to conduct any discovery in this matter. Plaintiffs filed their Motion for Leave to File their First Amended Complaint (seeking to add Health Fund as a Defendant) on February 3, 2006. The first time the Health Fund filed a pleading in this case was when the Health Fund filed its Notice of Removal on February 22, 2006. Then, on March 1, 2006, Health Fund filed its Motion to Dismiss (or in the alternative, Motion for Summary Judgment). Soon thereafter, the parties agreed to stay all proceedings in hopes of resolving their disputes. The stay order expired approximately fifteen (15) days before Health Fund filed the instant Motion to Dismiss. It is apparent that Plaintiffs

8

have been afforded no time during the course of this litigation to conduct discovery of the multiple issues asserted by Health Fund in its Motion to Dismiss or on any of the claims asserted. Consequently, it would be appropriate for the Court to delay ruling on the Motion to Dismiss (or in the alternative, Motion for Summary Judgment) so that Plaintiffs might conduct discovery. A continuance would also be in accord with providing Plaintiffs, as justice permits, an opportunity to conduct appropriate discovery on their claims and to adequately prepare a further response to Defendant's motion and summary judgment evidence.

16.    When a district court converts a Rule 12(b)(6) motion to one for summary judgment, it must allow all parties both a reasonable opportunity to present all material made pertinent to such a motion by Rule 56 and a chance to pursue reasonable discovery. *Taylor v. Federal Deposit Ins. Corp.*, 132 F.3d 753, 765 (D.C. Cir. 1997). Rule 56(f) motions should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence. *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995). A party opposing summary judgment needs a reasonable opportunity to complete discovery before responding to a summary judgment motion and insufficient time or opportunity to engage in discovery is cause to defer decision on motion. *Khan v. Parson Global Services, Ltd.*, 428 F.3d 1079, 1087 (D.C. Cir. 2005). In spite of this, however, the Health Fund has produced several documents and declaration testimony for the Court to consider, without first having given the parties time for discovery (and before the Local 639 Defendant has made any appearance).

17.    Plaintiffs therefore seek discovery under Rule 56(f) on the following issues:

      a.    the contracts or agreements between the parties;

      b.    the contracts or agreements between Children's and Alliance/MAMSI and M.D. IPA, and the enforceability of any such contract or agreement on any third parties

9

such as the Health Fund or Local 639;

      c.    the contracts or agreements between the Health Fund and/or Local 639 and Alliance/MAMSI, and any third party beneficiaries to any such contract or agreement such as Children's;

      d.    any contracts, agreements or affiliations between the Health Fund and/or Local 639 and the Health Care Cost Containment Corporation of Mid-Atlantic Region or any other health care purchasing coalition or any other health and welfare trust fund;

      e.    discovery regarding any statements or correspondence between the Health Fund and/or Local 639 (directly or indirectly through their agents) and Children's regarding promises or assertions that the Health Fund or Local 639 would pay for the medical services Children's provided Todd Hicks Jr.; and

      f.    the relationship between the Health Fund and Local 639 and their communications with third parties to determine whether the Health Fund is the alter ego of Local 639 or vice versa. *See* **Exhibit G** (Declaration of Kenneth Kaplan).

    18.    This discovery goes to the very heart of Plaintiffs' breach of contract, breach of duty of good faith and fair dealing, quantum meruit, and misrepresentation/fraud causes of action. This discovery, as Plaintiffs have alleged and as supported by the Declaration of Lester Poris, will reveal factual disputes at issue in this case, including, *inter alia*, a direct or indirect contractual relationship between Children's and the Health Fund and/or Local 639 wherein the Health Fund and/or Local 639 agreed to reimburse Children's for medical services provided to Mr. Hicks. Moreover, much of this information is in the possession of the Health Fund, Local 639 or third parties to which Plaintiffs have no right to control. As a result, Plaintiffs have been unable to obtain this discovery in the less than two months that have lapsed since the filing of

this lawsuit (January 12, 2006) and the Health Fund filing their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (March 1, 2006). Additionally, the parties for approximately the last 120 days were engaged in settlement discussions and had agreed to stay all proceedings during that period, which has severely limited Plaintiffs ability to conduct discovery in these areas. Accordingly, the Court should grant Plaintiff's request to take discovery under Rule 56(f), Fed. R. Civ. P., prior to the Court's ruling on the Health Fund's Motion to Dismiss because it will provide Plaintiffs the opportunity to bring genuine issues of material fact in dispute to light and present facts essential to their opposition to the Motion to Dismiss without prejudicing the parties.

19.    Plaintiffs' request to take discovery pursuant to FED. R. CIV. P. 56(f) is not for delay, but so that justice may be done.

## V.
## ARGUMENT

A.    **PLAINTIFFS' CLAIMS ARISE AS A RESULT OF AN AGREEMENT BETWEEN THE PARTIES AND THUS ARE <u>NOT</u> PREEMPTED.**

20.    Plaintiffs' claim against the Health Fund is based on an agreement it, along with the Health Fund, entered into with Alliance PPO, also sometimes referred to as MAMSI. *See* **Exhibit A, ¶¶s 14-15; Exhibit B, ¶¶s 2-3; Exhibit C; Exhibit D.** Alliance organizes a network of hospitals and other health care providers that have agreed to accept discounted payments from Alliance or its contracted companies (like Local 639 and the Health Fund) for medical services provided to beneficiaries of group health insurance in return for the insurance companies' use of the network hospitals and providers. *See* **Exhibit C; Exhibit D.**

21.    Alliance entered into such an arrangement with both the Health Fund and Children's. *See* **Exhibit B, ¶¶s 2-5; Exhibit C; Exhibit D.** The Alliance/MAMSI Agreement

governs payments, and in this case, payments made by the Health Fund to Children's after they are pre-certified and processed by Alliance. *See* **Exhibit B**, ¶ 5; **Exhibit C**; **Exhibit D**. In return, Children's provides the Health Fund, as it does other insurance plans within the Alliance/MAMSI network, a discounted rate for such goods and services in accordance with a predetermined fee schedule. *See* **Exhibit B**, ¶ 4; **Exhibit C**; **Exhibit D**. This is the basis for Children's claim against the Health Fund.[1] *See* **Exhibit A**, ¶ 18.

22.    The claim under the Alliance/MAMSI Agreement is <u>not</u> a claim that Children's could have asserted under ERISA and it is <u>not</u> pre-empted by ERISA. *See Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393 (3d Cir. 2004) (Justice Alito concurring), *cert. denied* 126 S.Ct. 336, 163 L.Ed.2d 48 (Oct 3, 2005) (holding that claim for breach of a subscriber agreement between the hospital and the plan, which alleged that the plan improperly calculated payments for services rendered to beneficiary, was not completely preempted by § 502). In other words, the Circuit Court held that the hospital's claims were not preempted because the state law claims were based on a legal duty independent of ERISA -- in this case, the interpretation of a network provider agreement between the Union health plan and an independent organizer of network hospitals, MagNet, Inc., where Pascack Valley Hospital was a third-party beneficiary of a provider agreement, very much like the Alliance/MAMSI Agreement. *Id.* at 402.

23.    The relevant facts in *Pascack* mirror the facts here in many respects. Pascack entered into a "Network Hospital Agreement" with MagNet. *Id.* at 396. MagNet organizes a network of hospitals that have agreed to accept discounted rates for medical services provided to

---

[1] Although Children's had initially alleged the existence of both the Alliance/MAMSI Agreement along with an assignment of benefits under Hick's medical plan, upon further investigation, Children's has discovered that no assignment from Mr. Hicks is in its records. *See* Exhibit C at 12.

beneficiaries of group health plans in return for the plans' promise to encourage beneficiaries to use network hospitals. *Id.* The Union health plan was one of these plans that entered into a subscriber agreement with MagNet. *Id.* In the "Subscriber Agreement," the Union health plan agreed to pay network hospitals for covered services provided to eligible persons within thirty (30) days of receipt of submitted claims. *Id.* The Union health plan also acknowledged in the "Subscriber Agreement" an obligation to pay within this time period, otherwise the Union health plan would lose its benefit of the MagNet discounted reimbursement rate and the hospital could then bill and collect its customary rate for the services rendered. *Id.*

24.    In 1999, Pascack provided covered medical services to Kimberly Rovetto and Betty Psaras both of whom were eligible persons under the "Subscriber Agreement." *Id.* The hospital in *Pascack* filed suit in state court, however, when the Union health plan failed to promptly pay these claims within the thirty (30) days of receipt of the claims. *Id.* The Union health plan removed the case to Federal District Court and then moved for summary judgment asserting that the hospital's claim in *Pascack* was preempted by ERISA. *Id.* at 397. The Third Circuit reversed the District Court and held that the "Subscriber Agreement" was **not** preempted by ERISA. *Id.* at 402. As a result, the Third Circuit remanded the case to state Court based on its finding that the hospital's complaint in *Pascack* did not present a federal question and thus removal of the case was inappropriate. *Id.* at 404. In his concurring opinion in *Pascack*, Justice Alito indicated that even if there had been a valid assignment to the hospital by the participant under the ERISA plan, ERISA would still not preempt the hospital's claims.[2]    Pursuant to the

---

[2] Although Justice Alito found ample evidence to support a finding that the claims had been assigned to the hospital, he nonetheless concurred in the judgment. *Id.* at 404-05. This reasoning is consistent with *Children's Hosp. Corp. v. Kindercare Learning Center, Inc.*, where the District Court held that the Hospital could disregard its assignment claim and instead pursue its claim for breach of a service agreement. *Id.* 360 F.Supp.2d 202, 206 (D.Mass. 2005).

13

holding in *Pascack*, Plaintiffs' claims are not preempted and dismissal (under 12(b)(6) or through summary judgment) is inappropriate.

      **i.**      **Plaintiffs Have Elected to Assert Their Claims Under the Alliance/MAMSI Agreement.**

25.     Plaintiffs have elected, as they have the right to do, to assert their claims solely under the Alliance/MAMSI Agreement and not under §502 of ERISA. *See* **Exhibit A,** ¶ 18; *see also Children's Hosp. Corp. v. Kindercare Learning Center, Inc.*, 360 F.Supp.2d 202, 206 (D.Mass. 2005), wherein Children's Hospital had an assignment of benefits from the participant of an employee health care plan and thus was entitled to sue under §502 as an assignee, but elected not to pursue such a claim. *Id.* "The fact that Children's Hospital could have sued as an assignee is not the test for complete preemption. As a matter of its own complaint, Children's Hospital had the right to assert independent causes of action regardless of the assignment." *Id.* at 207. Instead of explicitly asserting a claim under ERISA, Children's Hospital decided to assert claims against the plan, Blue Cross, based on the breach of a service agreement. *Id.* at 206. The Court held that the "breach of contract claim by the third party provider does not involve the ERISA plan, but an independent contract between the two entities." *Id.*; *see also Baylor Univ. Medical Center v. Epoch Group, L.C.*, 340 F.Supp.2d 749, 759 (N.D.Tex. 2004) (holding that a state contract claim by a health care provider under a service agreement was not preempted).

26.     As in *Children's Hospital* and *Baylor University,* this case involves a service agreement between the parties and Alliance/MAMSI. Furthermore, even if Children's had an assignment from Todd Hicks, which it has determined it did not, its claims would still not be preempted. *Id.; and see Pascack, Id.* at 404-05. As a result, the Court should not preempt Plaintiffs' claims under ERISA.

> **ii.    Plaintiffs Do <u>Not</u> Have Standing to Prosecute Their Claim for Breach of the Service Agreement Under ERISA.**

27.    Plaintiffs do not have standing to prosecute their claim for breach of the Alliance/MAMSI Agreement under §502(a) of ERISA, which allows a "participant or beneficiary" to bring suit to, amongst other things, "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  A participant is defined as any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type form an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.  29 U.S.C. § 1002(7).   A beneficiary is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."  29 U.S.C. § 1002(8).

28.    The test for determining whether a cause of action is preempted by ERISA is set forth by the Supreme Court in *Aetna Health, Inc. v. Davila*, as follows:

> If an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan is violated, then the suit falls within the scope of ERISA § 502(a)(1)(B).  In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's action is completely pre-empted by ERISA § 502(a)(1)(B).

542 U.S. 200, 210, 124 S.Ct. 2488, 2496 (2004) (citation omitted).  Here, another independent legal duty is implicated, that arising under the Alliance/MAMSI Agreement.  Thus, Plaintiffs' action is not pre-empted by ERISA.

29.    In relying on Alliance/MAMSI's promise of payment on behalf of Local 639 and the Health Fund, Children's provided services to Todd Hicks, Jr. and agreed to accept payment from the Health Fund and/or Local 639 for services rendered to their subscribers according to a specified fee schedule contained in the Alliance/MAMSI Agreement. *See* **Exhibit B**, ¶ 4; **Exhibit C**; **Exhibit D.** Children's claims arise from the Alliance/MAMSI Agreement and could not be asserted by their patients, are not claims for benefits under the terms of ERISA plans, and thus do not fall within § 502(a)(1)(B). *See Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc.*, 187 F.3d 1045, 1050 (9th Cir. 1999). The court in *Anesthesia Care* held that claims asserted by health care providers against a health care plan for breach of their provider agreements were not pre-empted, regardless of the fact that beneficiaries of ERISA covered plans had assigned their rights to reimbursement to the health care providers. *Id.* at 1050-52. The dispute in *Anesthesia Care* was "not over the right to payment, which might be said to depend on the patients' assignments to the Providers, but the amount, or level, of payment, which depends on the terms of the provider agreements." *Id.* at 1051.

30.    Since the Hicks Defendant requested and received, and Children's agreed to provide, in accordance with the Alliance/MAMSI Agreement, medical care, services, and goods, the parties had a contract for medical care which is governed by the Alliance/MAMSI Agreement. *See* **Exhibit A**, ¶¶s 14-15; **Exhibit B**, ¶¶s 2-5; **Exhibit C**; **Exhibit D.** The Defendant's Motion to Dismiss, however, fails to address or distinguish the Alliance/MAMSI Agreement between the parties and, as the authorities above indicate, the claims under the Alliance/MAMSI Agreement are not preempted. As such, Defendant's Motion to Dismiss should be denied.

16

## B.    ALTER EGO.

31.    Additional discovery is needed on Plaintiff's alternative alter-ego theory of recovery, because the line between Local 639 and the Health Fund as distinct legal entities is not clearly defined.[3] As the case law suggests, "alter-ego" refers to a judicially imposed exception to the principle of limited liability by which a Court can disregard the separateness of an entity and hold its parent or affiliate entity responsible for its action as if it were its own. Generally, a "piercing claim," another reference for an alter-ego claim, is a theory of recovery to allow the recovery of a judgment against a parent or affiliate entity. Piercing and/or alter-ego claims are asserted against parents or affiliate entities where justice so requires. Specifically, in *In re Capital Hill Healthcare Group d/b/a Capital Hill Nursing Center*, 242 B.R. 199 (Bankr. D.C. 1999), the Court indicated that declaring an entity to be an alter ego of another entity is available "as the justice of the case may require and to avoid injustice." *Id.* Piercing the corporate veil, in other words, is a device for which "the ultimate principle is one permitting its use to avoid injustice" or to avoid a perversion of the truth. *Id.*

32.    The Health Fund and Local 639 Defendants were named as d/b/a's in the First Amended Complaint because neither of these Defendants are registered to do business in the District of Columbia under the names the Health Fund refers to in its brief. Specifically, a diligent review of the District of Columbia records indicates that neither Local 639 *nor* the Health Fund are registered to do business in the District of Columbia under the names "Teamsters Union Local 639" or "Teamsters Local 639 - Employers Health Trust Fund." Plaintiffs ask the Court to take judicial notice of the lack of corporate filings within the District

---

[3] To the extent the Health Fund is willing to stipulate that (1) it is the appropriate entity to be sued in this matter; (2) the Health Fund is responsible for all communications with Children's; and (3) it is adequately capitalized, Plaintiffs will dismiss their alter ego theory of recovery against Local 639.

of Columbia as to Teamsters Union Local 639 or Teamsters Local 639 - Employers Health Trust Fund and their apparent failure to follow corporate formalities in the District.

33.    As indicated in the Declaration of Lester Poris, when Local 639 and/or the Health Fund representatives, the identity of which will be determined through discovery, spoke with Children's, they referred to their entities loosely as "Local 639", an apparent d/b/a for both entities. The alter-ego theory of recovery is alleged to prevent Local 639 and/or the Health Fund from benefiting from their failure to properly identify themselves, avoiding judgment by failing to follow formalities, failing to register to do business in the District under their alleged names, from failing to maintain a registered office in the District of Columbia (even though they are both clearly doing business in the District), and from otherwise avoiding or failing to adhere to requirements and/or corporate formalities. Discovery is necessary under Fed.R.Civ.P. 56(f) to determine additional details regarding Local 639's and/or the Health Fund's business in the District, their lack of filings, and their conduct in the District to the extent an alter ego theory may be necessary to prevent injustice. Accordingly, insofar as Defendant asks the alter-ego theory of recovery to be dismissed, a dismissal would be inappropriate at this time.

### C.    PLAINTIFFS' ALLEGATIONS OF FRAUD AND/OR MISREPRESENTATION SATISFY THE PLEADING REQUIREMENTS OF THE FEDERAL RULES OF CIVIL PROCEDURE.

34.    FED. R. CIV. P. 9(b) should not be read in isolation of other procedural canons, but should be harmonized with Rule 8(a) and (e) that the pleadings should contain a short and plain statement of the claim or defense and that each averment should be simple, concise and direct. *U.S. v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (citations omitted). Taken together, Rules 8 and 9(b) require that "the pleader ... state the time, place and content of the false misrepresentation, the fact misrepresented and what was retained or given up as a result of the fraud" and identify the individuals involved in the fraud. *Id.* (citations omitted).

18

35.    Plaintiffs Second Amended Complaint provides sufficient particularity as to their fraud and/or misrepresentation claims. Plaintiffs' Second Amended Complaint sets forth the time, place and content of the false misrepresentation along with the fact misrepresented, the damages sustained and the parties involved. *See* **Exhibit A**, ¶¶s 29-30 (which incorporates by reference ¶¶s 1-28 of Plaintiffs' Second Amended Complaint). Plaintiffs' allegations of fraud and/or misrepresentation therefore satisfy the pleading requirements of the Federal Rules of Civil Procedure and dismissal is inappropriate, particularly at this stage in the proceeding.

36.    Alternatively, if the Court finds that Plaintiffs' Complaint is deficient in this regard, the Court may consider this Opposition and the attached Declaration of Lester Poris to supplement the pleading requirements. For purposes of FED. R. CIV. P. 9(b), a party may supplement or amend its complaint through legal memorandum submitted as oppositions to motions for dismissal or summary judgment. *Shekoyan v. Sibley Int. Corp.*, 217 F.Supp.2d 59, 73 (D.D.C. 2002). Moreover, if the Court finds the allegations contained in both Plaintiffs' Complaint and this Opposition to be insufficient, Plaintiffs seek leave to amend their Complaint. Leave to amend should be allowed to cure deficiencies in pleading fraud. *Id.* at 74, *citing Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C.Cir. 1996). Accordingly, in the alternative, Plaintiffs seek leave to amend their Complaint to provide additional detail, if needed.

### D.    ALTERNATIVELY, PLAINTIFFS' EXHAUSTION OF ADMINISTRATIVE REMEDIES WOULD HAVE BEEN FUTILE.

37.    Although no longer relevant since Plaintiffs' claims for breach of contract under the Alliance/MAMSI Agreement are not preempted under ERISA, there was nevertheless no duty to exhaust administrative remedies if this had been an ERISA matter.

38.    To the extent a health care provider elects to bring a claim under ERISA, §502(a) allows a "participant or beneficiary" to bring suit to, amongst other things, "recover

benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). ERISA heath care benefits are assignable to health care providers. *Hermann Hosp. v. Meba Medical & Benefits Plan*, 845 F.2d 1286, 1289 (5th Cir. 1988); *Misic v. Building Service Employee's Health*, 789 F.2d 1374, 1377 (9th Cir. 1986). As a claimant or assignee, a health care provider can elect to stand in the shoes of plan participants and can be authorized under §1132(a)(1)(B) to sue to recover benefits due under the plan. *The Psychiatric Institute of Washington, D.C. v. Connecticut General Life Ins.*, 780 F.Supp. 24, 30 (D.D.C. 1992).

39.    Children's had initially believed that, in addition to a claim under the Alliance/MAMSI Agreement, that it had received an assignment of health care benefits from Todd Hicks, Sr. Children's has since determined that it did not receive an assignment from Todd Hicks, Sr.[4] *See* **Exhibit B,** ¶ 12. Although there is no controlling case law in this Circuit, other courts have found that health care providers who are assigned health care benefits must exhaust administrative remedies contained in plans prior to filing suit. *Weiner v. Klais and Co.*, 108 F.3d 86, 91 (6th Cir. 1997); *Tarr v. State Mutual Life Assurance Co.*, 913 F.Supp 40, 44 (D.Mass. 1996). Moreover, this Circuit has recognized an exception to the exhaustion of administrative remedies requirement when, as here, exhaustion of administrative remedies would be futile. *Communications Workers of America v. American Telephone and Telegraph Co.*, 40 F.3d 426, 432 (D.C. Cir. 1994).

40.    Even if Plaintiffs' claims had been ERISA claims, under well established

---

[4] It is important to note that even though the Health Fund contends that Plaintiffs, as alleged assignees, are preempted from bringing claims for breach of contract, misrepresentation, or fraud, the Health Fund fails to show the Court that even the SPD attached to Defendant's Motion prohibits assignment, thereby eliminating any grounds -- under the Health Funds' argument -- for preemption arising from assignment. *See* SPD, Defendant's Exhibit 2 at p.77 "You cannot assign, pledge, or encumber or otherwise alienate any legal or beneficial interest in benefits under the Plan, and any attempt to do so will be void."

precedent, a failure to exhaust administrative remedies may be excused when the plan gives

inadequate notice of both the denial of a participant's/beneficiary's claim and the available

appeals procedure. *Dishman v. Unum Life Ins.*, 269 F.3d 974, 984-85 (9th Cir. 2001). A

participant or beneficiary is also excused from exhausting administrative remedies when the plan

does not follow its own rules and when the plan breaches ERISA duties such as failing to give

specific reasons for denial and failing to cite to specific sections of the plan upon which denial is

based. *Lee v. California Butchers' Pension Trust Fund*, 154 F.3d 1075, (9th Cir. 1998), *citing* 29

U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(f);[5] *see also Conley v. Pitney Bowes*, 34 F.3d 714,

718-19 (8th Cir. 1994) (plan is required to inform claimant of appeal procedure at the time its

denies benefits). As indicated in the Declaration of Lester Poris, the Health Fund never gave

Children's notice of the alleged reasons for denial, never referred to its Plan documents, its

provisions, or any ERISA appeal requirement. *See* **Exhibit B**, ¶ 12. Failure to inform a

participant/beneficiary of the available and required internal administrative remedies is a

violation of ERISA, and at the very minimum excuses the exhaustion of administrative remedies

until the plan informs the participant/beneficiary of such requirements. *Back v. Danka Corp.*,

---

[5] In accordance with regulations by the Secretary, every employee benefit plan shall --

    (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

    (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review....

29 U.S.C. § 1133.

(f) Content of notice. A plan administrator ... shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:

    (1) the specific reason or reasons for denial;

    (2) specific reference to pertinent plan provisions on which the denial is based;

    (3) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

    (4) appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503-1(f).

335 F.3d 790, 792 (8th Cir. 2003), *citing* 29 U.S.C. § 1022(b). Here, the Health Fund has not

produced any evidence that it provided the required notice to Children's. In fact, the evidence is

to the contrary. The Declaration of Lester Poris clearly indicates that the required notice was not

given. *See* **Exhibit B,** ¶¶s 10-12.

    41.    Estoppel may also be applied to preclude the assertion of failure to exhaust

administrative remedies as a defense where the failure results from the participant's/beneficiary's

reliance on a misrepresentation by the plan administrator. *Gallegos v. Mt. Sinai Medical Center*,

210 F.3d 803, 810 (7th Cir. 2000). Here, a failure by the Health Fund to even indicate the

existence of any Plan documents, and the Health Fund's apparent reliance on their failure to

notify Children's of the alleged appeal requirements constitutes grounds for estopping the Health

Fund from relying on terms that were not made known to Children's until the Health Fund filed

its motion to dismiss or, in the alternative, motion for summary judgment.

    42.    Futility is also grounds for excusing any failure to exhaust administrative

remedies. If ERISA had applied in this instance, an exhaustion of administrative remedies here

would be futile for several reasons. First, the Health Fund failed to follow the administrative

remedies (or provide notice of them) in the Plan and thus is estopped from demanding

compliance with the exhaustion of those remedies. For example, the Health Fund never sent

Children's a formal written denial or notified Children's of the reasons for denial or provided

any notice of any ERISA appeal rights or obligations and thus failed to comply with its own Plan

requirements. *See* **Exhibit B,** ¶ 12. The Health Plan failed to provide Children's with the

specific reason why it was denying the claim. **Exhibit B,** ¶ 12. The Health Fund also failed to

inform Children's of the existence of any administrative remedies that needed to be exhausted,

such as the right to appeal, the identity and contact information for the appropriate appellate

body, or the time limits applicable to an appeal. *See* **Exhibit B**, ¶ 12. Next, on May 31, 2005, the Health Fund simply orally told Children's that Hicks' lawyer needed to sign the subrogation agreement, but failed to cite any section in the Plan that made such a requirement binding on a health care provider. *See* **Exhibit B**, ¶¶s 10, 12. Further, the Health Fund should be estopped from precluding the assertion of failure to exhaust administrative remedies since the Health Fund misrepresented that the claim had been approved and that it would be paid. *See* **Exhibit B**, ¶¶s 5, 7-8. Finally, since Mr. Hicks' attorney indicated that he will not sign an subrogation form, the Health Fund's catch-22 with respect to their alleged requirement for an attorney signature provides sufficient basis for a finding of futility as to Defendant's exhaustion defense. *See* **Exhibit B, ¶ 11.**

43.    Plaintiffs are not asserting a claim under an ERISA Plan. However, had they elected to do so, or to the extent the Court believes a claim under ERISA has been asserted, the estoppel and/or futility defenses to the exhaustion of administrative remedies would have excused Plaintiffs from exhausting administrative remedies under the Plan. At the very least, genuine issues of material fact exist on this issue so as to preclude summary judgment.

E.    **DEFENDANT HICKS' FAILURE TO PROVIDE THE FUND WITH A SUBROGATION AGREEMENT SIGNED BY AN ATTORNEY HAS NO BEARING ON THE CLAIMS ASSERTED BY PLAINTIFFS AGAINST THE HEALTH FUND.**

44.    The Health Fund fails to provide any legal support for its argument that Plaintiffs have a legal duty to demand that Hicks' lawyer sign a subrogation agreement.

45.    Plaintiffs have no control over Hicks or his lawyer. *See* **Exhibit B**, ¶ 11. There is no evidence of agency, employment or other special relationship between Plaintiffs and Hicks' attorney where Plaintiffs can compel Hicks's attorney to sign a subrogation form. Furthermore,

the uncontroverted evidence indicates that Mr. Hicks' attorney has refused to sign a subrogation form. *See* **Exhibit B**, ¶ 11.

46.      Aside from the Health Fund providing proof of a special relationship between Plaintiffs and Hicks or his lawyer, or establishing that Plaintiffs have a right or an ability to force Hicks' lawyer to sign subrogation form, there is no evidence that Plaintiffs can comply with the Health Fund's newfound requirement, which is not stated in the SPD provided by the Health Fund as summary judgment evidence. Instead, ignoring the plan documents, the Health Fund neglects to address the lack of any such requirement in the Alliance/MAMSI Agreement OR the alleged plan documents. The Alliance/MAMSI Agreement forms the basis of Plaintiffs' claims and the Alliance/MAMSI Agreement does not require a plan participant/beneficiary's lawyer to complete a subrogation form. As such, the Health Fund's insistence on a signed subrogation from Hicks' lawyer is misguided as no such requirement exists under the Alliance/MAMSI Agreement. *See* **Exhibit C**; **Exhibit D**. At the very least, there is a genuine issue of material fact on this issue that precludes summary judgment as a matter of law.

47.      Although the Health Fund claims that there is a requirement under the SPD for a plan participant's attorney to sign a subrogation form before health care providers will be paid for their services, this requirement is not stated in the SPD and there is no arguable basis for including this requirement. At the very least, to the extent any of Plaintiffs claims had been preempted, which they should not be, Plaintiffs would be entitled to discovery relating to the Health Fund's abuse of discretion in reading the alleged requirement into the SPD. This is particularly true given that a plain reading of the SPD does not require a subrogation form signed by the participant/beneficiary's lawyer. *See* **Defendant's Exhibit 4**, at pgs. 75-76. Even if such were a requirement under the SPD, Plaintiffs' claims arise from an independent contract, the

Alliance/MAMSI Agreement, which does not contain any such requirement. *See* **Exhibit C**; **Exhibit D**.

## VI.
## CONCLUSION AND PRAYER

WHEREFORE, Plaintiffs, Children's National Medical Center and Benefit Recovery Specialists, Inc. request that Defendant Local Union No. 639, Building, Inc. d/b/a International Brotherhood of Teamsters, Local 639 and d/b/a Local 639 - Employer's Health Trust Fund's Motion to Dismiss Plaintiffs' Second Amended Complaint, or in the alternative, Motion for Summary Judgment, be denied in its entirety. Alternatively, Plaintiffs ask the Court to defer its ruling on the Health Fund's Motion to Dismiss to allow Plaintiffs to conduct FED. R. CIV. P. 56(f) discovery to more fully address the issues in the Health Fund's Motion. Plaintiffs additionally pray for any other and further relief to which Plaintiffs may be entitled.

Dated this 5th day of September 2006.

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: _L. Bradley Hancock / KPK_

L. Bradley Hancock (*Admitted Pro Hac Vice*)
District of Columbia Bar No. 465746
GREENBERG TRAURIG, LLP
1000 Louisiana, Suite 1800
Houston, TX 77002
(713) 374-3500 (Telephone)
(713) 374-3505 (Facsimile)

Kenneth P. Kaplan
District of Columbia Bar No. 460614
GREENBERG TRAURIG, LLP
800 Connecticut Avenue, NW, Suite 500
Washington, DC 20006
(202) 331-3191 (Telephone)
(202) 261-0156 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS CHILDREN'S NATIONAL MEDICAL CENTER AND BENEFIT RECOVERY SPECIALISTS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was forwarded to all known counsel of record in accordance with the Federal Rules of Civil Procedure on this 5th day of September, 2006.

_Kenneth P. Kaplan_