ALLIANCE PPO, INC.

PURCHASER SERVICE AGREEMENT

FOR SELF INSURED

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND0000001

**EXHIBIT**

tabbies

F

ALLIANCE PPO, INC.
PURCHASER SERVICE AGREEMENT

## TABLE OF CONTENTS

PAGE

I. SERVICES AND COMPENSATION ........................................... 2
    1.1 Provider Contracting Services. ....................................... 2
    1.2 Administrative Services. ............................................ 2
    1.3 Preferred Provider/Utilization Review. ............................... 2
    1.4 Alliance PPO, Inc. Compensation. .................................... 3
    1.5 Preferred Provider Compensation. .................................... 3
    1.6 Payment of Claims and Expenses. ..................................... 3
    1.7 Participants. ....................................................... 4
    1.8 Promotion of PPA. ................................................... 4
    1.9 Eligibility. ......................................................... 4
    1.10 Access to Member Funds Records. .................................... 4
    1.11 Cooperation. ....................................................... 5
    1.12 Independent Contractors. ........................................... 5
    1.13 Provider-Patient Relationship. ..................................... 6
    1.14 Hold Harmless. ..................................................... 6
    1.15 Insurance. ......................................................... 6
    1.16 Legal Defense. ..................................................... 6
    1.17 Standard and Character of Performance. .............................. 6
    1.18 Reliance on Communications. ........................................ 7
    1.19 Proprietary Information. ........................................... 7

II. TERM AND TERMINATION OF AGREEMENT ................................. 7
    2.1 Effective Date. ..................................................... 7
    2.2 Termination. ........................................................ 7
    2.3 Termination for Cause by Alliance PPO, Inc. .......................... 7
    2.4 Termination for Cause by Purchaser. .................................. 8
    2.5 Contact of Alliance Preferred Providers. ............................. 9
    2.6 Applicable Law. ..................................................... 9

III. MISCELLANEOUS ..................................................... 9
    3.1 Amendments. ......................................................... 9
    3.2 Waiver. ............................................................. 9
    3.3 References to Purchaser. ............................................ 9
    3.4 Third Party Rights. ................................................. 10
    3.5 Assessments. ........................................................ 10
    3.6 Limitations. ........................................................ 10
    3.7 Arbitration. ........................................................ 10

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

-i-

HWFUND0000002

3.8   Duties on Termination. .............................    10
3.9   Performance by Alliance PPO, Inc. ..................    10
3.10  Successors and Assigns. .............................    11
3.11  Assignment. .......................................    11
3.12  Headings. .........................................    11
3.13  Notice. ...........................................    11
3.14  Entire Agreement. .................................    12
3.15  Applicable Law. ....................................    12

ATTACHMENT LIST ...........................................    13

ATTACHMENT A

    PARTICIPATION AGREEMENTS. ...........................  14

ATTACHMENT B

    PREFERRED PROVIDER ARRANGEMENTS ...................   16

ATTACHMENT C

    ADMINISTRATIVE SERVICES .............................    17
    1.  Financial Systems and Services. ...................    17
    2.  Claims Screening. ................................    17
    3.  Utilization and Peer Review. ......................    17
    4.  Excluded Expenses and Services. ..................    17

ATTACHMENT D
COMPENSATION TO ALLIANCE PPO, INC. ....................    20

    ALLIANCE PPO/MAPSI - Fee Schedule For Member Funds .........  20

ATTACHMENT E

    SERVICE AREA MAP ..................................    21
    ALLIANCE PPO GEOGRAPHIC AREAS .......................   22

ATTACHMENT F

    ALLIANCE PPO, INC. PROVIDER MANUAL ................  23

ATTACHMENT G

    ALLIANCE "PHYSICIAN CLAIM REPORT" ..................   24

-ii-

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND0000003

## ALLIANCE PPO, INC.

### PURCHASER SERVICE AGREEMENT

This Agreement, effective the first day of January, 1992, by and between the Health Care Cost Containment Corporation of Mid-Atlantic Region (hereafter referred to as "Purchaser"), and Alliance PPO, Inc. (hereafter "Alliance PPO, Inc."), a corporation organized under the laws of the State of Maryland.

WHEREAS, Purchaser is a non-profit corporation consisting of member Health and Welfare Trust Funds, established to undertake health care cost containment efforts on behalf of its member funds;

WHEREAS, certain member Health and Welfare Trust Funds (hereafter referred to collectively as "Member Funds") have elected to participate through the Purchaser in obtaining cost containment services hereafter described in this Agreement;

WHEREAS, Participation Agreements of Member Funds, which may be supplemented or diminished from time to time, are attached hereto as Attachment A;

WHEREAS, Member Funds have adopted health care plans for their eligible participants and the eligible dependents thereof under which such persons are entitled to certain health service benefits (hereafter "Covered Benefits"); (Hereafter the term "Participants" shall mean eligible participants of Member Funds, and where applicable, their dependents.)

WHEREAS, Purchaser desires to offer to its Member Funds a preferred provider arrangement (hereafter "PPA");

WHEREAS, on behalf of its Member Funds, Purchaser desires to purchase certain administrative and provider contracting services for operation of their health care plans from Alliance PPO, Inc.; and

WHEREAS, Alliance PPO, Inc. desires to provide administrative and provider contracting services for Purchaser's Member Funds health care plans, including a PPA;

NOW THEREFORE, in consideration of the promises and mutual covenants contained herein, it is hereby agreed as follows:

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

-1-

HWFUND0000004

## I. SERVICES AND COMPENSATION

1.1    Provider Contracting Services. Alliance PPO, Inc. shall arrange, through contracts with physicians, hospitals and other health care providers or entities contracting on behalf of such providers (hereafter "Preferred Providers"), for the reasonable availability of Covered Benefits from health care providers to Participants (hereafter "Provider Contracting Services"), on the preferred provider arrangement rates and terms described in Attachment B hereto. Alliance PPO, Inc. shall provide Purchaser with a list of Preferred Providers (including names, addresses, telephone numbers, and, when applicable, respective specialties), which list may be revised by Alliance PPO, Inc. from time to time. Purchaser may include the names, addresses, telephone numbers and the specialties of Preferred Providers in any roster it prepares for distribution to Participants and in connection with Purchaser's marketing and administration of the Plan. Any such written materials to be distributed by Purchaser must be approved by Alliance PPO, Inc., in advance of distribution. Alliance warrants that its initial and ongoing service provider credentialing process shall be in accordance with the terms and conditions set forth in Alliance's proposal dated July 17, 1991, submitted to purchaser, which is incorporated herein and made a part hereof.

Purchaser agrees that Purchaser will not contract with any other organization to provide services similar to those provided by Alliance PPO, Inc. for Participants who live or work in the State of Maryland, District of Columbia, or Commonwealth of Virginia during the term of this contract. It is recognized by the parties that Member Funds may utilize services similar to those provided by Alliance, by separate arrangements.

1.2    Administrative Services. Alliance PPO, Inc. shall perform the administrative services set forth in Attachment C hereto (hereafter "Administrative Services") for the operation of the Member Funds. Purchaser and the Member Funds shall cooperate with Alliance PPO, Inc.'s performance of these administrative services in the manner set forth in Attachment C. Alliance PPO, Inc. shall perform these services in accordance with the reasonable exercise of its business judgment on behalf of the Member Funds and all applicable statutory and regulatory requirements. Member Funds shall at all times retain ultimate control over the assets and operations of their plans and final responsibility for the obligations of the plans imposed by law. Alliance PPO, Inc. shall be responsible to perform only the functions described in this Agreement in accordance with policies, directives, and controlling documents of the Member Funds.

1.3    Preferred Provider/Utilization Review. This Agreement constitutes a master agreement through which Member Funds may elect to participate. This Agreement covers both the Preferred Provider Organization services to be administered by Alliance and the Utilization Review Services to be administered by Alliance. It is agreed that these services are separate and distinct, and that Member Funds may elect to participate in either the Preferred Provider Arrangement or the Utilization Review or both. The charges to be assessed under this agreement, and the amounts to be paid by Alliance to Purchaser shall be separately calculated for each Member Fund based upon the rates applicable to the

-2-

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

service(s) elected by the Member Fund. The separate Alliance/MAPSI Participation Agreement to be executed by each Member Fund shall set forth which service(s) each Member Fund shall elect.

1.4 Alliance PPO, Inc. Compensation. As a fee for the Administrative Services and for its arrangement for Provider Contracting Services, Member Funds shall pay Alliance PPO, Inc. by the fifth of each month the amount specified in Attachment D hereof. It is understood that a portion of each fee paid by Member Funds to Alliance constitutes an administrative charge due to Purchaser for its services to Member Funds in administering its cost containment programs. Alliance shall pay to Purchaser the amount due to Purchaser as its administrative charge based upon payments made by the Member Funds to Alliance, as set forth in Attachment D.

1.5 Preferred Provider Compensation. Member Funds and their participants shall be solely responsible for compensating Preferred Providers for Covered Benefits according to the rates and terms provided previously by Alliance PPO, Inc. as may be amended time to time by Alliance PPO, Inc. provided, however, that nothing in this agreement shall be construed to require the Member Funds to modify their existing schedule of benefits. Current rates and terms are described in Attachment B hereof. Payment by Member Funds and their participants to Preferred Providers in accordance with the terms of this Agreement shall constitute full payment for the provision of Covered Benefits to Participants except that Preferred Providers shall have the right to collect from the Participant any applicable copayment or deductible which when added to payment received from Member Funds will equal the allowed Alliance Fee Maximum for covered services rendered the Participant by Preferred Providers. Payment for non-covered services rendered the Participant by Preferred Providers, is the responsibility of the Participant. Member Funds agree to compensate Preferred Provider within twenty seven (27) days after date of mailing of repriced statements to the Member Funds by Alliance PPO, unless Alliance PPO, Inc. or Purchaser notifies Preferred Provider that the statement was deficient or denied payment based upon the determination that services were outside the scope of the Plan. Member Funds are aware that the contractual relationship between preferred providers and Alliance guarantee acceptance of repriced fees if paid within thirty (30) days, and that failure by a Member Fund to process a claim within twenty seven (27) days might risk loss of the benefit of the repriced savings. Alliance guarantees that it will forward to the Member Funds its repriced claim within three (3) days from the date received from the preferred provider. The requirement that Alliance reprice claims within three days shall not apply to those claims which Alliance deems deficient or refers for cost containment analysis.

1.6 Payment of Claims and Expenses. Member Funds and their Participants shall be solely liable for the provision and payment of benefits provided their Participants and dependents pursuant to their plans and Alliance PPO, Inc. will not be considered the insurer, guarantor or underwriter of the liability of the Member Funds to pay or provide such benefits to the Member Funds' Participants. Member Funds will be responsible for

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

-3-

HWFUND0000006

all expenses incident to the operation of their plans and the PPA, except as may be specifically assumed by Alliance PPO, Inc. under this Agreement.

1.7  Participants. Purchaser will provide Alliance PPO, Inc., upon reasonable written request, with a list of Participants of the Member Funds who are qualified to receive Covered Benefits under the plans, including names, addresses and identification numbers. Alliance PPO, Inc. may inspect and review Purchaser's or Member Funds eligibility records upon reasonable written request to determine the accuracy of said list, and to determine the accuracy of compensation paid to Alliance PPO, Inc.

The parties recognize that the geographical boundaries within which Alliance PPO, Inc. provides its services are limited, and it is specifically agreed and understood that the obligation of the Purchaser and its Member Funds to compensate Alliance PPO, Inc. for Participants is limited to those Participants who reside, work in or seek services within the Geographical boundaries within which services are provided, as described in Attachment E hereto; it is agreed that no payments are due with respect to Participants residing and obtaining medical treatment outside of these geographical boundaries.

Purchaser or its Member Funds shall provide each Participant with an identification card similar to the sample card included as Attachment F, and when such card is provided, it shall include the logo and name of Alliance PPO, Inc.  The Member Funds are responsible for Covered Benefits provided to their eligible Participants who present an identification card to a Preferred Provider to the extent of the schedule of benefits under the Member Funds plan.

1.8  Promotion of PPA. Purchaser agrees to be responsible for the marketing in good faith of the PFA to Participants of its Member Funds, and to use its best efforts to encourage participation of Participants in the PPA. Neither Purchaser nor Member Funds shall be required to adopt or implement incentives to utilize Preferred Providers, as it is expressly understood that each Member Fund shall have the unrestricted right to adopt and maintain its own schedule of benefits. Alliance PPO, Inc., may suggest to Member Funds such incentives as it shall deem in the interests of the plans to consider as cost containment measures, and Member Funds may consider such incentives, but are not required to adopt them.

1.9  Eligibility. Member Funds have established the eligibility requirements for participation of Participants in the plans which are described in the plan documents of each Member Fund.  Alliance PPO, Inc. shall have the right to obtain all written eligibility requirements of Member Funds. Any changes in such eligibility requirements of Member Funds is reserved solely to the discretion of the Member Fund, provided, however that Member Funds shall promptly notify Alliance of any change in eligibility requirements.

1.10  Access to Member Funds Records. All records relating to the operation of the Member Funds, including but not limited to, all books of medical account, enrollment

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

4

HWFUND0000007

records, general administrative records and patient records, shall be and remain the sole property of the Member Funds. In addition, all information systems pertaining to and developed by the plans shall also be and remain the property of the Member Funds. To the extent that Alliance PPO, Inc. shall establish, maintain and carry out procedures for the keeping and preservation of the Member Funds' books and records, including providing for the manner and time of their preservation in accordance with all applicable laws, Alliance PPO, Inc. shall use reasonable efforts to protect the confidentiality of the records of the Member Funds during the term of the contract and thereafter. In this connection, medical records and other privileged information regarding Participants will not be disclosed to anyone other than Member Funds by Alliance PPO, Inc. or Purchaser except (i) with the written consent of the Participants as applicable only for their own medical records, (ii) pursuant to a court order through a court of competent jurisdiction, (iii) if allowed by applicable law, as necessary for the efficient operation of the Plan, or (iv) when required by applicable law.

Upon termination of this Agreement for any reason, Alliance PPO, Inc. shall (i) as soon as practicable deliver in usable form all records, in Alliance PPO, Inc.'s possession, concerning or relating to the Member Funds to the Member Fund or its designee, and (ii) as soon as practicable deliver to the Member Fund or its designee all data in its possession that are necessary to the plans' operations. Alliance PPO, Inc. may retain copies of information reasonably necessary for its operations, provided it gives advance written notice to the Member Funds of which records it copied for its operations.

1.11    Cooperation.    Purchaser shall cooperate with Alliance PPO, Inc. in the performance of its services hereunder and Alliance PPO, Inc. shall not be liable for any breach of obligations of this Agreement caused, in whole or in part, by the lack of cooperation or breach of obligations by Purchaser, by Member Funds or by Participants.

1.12    Independent Contractors.    The relationship between Alliance PPO, Inc. and Preferred Providers is an independent contractor relationship. Preferred Providers and their employees and agents are not employees or agents of Alliance PPO, Inc. and neither Alliance PPO, Inc. nor any employee of Alliance PPO, Inc. is an employee or agent of Preferred Providers. Alliance PPO, Inc. is not responsible and shall not be liable for any claims which may arise from the provision of medical and/or hospital services to Participants by Preferred Providers.

None of the provisions of this Agreement are intended to create nor shall be deemed or construed to create any relationship between Alliance PPO, Inc. and Purchaser or Member Funds other than that of independent entities contracting with each other hereunder solely for the purpose of effecting the provisions of the Agreement. Neither of the parties hereto, nor any of their respective employees or Member Funds shall be construed to be the agent, employer, or representative of the other, except to the extent otherwise explicitly provided for herein.

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

-5-

HWFUND0000008

1.13  Provider-Patient Relationship.  Preferred Providers maintain the physician/hospital-patient relationship with Participants and are solely responsible to Participants for all services they provide.

1.14  Hold Harmless.  In the event Alliance PPO, Inc., its officers, directors, employees or agents are made parties to any judicial, administrative or other proceeding arising in whole or in part out of any function performed by one or more of them under this Agreement, Purchaser shall hold them harmless for all judgments, awards, settlements and costs (including attorneys' fees) which they incur or pay in connection therewith to the extent that the court rendering the judgment or the agency making the award determines that the liability underlying the judgment or award (or attorneys' fees with respect thereto) was caused by the gross negligence, fraud or criminal conduct of Purchaser, its agents, employees, officers or directors.

In the event Purchaser, its Member Funds, its officers, directors, employees or agents are made parties to any judicial, administrative or other proceeding arising in whole or in part out of any function performed by one or more of them under this Agreement, Alliance PPO, Inc. shall hold them harmless for all judgments, awards, settlements and costs (including attorneys' fees) which they incur or pay in connection therewith to the extent that the court rendering the judgment or the agency making the award determines that the liability underlying the judgment or award (or attorneys' fees with respect thereto) was caused by the gross negligence, fraud or criminal conduct of Alliance PPO, Inc., its agents, employees, officers or directors.

1.15  Insurance.  Alliance shall maintain liability insurance in the amount of $1 million per incident, $1 million in aggregate claims plus an additional $4 million excess to cover any claims arising out of negligence, malpractice (not to include medical malpractice coverage of providers) or other similar tort; and shall provide proof of same to Purchaser.

1.16  Legal Defense.  The defense, including legal fees and costs, together with the amount of any judgment, of any legal action against Purchaser or Member Funds arising out of a claim for benefits under the plans shall be the responsibility of the Member Funds, and shall not be an obligation of Alliance PPO, Inc. unless such litigation shall arise in connection with the omission or commission of action by Alliance. Alliance PPO, Inc. shall, however, cooperate with Purchaser and Member Funds by furnishing such material or information as it has available in connection with the defense of any such action.

1.17  Standard and Character of Performance.  Alliance PPO, Inc. shall use customary and reasonable care and proper diligence in the performance of its services under this Agreement. It is understood and agreed by the parties that the terms "customary and reasonable care and proper diligence" and "negligence" do not make Alliance PPO, Inc. a guarantor of the correctness of all claims payments and other services performed under this Agreement, but refer to the usual business practice standards and conduct in such business.

-6-

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND0000009

For the purposes of the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1001 et seq. (hereafter "ERISA"). The "Administrator" and "Named Fiduciary" of the Member Funds, are as set forth in the plan documents. Alliance shall not perform services as a fiduciary. If Alliance PPO, Inc. shall perform any service which would make it a fiduciary within the meaning of ERISA, Alliance PPO, Inc. shall use the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such methods would use in conducting his business or providing services to the Member Funds.

1.18 Reliance on Communications. In all matters pertaining to the performance of services under this Agreement, Alliance PPO, Inc., when it acts in good faith, may rely upon any notice, resolution, instruction, direction, order, certificate, opinion, letter, telegram or other document believed by it to be genuine and authorized by Purchaser or its designee. If any Member Fund plan is amended, Alliance PPO, Inc. shall not be required to act in accordance with any amendment until it receives written notice thereof.

1.19 Proprietary Information. Purchaser acknowledges that Alliance PPO, Inc. in providing services under this Agreement, will of necessity divulge to and provide Purchaser with confidential proprietary plans, programs, formulae, methods and other products and information (hereafter "Proprietary Material") relating to the business services and activities of Alliance PPO, Inc. or its contractors, including Proprietary Material developed in the course of providing services hereunder. Purchaser agrees that, during the term of the Agreement and thereafter, Proprietary Material shall remain the Property of Alliance PPO, Inc. or its contractors and Purchaser shall maintain the confidentiality of such Proprietary Material and shall not use, divulge, furnish or make accessible such Proprietary Material to anyone other than is necessary for the plans' operations except (i) with the consent of the Participants, in regard only to their individual records, (ii) pursuant to a court order through a court of competent jurisdiction, (iii) if allowed by applicable law, as necessary for the efficient operation of the Plan, or (iv) when required by applicable law.

## II.   TERM AND TERMINATION OF AGREEMENT

2.1 Effective Date. The effective date of this Agreement shall be the date first written above and it shall continue in effect thereafter for an initial term of two years and from year to year thereafter, subject to the termination provisions set forth below.

2.2 Termination. Either party may terminate this Agreement without cause by written notice at least sixty (60) days prior to the effective date of termination. Any Member Fund may terminate its participation by providing at least 60 days written notice to Purchaser and to Alliance PPO, Inc.

2.3 Termination for Cause by Alliance PPO, Inc. By adopting this master agreement, each Member Fund warrants that its current financial status is sound and that it has no knowledge of any event or transaction which would impair its ability to meet the

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

-7-

HWFUND00000010

financial obligations identified hereunder. Upon reasonable written request, the Member Fund shall make a copy of its most recent financial statements available to Alliance PPO. Alliance PPO, Inc. shall have the option to immediately terminate this Agreement upon the occurrence of any of the following:

(i) Purchaser shall violate any material covenant of this Agreement and/or any other material agreement that is mentioned herein and shall fail to cure such violation within thirty (30) days after written notice thereof, or

(ii) Purchaser shall make an assignment for the benefit of creditors or apply to any tribunal for the appointment of a trustee or receiver for any substantial part of its assets, or cause to be commenced any proceeding relating to it under any bankruptcy, reorganization, arrangement, insolvency, readjustment or debt, dissolution, or liquidation laws or any jurisdiction; or

(iii) If any such application shall be filed or any such proceedings shall be commenced against Purchaser or an order shall be entered appointing any such trustee or receiver, or adjudicating Purchaser a bankrupt or insolvent, or approving a petition in any such proceedings, and such application, proceedings, or order shall remain in effect for sixty (60) days; or

(iv) There exists the issuance of an attachment, garnishment or similar process against any substantial part of the property of Purchaser and such attachment, garnishment or other similar process is not dismissed within sixty (60) days unless Alliance PPO, Inc. is contesting the validity of such action by appropriate proceedings taken in good faith within the sixty (60) day period; or

(v) Purchaser shall admit in writing that it is unable to meet its current financial obligations.

2.4 Termination for Cause by Purchaser. Alliance PPO, Inc. warrants that its current financial status is sound and that it has no knowledge of any event of transaction which would impair its ability to meet any obligations identified hereunder. Purchaser shall have the option to immediately terminate this Agreement upon the occurrence of any of the following:

(i) Alliance PPO, Inc. shall violate any material covenant of this Agreement and/or any other material agreement that is mentioned herein and shall fail to cure such violation within thirty (30) days after written notice thereof, or

(ii) Alliance PPO, Inc. shall make an assignment for the benefit of creditors or apply to any tribunal for the appointment of a trustee or receiver for any substantial part of its assets, or cause to be commenced any proceeding relating to it under any bankruptcy,

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

-8-

HWFUND00000011

reorganization, arrangement, insolvency, readjustment or debt, dissolution, or liquidation laws or any jurisdiction; or

(iii) If any such application shall be filed or any such proceedings commenced against Alliance PPO, Inc. or an order shall be entered appointing any such trustee, or receiver, or adjudicating Alliance PPO, Inc. a bankrupt or insolvent, or approving a petition in any such proceedings, and such application, proceedings, or order shall remain in effect for sixty (60) days; or

(iv) There exists the issuance of an attachment, garnishment or similar process against any substantial part or the property of Alliance PPO, Inc. and such attachment, garnishment or other similar process is not dismissed within sixty (60) days unless Alliance PPO, Inc. is contesting the validity of such action by appropriate proceedings taken in good faith within the sixty (60) day period; or

(v) Alliance PPO, Inc. shall admit in writing that it is unable to meet its current obligations.

2.5 Contact of Alliance Preferred Providers. Purchaser agrees that Purchaser will not contact any Alliance Preferred Providers during the term of this Agreement, or for a period of three months after termination of this Agreement, for the purpose of establishing, directly or indirectly, a comparable network of providers.

2.6 Applicable Law. In the event that any governmental agency determines that Alliance PPO, Inc. is operating in violation of any law or regulation and requests that Alliance PPO, Inc. cease operations, then this Agreement may be terminated by Alliance PPO, Inc. immediately or as soon as practicable as determined by Alliance PPO, Inc. and any unearned fees paid in advance shall be reimbursed to the Member Funds.

## III. MISCELLANEOUS

3.1 Amendments. Except as provided herein, this Agreement or any part hereof may be amended at any time by written consent of both parties, without notice to or consent of any Participant.

3.2 Waiver. No covenant, condition, duty, obligation, or undertaking contained in or made a part of this Agreement shall be waived except by the express written consent of the party giving such waiver granted in accordance with the provisions hereof, and forbearance or indulgence in any form or manner by either party in regard whatsoever shall not constitute a waiver of the covenant, condition, duty, obligation, or undertaking to be kept, performed, or discharged by the other party to which the same may apply.

3.3 References to Purchaser. Purchaser agrees that Alliance PPO, Inc. may refer to and identify Purchaser in informing Preferred Providers and other prospective purchasers

and health providers about the organizations, funds, and employers participating in Alliance PPO, Inc.'s PPA or employing its services.

3.4 Third Party Rights. This Agreement is entered into by and between the parties hereto and for their benefit. There is no intent by either party to create or establish third party beneficiary status or rights in any Participant, subcontractor, or other third party to this Agreement except Member Funds, and no such third party shall have any right to enforce any right or enjoy any benefit created or established under this Agreement, except Member Funds.

3.5 Assessments. The Purchaser will pay Alliance PPO, Inc. within a reasonable time after assessment any tax or charge assessed against Alliance PPO, Inc. which may be incurred by reason of a change in or imposition of any charges imposed on Alliance PPO, Inc. by any public body, exclusive of Federal or State Income Taxes, which affect this Agreement to the extent based upon services provided under this Agreement.

3.6 Limitations. In the event the operations of Alliance PPO, Inc.'s facilities or any substantial portion thereof are interrupted by war, fire, insurrection, labor/provider contract troubles, riots, the elements, earthquakes or acts of God, the provisions of this Agreement (or such portions hereof as Alliance PPO, Inc. is thereby rendered incapable of performing) shall be suspended for the duration of such interruption, and Member Funds shall receive refund for any unearned fees paid in advance.

3.7 Arbitration. Any controversy arising out of or relating to this contract, or the breach thereof, may be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

3.8 Duties on Termination. As of the effective date of termination of this Agreement pursuant to any provision of this Agreement, the Agreement shall be considered of no further force or effect, provided, however, that each party shall remain liable for any obligations or liabilities arising from activities carried on by such party or its agents, servants, or employees during the period this Agreement shall have been in effect. In the event a Participant is being treated by a Preferred Provider as of the date of termination of this Agreement, Preferred Provider shall, to the extent it may be deemed medically appropriate, continue to render Covered Benefits to Participant until alternate treatment of Participant's condition can be arranged. In such event, Member Funds shall continue to compensate Preferred Provider for such services in accordance with the terms and conditions of this Agreement (including Alliance's maximum pricing schedule).

3.9 Performance by Alliance PPO, Inc. At its discretion, Alliance PPO, Inc. may perform its obligations under this Agreement through employees or arrangements with agents or independent contractors.

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

-10-

HWFUND00000013

3.10  Successors and Assigns.  The provisions of this Agreement and obligations arising hereunder shall extend to, be binding upon, and inure to the benefit of the executors, administrators, successors, and assigns of the parties hereto.

3.11  Assignment.  Purchaser shall not assign its right and obligations under this Agreement without the prior written consent of Alliance PPO, Inc.  Alliance PPO, Inc. may assign its respective rights and responsibilities under this Agreement to any entity which owns or controls Alliance PPO, Inc., to any entity which is currently owned or controlled by Alliance PPO, Inc., or to any entity which is currently under common ownership or control with Alliance PPO, Inc. with prior written notice to Purchaser.

3.12  Headings.  The headings of the various sections of the Agreement are inserted merely for the purpose of convenience and do not, expressly or by implication, limit, define or extend the specific terms of the section so designated.

3.13  Notice.  Any notice required to be given pursuant to the terms and provisions of this Agreement shall be in writing and may either be personally delivered or sent by registered or certified mail by United States Postal Service, return receipt requested, postage prepaid, addressed to each party at the addresses which follow:

      i) Purchaser:

                Charles Mankin, Jr., President,
                Health Care Cost Containment Corp.
                4725 Silver Hill Road
                Suitland, MD  20746

      ii) Alliance PPO, Inc.:

                Mark D. Groban, President
                Alliance, PPO, Inc.
                4 Taft Court
                Rockville, MD  20850

      iii) for purposes of notice and monitoring only:

                L.E. Laurion, Jr.
                The Segal Company
                1920 N Street, NW
                Washington, DC  20036

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

-11-

HWFUND00000014

3.14  Entire Agreement.  This Agreement (together with all attachments and documents incorporated herein) contains the entire agreement between the parties relating to the rights granted and the obligations assumed by this Agreement. Any prior agreements, promises, negotiations, or representations relating to the subject matter of this Agreement not expressly set forth in this Agreement are of no force or effect.

3.15  Applicable Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of Maryland.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers, this _17_ day of __July__, 1992.

PURCHASER                                          Alliance PPO, Inc.

By: _Charles Mankin, Jr._                    By: _Mark D Grobau MD_

Title: _President_                                Title: _President_

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER                          -12-

HWFUND00000015

## ATTACHMENT LIST

| | |
|---|---|
| Attachment A | Participation Agreements |
| Attachment B | Preferred Provider Arrangements |
| Attachment C | Administrative Services |
| Attachment D | Compensation to Alliance PPO, Inc. |
| Attachment E | Geographical Boundaries |
| Attachment F | Sample Identification Card |

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

-13-

HWFUND00000016

## ATTACHMENT A

### ALLIANCE/MAPSI
#### Participation Agreement

This Participation Agreement is entered into this _____ day of
_____, 199__, between the Health Care Cost Containment Corporation of Mid-
Atlantic Region, Inc. ("HCCCC"), the _____
_____ ("the
Fund"), and Alliance PPO, Inc. and MAPSI (collectively referred to as "Alliance").

WHEREAS, the Health Care Cost Containment Corporation of Mid-Atlantic Region,
Inc. has entered into two Purchaser Service Agreements dated, January 1, 1992, one with
Alliance PPO Inc., and the other with MAPSI ("the Agreements"); a copy of which is
attached and incorporated herein, which permit those Health and Welfare Trust Funds
which are members of the HCCCC to become Member Funds in the Alliance PPO network,
utilization review services and MAPSI mental health and substance abuse services; and

WHEREAS, the Fund has elected to become a Member Fund pursuant to one or
both of the Agreements.

NOW THEREFORE, in consideration of the mutual covenants contained herein, it
is hereby agreed as follows:

1.      The Fund shall be a Member Fund pursuant to one or both of the
Agreements, and be entitled to all the rights, privileges and obligations of Member Funds
in accordance with the terms of such Agreements and such terms as incorporated herein by
reference until such time as the Agreements shall terminate in accordance with its terms,
or until such time as the Fund may earlier elect to terminate its participation under the
terms of this agreement.

2.      The Fund hereby elects to participate in the following portions of the
Agreements:

        ☐    PPO      ☐    UR      ☐    MAPSI

3.      Alliance agrees to provide to the Fund such services and obligations as are
established for Member Funds under the Agreements, with respect to the services elected
hereunder.

4.      The Fund agrees to pay to Alliance on or before the fifth day of each month
a monthly contribution obligation in accordance with the schedule set forth in the
Agreements.

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

-14-

HWFUND00000017

The Fund agrees to pay Health Care Cost Containment Corporation of Mid-Atlantic Region, Inc. an administrative fee per participant per month in accordance with the fee schedule attached to the Agreements for tasks performed by "HCCCC" in behalf of and as agreed to by the Fund and HCCCC. The Fund recognizes that the monthly payment hereunder includes this administrative charge which will be paid from Alliance to HCCCC only after receipt by Alliance.

5.    The Fund agrees to provide to Alliance its Summary Plan Description and any modifications to its plan of benefits which shall occur from time to time.

6.    This Participation Agreement shall continue in full force and effect until the earlier of a) the termination of the Agreements, or b) the date upon which the Fund shall set to terminate its participation, provided, however that the Fund shall have provided no less than 60 days written notice to HCCCC and Alliance that it will terminate its participation, or c) at the option of Alliance, if the fund fails materially to pay, or provide sufficient funds to pay, claims for Covered Services and for other expenses of the Fund in accordance with the terms of this Participation Agreement and pursuant to the schedule of benefits of the Fund, or shall fail to pay to Alliance the compensation due hereunder.

Alliance _____

HCCCC _____

Union Trustee _____

Employer Trustee _____

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

-15-

HWFUND00000018

## ATTACHMENT B

## PREFERRED PROVIDER ARRANGEMENTS

The Preferred Providers who will provide Covered Benefits, will be paid at a rate which is generally a ten percent (10%) to twenty percent (20%) discount from usual and customary fees which prevail in the community. Fee maximums are to be set and monitored by Alliance PPO, Inc., and those maximums will be adjusted from time to time at the sole discretion of Alliance PPO, Inc. Alliance PPO, Inc. has negotiated per diem rates with several District of Columbia hospitals. These rates are subject to renegotiation from time to time. In a manner consistent with its business practice, Alliance PPO, Inc., in its sole discretion, will negotiate rates it believes are appropriate and reasonable within the community. In the event Alliance shall enter into negotiations in which a general increase in fee maximums are anticipated, Alliance will give advance written notice to Purchaser and give Purchaser the opportunity to make recommendations to Alliance.

Under Maryland law, Maryland hospitals charge all payors a rate which has been approved by Maryland regulatory authorities. Therefore, no discounts are available under the PPA from Maryland hospitals.

Alliance PPO, Inc.'s PPA includes ancillary services such as: laboratory, durable medical equipment, home health care and other services. Because of Alliance PPO, Inc.'s purchasing power, these services are generally provided on a discounted basis from usual and customary community charges. In a manner consistent with its business practice, Alliance PPO, Inc. at its sole discretion, will negotiate rates from time to time, which Alliance PPO, Inc. believes are reasonable and appropriate within the community. In the event Alliance shall enter into negotiations in which a general increase in fee maximums are anticipated, Alliance will give advance written notice to Purchaser and give Purchaser the opportunity to make recommendations to Alliance.

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

-16-

HWFUND00000019

ATTACHMENT C

ADMINISTRATIVE SERVICES

Alliance PPO, Inc. shall perform the following administration:

1. Financial Systems and Services. Alliance PPO, Inc. shall establish and administer procedures and systems for the preparation of financial reports for the efficient management and planning of the Plan. Alliance PPO, Inc. shall provide Purchaser and Member Funds no less frequently then quarterly with a summary of financial and statistical reports on utilization of medical services by Participant (see Exhibit 1 attached).

2. Claims Screening. All Preferred Providers will submit payment requests to Alliance PPO, Inc. Alliance PPO, Inc. will:

a). Determine that Provider is a member PPA.

b) Determine fee maximum amount for service billed by Preferred Provider.

c) Prepare payment advice for Purchaser or Purchaser's designee and forward a payment advice to Purchaser, or Purchaser designee for payment.

Member Funds or Member Funds' designee shall pay all such claims within twenty seven (27) days of mailing of repriced provider claim by Alliance PPO, Inc..

3. Utilization and Peer Review. Alliance PPO, Inc. shall maintain systems and procedures necessary or appropriate for the operation of reasonable and appropriate utilization review, quality assurance and peer review programs. The services covered by utilization review include those services described in the proposal of July 17, 1991 submitted to the Purchaser, which are incorporated herein and made a part hereof. With respect to the quarterly Reports described in the proposal, Alliance agrees to refund 5% of its Utilization Review fee for the quarter to each Member Fund in the event such Member Fund's Quarterly Reports are not submitted within forty five (45) days of the end of each calendar quarter.

4. Excluded Expenses and Services. Expenses incurred by Purchaser or Member Funds for the following services shall not be the responsibility of Alliance:

(a) All direct and indirect costs for providers and suppliers in connection with the delivery of covered health care services and supplies to Participants, including all compensation and reimbursement paid to medical and paramedical personnel and health care facilities;

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

-17-

HWFUND00000020

(b)  Expenses associated with meetings, communications and mailings to Purchaser, including its management, or Board of Directors or committees;

(c)  All insurance costs, including professional liability/malpractice, general liability and all reinsurance and stop-loss, which may be purchased for Purchaser or their Member Funds with the written approval of Purchaser;

(d)  Taxes or other governmental obligations of the Plan or Purchaser;

(e)  Purchaser's annual corporate financial audit, and such other audits and financial statements required by state or federal law and costs associated with preparation of Purchaser's corporate tax returns or other returns or reports for Plan or Purchaser;

(f)  Costs of legal services for the Plan which arise in the normal course of the Plan's operations;

(g)  License and filing fees and penalties and other fees associated with annual and other reports required to be filed by Purchaser or Member Funds by federal and state statutes and regulations; and

(h)  Expenses for independent legal, independent accounting, and independent actuarial services of Purchaser.

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

-18-

HWFUND00000021

# EXHIBIT 1

## ALLIANCE PPO/MAPSI*
### Fee Schedule For Member Funds
(Per eligible fund participant per month - $/p/mo.)

| | Up to 20,000** | 20,000 - 50,000** | 50,000 + ** |
|---|---|---|---|
| Alliance Hospital and Physician Network Only | $2.15/p/mo. | $1.90/p/mo. | $1.85/p/mo. |
| Alliance Utilization Review Services Only | $1.45/p/mo. | $1.40/p/mo. | $1.40/p/mo. |
| Alliance Network and UR | $3.00/p/mo. | $2.80/p/mo. | $2.75/p/mo. |
| MAPSI (Network & UR) Only*** | $0.55/p/mo. | $0.50/p/mo. | $0.50/p/mo. |
| Alliance Network, UR as well as MAPSI Network & UR*** | $3.50/p/mo. | $3.25/p/mo. | $3.20/p/mo. |

Administrative charge due to HCCCC (included in above rates):
Alliance Hospital and Physician Network .15/p/mo.
Alliance Utilization Review .05/p/mo.
MAPSI Network & UR .05/p/mo.

* Includes fee to HCCCC

-19-

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND00000022

ATTACHMENT D

COMPENSATION TO ALLIANCE PPO, INC.

Member Funds shall pay Alliance PPO, Inc. the fees outlined below per month for each eligible participant within the geographical jurisdiction of this agreement (as defined in the agreement) of each Member Fund who is eligible to access Covered Benefits through Preferred Providers, whether or not such Participants, or their dependents actually use any Preferred Providers. A determination of the number of Participants will be made on the first of each month. Alliance PPO, Inc. has the right to review Member Funds' eligibility records in order to determine if the information on the number of eligible Participants is accurate. Member Funds shall pay Alliance PPO, Inc. on the fifth day of each month for each month Alliance PPO, Inc. is to provide services under this Agreement. Alliance PPO, Inc. is not required to invoice Purchaser for payment.

It is recognized that due to delinquent employer contributions or for other reasons, the exact number of eligible participants may not be known to the Member Fund by the fifth day of the month. If additional information pertaining to eligibility shall become known to the Member Fund following the date upon which the monthly payment is made, the Member Fund will make corrective adjustment of the number of eligible participants at the time of the next monthly payment.

Alliance shall pay to Purchaser by the 15th of each month the Administrative Charge collected from the Member Funds as set forth below.

Each plan will recognize savings in payments to Preferred Providers in an amount at least equal to Alliance PPO, Inc.'s compensation calculated above during the first twelve months of operation of this Agreement exclusive of the portion of the Administrative fee, which is remitted to the Purchaser by Alliance PPO, on behalf of each Member Fund. Savings will be determined by calculating the difference between the charges for Covered Benefits at the Preferred provider's requested payment amounts, and the authorized adjusted fee as repriced by Alliance PPO, Inc. By way of example, the calculation of savings for a repriced claim is set forth on the Claims cover sheet as the difference between requested fee and the repriced adjusted amount of fee (Example attached as Exhibit G). If any Member Fund has not recognized savings during the first twelve months of operation of this Agreement equal to Alliance PPO, Inc.'s, compensation (exclusive of the portion of the fee paid to purchaser) for the first twelve months of operation of this Agreement, Alliance PPO, Inc. will refund each Member Fund the difference between the savings and its compensation relating to such Member Fund.

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND00000023

The fee due by Member Funds shall be calculated based upon the total number of eligible participants for all Member Funds participating through this Master Agreement in accordance with the following schedule.

In determining the number of participants each month, there shall be a separate calculation for the Alliance PPO under this contract and a separate calculation under the MAPSI contract. A rate change which shall occur as a result of an increase (or decrease) in the total number of participants in all Member Funds shall be effective on the first day of the month for which the larger (or smaller) number of participants crosses the threshold for change of fee. The fee shall be such that all Member Funds participating in similar programs shall pay at the same rate. The HCCCC shall notify Alliance PPO and Member Funds as to any change in rates due to change in number of participants.

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND00000024

ATTACHMENT E

Service Area Map



CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

- 22 -
HWFUND00000025

Alliance PPO Geographic Areas

Harford/Baltimore County/Baltimore City

Howard/Carroll Counties

Western Maryland
   Allegany, Washington and Garrett Counties

Frederick County

Montgomery County

Prince Georges County

Anne Arundel County

Southern Maryland
   Calvert, Charles and St. Mary's Counties

Eastern Shore
   Cecil, Kent, Queen Anne's, Talbot, Caroline, Dorchester, Wicomico, Somerset, Worcester, Accomack and Northampton Counties

Washington, DC

Northern Virginia
   Loudoun, Fairfax and Prince William Counties,  Cities of Alexandria, Arlington and Falls Church

North Central Virginia
   Stafford, King George, Spottsylvania, Fauquier Counties

South Central Virginia
   Richmond

Tidewater
   Cities of Virginia Beach, Chesapeake, Portsmouth, Norfolk

Pennsylvania

Delaware

Shenandoah
   Frederick, Shenandoah counties of Virginia

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

-23-

HWFUND00000026

ATTACHMENT F



ALLIANCE PPO, INC. PROVIDER MANUAL

CONFIDENTIAL –
SUBJECT TO
PROTECTIVE ORDER

–24–

HWFUND00000027

AMENDMENT TO

ALLIANCE PPO, INC.

PURCHASER SERVICE AGREEMENT

This Amendment to the Alliance PPO, Inc. Purchaser Service Agreement, is effective the first day of January, 1994, by and between the Health Care Cost Containment Corporation of the Mid-Atlantic Region (hereafter referred to as "Purchaser"), and Alliance PPO, Inc. (hereafter "Alliance PPO, Inc."), a corporation organized under the laws of the State of Maryland.

WHEREAS, Purchaser is a non-profit corporation consisting of member Health and Welfare Trust Funds, established to undertake health care cost containment efforts on behalf of its member funds;

WHEREAS, certain member Health and Welfare Trust Funds (hereafter referred to collectively as "Member Funds") have elected to participate through the Purchaser in obtaining cost containment services hereafter described in this Agreement;

WHEREAS, Participation Agreements of Member Funds, which may be supplemented or diminished from time to time, have previously been executed;

WHEREAS, Member Funds have adopted health care plans for their eligible participants and the eligible dependents thereof under which such persons are entitled to certain health service benefits;

WHEREAS, Purchaser desires to offer to its Member Funds a preferred provider arrangement (hereafter "PPA");

WHEREAS, on behalf of its Member Funds, Purchaser desires to purchase certain administrative and provider contracting services for operation of their health care plans from Alliance PPO, Inc.;

WHEREAS, Alliance PPO, Inc. desires to provide administrative and provider contracting services for Purchaser's Member Funds health care plans, including a PPA; and

WHEREAS, the parties hereto entered into a Purchaser Service Agreement effective January 1, 1992,

NOW THEREFORE, in consideration of the promises and mutual covenants contained herein, it is hereby agreed as follows:

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND00000028

1.      The terms and conditions of the Purchaser Service Agreement entered into January 1, 1992 shall continue in full force and effect except as modified herein or as modified within an Alliance/MAPSI Participation Agreement between Alliance/MAPSI, HCCCC and a Member Fund.

2.      This Amendment shall continue in effect for an initial period of two years, and shall continue from year to year thereafter, subject to the termination provisions set forth in the Purchaser Service Agreement.

3.      The fees set forth in paragraph 1.4 of the Purchaser Service Agreement and Attachment D are hereby modified and amended effective April 1, 1994 as follows.  With respect to any Member Fund who shall have begun participation with the HCCCC prior to April 1, 1994, the fees shall be as set forth in Attachment D-1. With respect to Member Funds who shall first begin participation with the HCCCC on or after April 1, 1994, the fees shall be as set forth in Attachment D-2.

4.      In the event a Member Fund shall elect to have Alliance perform repricing services with respect to claims which are non-Alliance provider claims as well as claims which are Alliance provider claims, the Member Fund shall provide written request for this additional service by Alliance, and the Member Fund shall pay to Alliance/MAPSI the sum of ten cents ($.10) per member per month for these services in addition to any other fees provided under this Agreement.

        IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers, this 28 day of _April_, 1994.


PURCHASER                                          Alliance PPO, Inc.

By: _____                    By: _____

Title: _____                  Title: _____


CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND00000029

ATTACHMENT LIST


Attachment D-1 and D-2                Compensation to Alliance PPO, Inc.


CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER                                        HWFUND00000030

ATTACHMENT D-1

COMPENSATION TO ALLIANCE PPO, INC.

Such Member Funds as shall have begun participation prior to April 1, 1994, shall pay Alliance PPO, Inc. the fees outlined below per month for each eligible participant within the geographical jurisdiction of this agreement (as defined in the agreement) of each Member Fund who is eligible to access Covered Benefits through Preferred Providers, whether or not such Participants, or their dependents actually use any Preferred Providers. A determination of the number of Participants will be made on the first of each month. Alliance PPO, Inc. has the right to review Member Funds' eligibility records in order to determine if the information on the number of eligible Participants is accurate. Member Funds shall pay Alliance PPO, Inc. on the fifth day of each month for each month Alliance PPO, Inc. is to provide services under this Agreement. Alliance PPO, Inc. is not required to invoice Purchaser for payment.

It is recognized that due to delinquent employer contributions or for other reasons, the exact number of eligible participants may not be known to the Member Fund by the fifth day of the month. If additional information pertaining to eligibility shall become known to the Member Fund following the date upon which the monthly payment is made, the Member Fund will make corrective adjustment of the number of eligible participants at the time of the next monthly payment.

Alliance shall pay to Purchaser by the 15th of each month the Administrative Charge collected from the Member Funds as set forth below.

Each plan will recognize savings in payments to Preferred Providers in an amount at least equal to Alliance PPO, Inc.'s compensation calculated above during the first twelve months of operation of this Agreement exclusive of the portion of the Administrative fee, which is remitted to the Purchaser by Alliance PPO, on behalf of each Member Fund. Savings will be determined by calculating the difference between the charges for Covered Benefits at the Preferred provider's requested payment amounts, and the authorized adjusted fee as repriced by Alliance PPO, Inc. By way of example, the calculation of savings for a repriced claim is set forth on the Claims cover sheet as the difference between requested fee and the repriced adjusted amount of fee (Example attached as Exhibit G to original Agreement). If any Member Fund has not recognized savings during the first twelve months of operation of this Agreement equal to Alliance PPO, Inc.'s, compensation (exclusive of the portion of the fee paid to purchaser) for the first twelve months of operation of this Agreement, Alliance PPO, Inc. will refund each Member Fund the difference between the savings and its compensation relating to such Member Fund.

The fee due by Member Funds shall be calculated based upon the total number of eligible participants for all Member Funds participating through this Master Agreement in accordance with the following schedule.

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND00000031

In determining the number of participants each month, there shall be a separate calculation for the Alliance PPO under this contract and a separate calculation under the MAPSI contract.

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND00000032

D-1

## ALLIANCE PPO/MAPSI*

Fee Schedule For Member Funds Who Have Begun Participation in HCCCC Prior to April 1, 1994

(Per eligible fund participant per month - $/p/mo.)

|  | 1/1/94-12/31/94 | 1/1/95-12/31/95 |
|---|---|---|
| Alliance Hospital and Physician Network Only | $2.05/p/mo. | $2.20/p/mo. |
| Alliance Utilization Review Services Only | $1.50/p/mo. | $1.60/p/mo. |
| Alliance Network and UR | $2.95/p/mo. | $3.16/p/mo. |
| MAPSI (Network & UR) Only*** | $0.50/p/mo. | $0.54/p/mo. |
| Alliance Network, UR as well as MAPSI Network & UR*** | $3.35/p/mo. | $3.58/p/mo. |

*(handwritten: 1996   3.69)*

Administrative charge due to HCCCC (not included in above rates):
Alliance Hospital and Physician Network    .15/p/mo.
Alliance Utilization Review    .05/p/mo.
MAPSI Network & UR    .05/p/mo.

*    Does not include fee to HCCCC.
***  The MAPSI component is covered by separate contract which is coordinated with this contract.

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND00000033

ATTACHMENT D-2

COMPENSATION TO ALLIANCE PPO, INC.

Such Member Funds as shall have begun participation on or after April 1, 1994, shall pay Alliance PPO, Inc. the fees outlined below per month for each eligible participant within the geographical jurisdiction of this agreement (as defined in the agreement) of each Member Fund who is eligible to access Covered Benefits through Preferred Providers, whether or not such Participants, or their dependents actually use any Preferred Providers. A determination of the number of Participants will be made on the first of each month. Alliance PPO, Inc. has the right to review Member Funds' eligibility records in order to determine if the information on the number of eligible Participants is accurate. Member Funds shall pay Alliance PPO, Inc. on the fifth day of each month for each month Alliance PPO, Inc. is to provide services under this Agreement. Alliance PPO, Inc. is not required to invoice Purchaser for payment.

It is recognized that due to delinquent employer contributions or for other reasons, the exact number of eligible participants may not be known to the Member Fund by the fifth day of the month. If additional information pertaining to eligibility shall become known to the Member Fund following the date upon which the monthly payment is made, the Member Fund will make corrective adjustment of the number of eligible participants at the time of the next monthly payment.

Alliance shall pay to Purchaser by the 15th of each month the Administrative Charge collected from the Member Funds as set forth below.

Each plan will recognize savings in payments to Preferred Providers in an amount at least equal to Alliance PPO, Inc.'s compensation calculated above during the first twelve months of operation of this Agreement exclusive of the portion of the Administrative fee, which is remitted to the Purchaser by Alliance PPO, on behalf of each Member Fund. Savings will be determined by calculating the difference between the charges for Covered Benefits at the Preferred provider's requested payment amounts, and the authorized adjusted fee as repriced by Alliance PPO, Inc. By way of example, the calculation of savings for a repriced claim is set forth on the Claims cover sheet as the difference between requested fee and the repriced adjusted amount of fee (Example attached as Exhibit G to Original Agreement). If any Member Fund has not recognized savings during the first twelve months of operation of this Agreement equal to Alliance PPO, Inc.'s, compensation (exclusive of the portion of the fee paid to purchaser) for the first twelve months of operation of this Agreement, Alliance PPO, Inc. will refund each Member Fund the difference between the savings and its compensation relating to such Member Fund.

The fee due by Member Funds shall be calculated based upon the total number of eligible participants for all Member Funds participating through this Master Agreement in accordance with the following schedule.

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND00000034

In determining the number of participants each month, there shall be a separate calculation for the Alliance PPO under this contract and a separate calculation under the MAPSI contract.

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND00000035

D-2

## ALLIANCE PPO/MAPSI*.
Fee Schedule For Member Funds Who Have Begun Participation in HCCC on or after April 1, 1994

(Per eligible fund participant per month - $/p/mo.)

|  | 1/1/94-12/31/94 | 1/1/95-12/31/95 |
|---|---|---|
| Alliance Hospital and Physician Network Only | $2.15/p/mo. | $2.30/p/mo. |
| Alliance Utilization Review Services Only | $1.60/p/mo. | $1.71/p/mo. |
| Alliance Network and UR | $3.05/p/mo. | $3.26/p/mo. |
| MAPSI (Network & UR) Only*** | $0.60/p/mo. | $0.64/p/mo. |
| Alliance Network, UR as well as MAPSI Network & UR*** | $3.45/p/mo. | $3.69/p/mo. |

Administrative charge due to HCCCC (not included in above rates):

| | |
|---|---|
| Alliance Hospital and Physician Network | .15/p/mo. |
| Alliance Utilization Review | .05/p/mo. |
| MAPSI Network & UR | .05/p/mo. |

\* Does not include fee to HCCCC.
\*\*\* The MAPSI component is covered by separate contract which is coordinated with this contract.

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND00000036

1996 - 1997

AMENDMENT TO

ALLIANCE PPO, INC.

PURCHASER SERVICE AGREEMENT

This Amendment to the Alliance PPO, Inc. Purchaser Service Agreement, is effective the first day of January, 1996, by and between the Health Care Cost Containment Corporation of the Mid-Atlantic Region (hereafter referred to as "Purchaser"), and Alliance PPO, Inc. (hereafter "Alliance PPO, Inc."), a corporation organized under the laws of the State of Maryland.

WHEREAS, Purchaser is a non-profit corporation consisting of member Health and Welfare Trust Funds, established to undertake health care cost containment efforts on behalf of its member Funds;

WHEREAS, certain member Health and Welfare Trust Funds (hereafter referred to collectively as "Member Funds") have elected to participate through the Purchaser in obtaining cost containment services hereafter described in this Agreement.

WHEREAS, Participation Agreements of Member Funds, which may be supplemented or diminished from time to time, have previously been executed;

WHEREAS, Member Funds have adopted health care plans for their eligible participants and the eligible dependents thereof under which such persons are entitled to certain health service benefits;

WHEREAS, Purchaser desires to offer to its Member Funds a preferred provider arrangement (hereafter "PPA");

WHEREAS, on behalf of its Member Funds, Purchaser desires to purchase certain administrative and provider contracting services for operation of their health care plans from Alliance PPO, Inc.;

WHEREAS, Alliance PPO, Inc. desires to provide administrative and provider contracting services for Purchaser's Member Funds health care plans, including a PPA; and

WHEREAS, the parties hereto entered into a Purchaser Service Agreement effective January 1, 1992, which was readopted and amended by Agreement dated April 28, 1994.

NOW THEREFORE, in consideration of the promises and mutual covenants contained herein, it is hereby agreed as follows:

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND00000037

1.     The terms and conditions of the Purchaser Service Agreement entered into January 1, 1992 as readopted and Amended April 28, 1994, shall continue in full force and effect except as modified herein or as modified within an Alliance/MAPSI Participation Agreement between Alliance/MAPSI, HCCCC and a Member Fund.

2.     This Amendment shall continue in effect for an initial period of two years, and shall continue from year to year thereafter, subject to the termination provisions set forth in the Purchaser Service Agreement.

3.     The fees set forth in paragraph 1.4 of the Purchaser Service Agreement and Attachment D are hereby modified and amended effective January 1, 1996, as set forth in Attachment D.

4.     In the event a Member Fund shall elect to have Alliance receive for identification and separation, claims which are non-Alliance provider claims as well as claims which are Alliance provider claims, the Member Fund shall provide written request for this additional service by Alliance, and the Member Fund shall pay to Alliance/MAPSI the sum of ten cents ($.10) per member per month for these services in addition to any other fees provided under this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers, this ___ day of _____, 1996.

PURCHASER                              Alliance PPO, Inc.

By: _____                 By: _____

Title: _President_                     Title: _President_

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND00000038

ATTACHMENT D

COMPENSATION TO ALLIANCE PPO, INC.

Such Member Funds as shall have elected participation under this Agreement, shall pay Alliance PPO, Inc. the fees outlined below per month for each eligible participant within the geographical jurisdiction of this Agreement (as defined in the Agreement) of each Member Fund who is eligible to access Covered Benefits through Preferred Providers, whether or not such Participants, or their dependents actually use any Preferred Providers. A determination of the number of Participants will be made on the first of each month. Alliance PPO, Inc. has the right to review Member Funds' eligibility records in order to determine if the information on the number of eligible Participants is accurate. Member Funds shall pay Alliance PPO, Inc. on the fifth day of each month for each month Alliance PPO, Inc. is to provide services under this Agreement. Alliance PPO, Inc. is not required to invoice Purchaser for payment.

It is recognized that due to delinquent employer contributions or for other reasons, the exact number of eligible participants may not be known to the Member Fund by the fifth day of the month. If additional information pertaining to eligibility shall become known to the Member Fund following the date upon which the monthly payment is made, the Member Fund will make corrective adjustment of the number of eligible participants at the time of the next monthly payment.

Alliance shall pay to Purchaser by the 15th of each month the Administrative Charge collected from the Member Funds as set forth below.

Each plan will recognize savings in payments to Preferred Providers in an amount at least equal to Alliance PPO, Inc.'s compensation calculated above during the first twelve months of operation of this Agreement exclusive of the portion of the Administrative fee, which is remitted to the Purchaser by Alliance PPO, on behalf of each Member Fund. Savings will be determined by calculating the difference between the charges for Covered Benefits at the Preferred provider's request payment amounts, and the authorized adjusted fee as repriced by Alliance PPO, Inc. By way of example, the calculation of savings for a repriced claims is set forth on the Claims cover sheet as the difference between requested fee and the repriced adjusted amount of fee (Example attached as Exhibit G to original Agreement). If any Member Fund has not recognized savings during the first twelve months of operation of this Agreement equal to Alliance PPO, Inc.'s, compensation (exclusive of the portion of the fee paid to purchaser) for the first twelve months of operation of this Agreement, Alliance PPO, Inc. will refund each Member Fund the difference between the savings and its compensation relating to such Member Fund.

The fee due by Member Funds shall be calculated based upon the total number of eligible participants for all Member Funds participating through this Master Agreement in accordance with the following schedule.

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND00000039

D-1

### ALLIANCE PPO/MAPSI*

Fee Schedule For Member Funds Of The Health Care Cost Containment Corporation
of the Mid-Atlantic Region

(per eligible fund participant per month - $/p/mo.)

|  | 1/1/96-12/31/96 | 1/1/97-12/31/97 |
|---|---|---|
| Alliance Hospital and Physician Network Only | $2.27/p/mo. | $2.36/p/mo. |
| Alliance Utilization Review Services Only | $1.65/p/mo. | $1.72/p/mo. |
| Alliance Network and UR | $3.25/p/mo. | $3.38/p/mo. |
| MAPSI (Network & UR) Only | $0.56/p/mo. | $0.58/p/mo. |
| Alliance Network, UR as well as MAPSI Network & UR | $3.69/p/mo. | $3.84/p/mo. |

Administrative charge due to HCCCC (not included in above rates):
Alliance Hospital and Physician Network    .15/p/mo.
Alliance Utilization Review    .05/p/mo.
MAPSI Network & UR    .05/p/mo.

---

\* Does not include fee to HCCCC.

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND00000040

## 1998-2000 AMENDMENT TO
## ALLIANCE PPO, INC. PURCHASER SERVICE AGREEMENT

This Amendment to the Alliance PPO, Inc. Purchaser Service Agreement, is effective the first day of January, 1998, by and between the Health Care Cost Containment Corporation of the Mid-Atlantic Region, Inc., (hereafter referred to as "Purchaser"), and Alliance PPO, Inc. (hereafter "Alliance PPO, Inc."), a corporation organized under the laws of the State of Maryland.

WHEREAS, Purchaser is a non-profit corporation consisting of member Health and Welfare Trust Funds, established to undertake health care cost containment efforts on behalf of its Member Funds;

WHEREAS, certain Member Health and Welfare Trust Funds (hereafter referred to collectively as "Member Funds") have elected to participate through the Purchaser in obtaining cost containment services hereafter described in this Agreement.

WHEREAS, Participation Agreements of Member Funds, which may be supplemented or diminished from time to time, have previously been executed;

WHEREAS, Member Funds have adopted health care plans for their eligible participants and the eligible dependents thereof under which such persons are entitled to certain health service benefits;

WHEREAS, Purchaser desires to offer to its Member Funds a preferred provider arrangement (hereafter "PPA");

WHEREAS, on behalf of its Member Funds, Purchaser desires to purchase certain administrative and provider contracting services for operation of their health care plans from Alliance PPO, Inc.;

WHEREAS, Alliance PPO, Inc. desires to provide administrative and provider contracting services for Purchaser's Member Funds health care plans, including a PPA; and

WHEREAS, the parties hereto entered into a Purchaser Service Agreement effective January 1, 1992, which was readopted and amended by Agreement dated April 28, 1994, and further readopted and amended by Agreement dated August 8, 1996, and effective January 1, 1996, it is,

NOW THEREFORE, in consideration of the promises and mutual covenants contained herein, it is hereby agreed as follows:

1. The terms and conditions of the Purchaser Service Agreement entered into January 1, 1992 as readopted and Amended April 28, 1994, and as further readopted and Amended August 8, 1996, shall continue in full force and effect except as modified herein or as modified

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND00000041

within an Alliance/MAPSI Participation Agreement between Alliance/MAPSI, HCCCC and a Member Fund.

2. This Agreement, as Amended, shall continue in effect for an initial period of three years, and shall continue from year to year thereafter, subject to the termination provisions set forth in the Purchaser Service Agreement.

3. The fees set forth in paragraph 1.4 of the Purchaser Service Agreement and Attachment D are hereby modified and amended effective January 1, 1998, as set forth in Attachment D.

4. Services known as Alliance PLUS, consisting of Durable Medical Equipment, Skilled Nursing Facility, Hospice, and Home Care shall be included in the category of service known as Alliance Facility and Physician Network Only, at no extra charge.

5. The parties agree that for so long as this Agreement, as Amended shall remain in effect, and neither party shall have terminated this Agreement as Amended, Purchaser shall not enter into any other Agreement with any third party which is unaffiliated with Alliance PPO, Inc., the terms of which shall constitute a Master Agreement for its Member Funds to participate in a competing Facility and Physician Preferred Provider Network.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers, this 30 day of _December_, 1997.

Health Care Cost Containment
Corporation of the Mid-Atlantic
Region, Inc.

By: _____

Alliance PPO, Inc.

By: _____

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND00000042

## ATTACHMENT D
## COMPENSATION TO ALLIANCE PPO, INC.

Such Member Funds as shall have elected participation under this Agreement, shall pay Alliance PPO, Inc. the fees outlined below per month for each eligible participant within the geographical jurisdiction of this Agreement (as defined in the Agreement) of each Member Fund who is eligible to access Covered Benefits through Preferred Providers, whether or not such Participants, or their dependents actually use any Preferred Providers. A determination of the number of Participants will be made on the first of each month. Alliance PPO, Inc. has the right to review Member Funds' eligibility records in order to determine if the information on the number of eligible Participants is accurate. Member Funds shall pay Alliance PPO, Inc. on the fifth day of each month for each month Alliance PPO, Inc. is to provide services under this Agreement. Alliance PPO, Inc. is not required to invoice Purchaser for payment.

It is recognized that due to delinquent employer contributions or for other reasons, the exact number of eligible participants may not be known to the Member Fund by the fifth day of the month. If additional information pertaining to eligibility shall become known to the Member Fund following the date upon which the monthly payment is made, the Member Fund will make corrective adjustment of the number of eligible participants at the time of the next monthly payment.

Alliance shall pay to Purchaser by the 15th of each month the Administrative Charge collected from the Member Funds as set forth b low.

Each plan will recognize savings in payments to Preferred Providers in an amount at least equal to Alliance PPO, Inc.'s compensation, calculated above during the first twelve months of operation of this Agreement exclusive of the portion of the Administrative fee, which is remitted to the Purchaser by Alliance PPO, on behalf of each Member Fund. Savings will be determined by calculating the difference between the charges for Covered Benefits at the Preferred provider's request payment amounts, and the authorized adjusted fee as repriced by Alliance PPO, Inc. By way of example, the calculation of savings for a repriced claims is set forth on the Claims cover sheet as the difference between requested fee and the repriced adjusted amount of fee (Example attached as Exhibit G to original Agreement). If any Member Fund has not recognized savings during the first twelve months of operation of this Agreement equal to Alliance PPO, Inc.'s compensation (exclusive of the portion of the fee paid to purchaser) for the first twelve months of operation of this Agreement, Alliance PPO, Inc. will refund each Member Fund the difference between the savings and its compensation relating to such Member Fund.

The fee due by Member Funds shall be calculated based upon the total number of eligible participants for all Member Funds participating through this Master Agreement in accordance with the following schedule.

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND00000043

D-1

## ALLIANCE PPO/MAPSI

Fee Schedule For Member Funds Of The Health Care Cost Containment Corporation
of the Mid-Atlantic Region, Inc. *

(per eligible fund participant per month - $/p/mo.)

|  | 1/1/98-12/31/98 | 1/1/99-12/31/99 | 1/1/00-12/31/00 |
|---|---|---|---|
| Alliance Hospital and Physician Network Only | $2.45 | $2.51 | $2.57 |
| Alliance Utilization Review Services Only | $1.79 | $1.83 | $1.87 |
| Alliance Network and UR | $3.51 | $3.60 | $3.69 |
| MAPSI (Network & UR) Only | $0.60 | $0.61 | $0.62 |
| Alliance Network, UR as well as MAPSI Network & UR | $3.99 | $4.09 | $4.19 |

* Does not include fee to HCCCC.
Administrative charge due to HCCCC (not included in above rates):

| | |
|---|---|
| Alliance Hospital and Physician Network | .15/p/mo. |
| Alliance Utilization Review | .05/p/mo. |
| MAPSI only | .05/p/mo. |
| Alliance Network & UR | .20/p/mo. |
| Alliance Network, UR & MAPSI | .25/p/mo. |

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND00000044

# 2001-2003 AMENDMENT TO
# ALLIANCE PPO, INC. PURCHASER SERVICE AGREEMENT

This Amendment to the Alliance PPO, Inc. Purchaser Service Agreement, which was first effective January 1, 1992, having been amended by amendments effective January 1, 1994, January 2, 1996, and January 1, 1998, is effective the first day of January, 2001, by and between the Health Care Cost Containment Corporation of the Mid-Atlantic Region, Inc., (hereafter referred to as "Purchaser"), and Alliance PPO, Inc. (hereafter "Alliance PPO, Inc."), a corporation organized under the laws of the State of Maryland.

WHEREAS, Purchaser is a non-profit corporation consisting of member Health and Welfare Trust Funds, established to undertake health care cost containment efforts on behalf of its Member Funds:

WHEREAS, certain Member Health and Welfare Trust Funds (hereafter referred to collectively as "Member Funds") have elected to participate through the Purchaser in obtaining cost containment services hereafter described in this Agreement,

WHEREAS, Participation Agreements of Member Funds, which may be supplemented or diminished from time to time, have previously been executed:

WHEREAS, Member Funds have adopted health care plans for their eligible participants and the eligible dependents thereof under which such persons are entitled to certain health service benefits:

WHEREAS, Purchaser desires to offer to its Member Funds a preferred provider arrangement (hereafter "PPA");

WHEREAS, on behalf of its Member Funds, Purchaser desires to purchase certain administrative and provider contracting services for operation of their health care plans from Alliance PPO, Inc.:

WHEREAS, Alliance PPO, Inc. desires to provide administrative and provider contracting services for Purchaser's Member Funds health care plans, including a PPA; and

WHEREAS, the parties hereto entered into a Purchaser Service Agreement effective January 1, 1992, which was readopted and amended by Agreement dated April 28, 1994, and further readopted and amended by Agreement dated August 8, 1996, and effective January 1, 1996, and further readopted and amended by agreement dated December 30, 1997 and effective January 1, 1998, it is.

NOW THEREFORE, in consideration of the promises and mutual covenants contained herein, it is hereby agreed as follows:

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND00000045

1. The terms and conditions of the Purchaser Service Agreement entered into January 1, 1992 as readopted and Amended April 28, 1994, and as further readopted and amended August 8, 1996, and as further readopted and amended December 30, 1997, shall continue in full force and effect except, as modified herein or as modified within an Alliance/MAPSI Participation Agreement between Alliance/MAPSI, HCCCC and a Member Fund.

2. This Agreement, as Amended, shall continue in effect for an initial period of three years, and shall continue from year to year thereafter, subject to the termination provisions set forth in the Purchaser Service Agreement.

3. The fees set forth in paragraph 1.4 of the Purchaser Service Agreement and Attachment D are hereby modified and amended effective January 1, 2001, as set forth in Attachment D.

4. Services known as Alliance PLUS, consisting of Durable Medical Equipment, Skilled Nursing Facility, Hospice, and, Home Care shall be included in the category of service known as Alliance Facility and Physician Network Only, at no extra charge.

5. The parties agree that for so long as this Agreement, as Amended shall remain in effect, and neither party shall have terminated this Agreement as Amended, Purchaser shall not enter into any other Agreement with any third party which is unaffiliated with Alliance PPO, Inc., the terms of which shall constitute a Master Agreement for its Member Funds to participate in a competing Facility and Physician Preferred Provider Network.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers, this _____ day of _____, 2000.

Health Care Cost Containment
Corporation of the Mid-Atlantic
Region, Inc.

By: _____ 10/20/00

Alliance PPO, Inc.,

By: _____ 11/15/

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND00000046

# ATTACHMENT D
## COMPENSATION TO ALLIANCE PPO, INC.

Such Member Funds as shall have elected participation under this Agreement, shall pay Alliance PPO, Inc. the fees outlined below per month for each eligible participant within the geographical jurisdiction of this Agreement (as defined in the Agreement) of each Member Fund who is eligible to access Covered Benefits through Preferred Providers, whether or not such Participants, or their dependents actually use any Preferred Providers. A determination of the number of Participants will be made on the first of each month. Alliance PPO, Inc. has the right to review Member Funds' eligibility records in order to determine if the information on the number of eligible Participants is accurate. Member Funds shall pay Alliance PPO, Inc. on the fifth day of each month for each month Alliance PPO, Inc. is to provide services under this Agreement. Alliance PPO, Inc. is not required to invoice Purchaser for payment.

It is recognized that due to delinquent employer contributions or for other reasons, the exact number of eligible participants may not be known to the Member Fund by the fifth day of the month. If additional information pertaining to eligibility shall become known to the Member Fund following the date upon which the monthly payment is made, the Member Fund will make corrective adjustment of the number of eligible participants at the time of the next monthly payment.

Alliance shall pay to Purchaser by the 15th of each month the Administrative Charge collected from the Member Funds as set forth below.

Each plan will recognize savings in payments to Preferred Providers in an amount at least equal to Alliance PPO, Inc.'s compensation calculated above during the first twelve months of operation of this Agreement exclusive of the portion of the Administrative fee, which is remitted to the Purchaser by Alliance PPO, on behalf of each Member Fund. Savings will be determined by calculating the difference between the charges for Covered Benefits at the Preferred provider's request payment amounts, and the authorized adjusted fee as repriced by Alliance PPO, Inc. By way of example, the calculation of savings for a repriced claims is set forth on the Claims cover sheet as the difference between requested fee and the repriced adjusted amount of fee (Example attached as Exhibit G to original Agreement). If any Member Fund has not recognized savings during the first twelve months of operation of this Agreement equal to Alliance PPO, Inc.'s, compensation (exclusive of the portion of the fee paid to purchaser) for the first twelve months of operation of this Agreement, Alliance PPO, Inc. will refund each Member Fund the difference between the savings and its compensation relating to such Member Fund.

The fee due by Member Funds shall be calculated based upon the total number of eligible participants for all Member Funds participating through this Master Agreement in accordance with the following schedule.

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND00000047

D-1

ALLIANCE PPO/MAPSI
Fee Schedule For Member Funds Of The Health Care Cost Containment
Corporation
of the Mid-Atlantic Region, Inc. *

(per eligible fund participant per month - $/p/mo.)

|  | 01/01/01-12/31/01 | 01/01/02-12/31/02 | 01/01/03-12/31/03 |
|---|---|---|---|
| Alliance Hospital and Physician Network Only | $2.67 | $2.78 | $2.86 |
| Alliance Utilization Review Services Only | $1.94 | $2.02 | $2.08 |
| Alliance Network and UR | $3.84 | $3.99 | $4.11 |
| MAPSI (Network & UR) Only | $0.64 | $0.67 | $0.69 |
| Alliance Network, UR as well as MAPSI Network & UR | $4.56 | $4.53 | $4.66 |

\* Does not include fee to HCCCC.
Administrative charge due to HCCCC (not included in above rates):

    Alliance Hospital and Physician Network    .15/p mo.
    Alliance Utilization Review    .05 p/mo.
    MAPSI Network & UR    .05 p/mo;

CONFIDENTIAL -
SUBJECT TO
PROTECTIVE ORDER

HWFUND00000048

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHILDREN'S NATIONAL MEDICAL CENTER<br><br>&<br><br>BRSI, L.P. d/b/a BENEFIT RECOVERY SPECIALISTS<br><br>Plaintiffs,<br><br>v.<br><br>TODD HICKS, INDIVIDUALLY, AND ON BEHALF OF TODD HICKS, JR., DECEASED,<br><br>&<br><br>LOCAL UNION NO. 639, BUILDING, INC. d/b/a INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 639 and d/b/a LOCAL 639<br><br>&<br><br>LOCAL UNION NO. 639, BUILDING, INC. d/b/a INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 639 d/b/a Local 639 - Employer's Health Trust Fund<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§   No. 06-0317RJL<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## DECLARATION OF KENNETH P. KAPLAN

Pursuant to 28 U.S.C. § 1746 and Rule 56(f), Fed. R. Civ. P., I, Kenneth P.

Kaplan make this Declaration in further support of Children's National Medical Center



EXHIBIT

G

and Benefit Recovery Specialists, Inc.'s (collectively "Plaintiffs") Motion for Continuance to Take Discovery Under Rule 56(f), Fed. R. Civ. P.

1.   I am over the age of 18, of sound mind and competent to make this Declaration. I am an attorney licensed to practice in the District of Columbia and am employed by Greenberg Traurig, LLP. My Bar Number is 460614.

2.   I make this declaration based either on first hand knowledge or good faith belief derived from reasonable due diligence or investigation

3.   Plaintiffs ask that the Court defer ruling on Defendant's Motion to Dismiss or in the Alternative for Summary Judgment until Plaintiffs have the opportunity to take discovery on the following topics:

   a.   the contracts or agreements between the parties;

   b.   the contracts or agreements between Children's and Alliance/MAMSI and M.D. IPA, and the enforceability of any such contract or agreement on any third parties such as the Health Fund or Local 639;

   c.   the contracts or agreements between the Health Fund and/or Local 639 and Alliance/MAMSI, and any third party beneficiaries to any such contract or agreement such as Children's;

   d.   any contracts, agreements or affiliations between the Health Fund and/or Local 639 and the Health Care Cost Containment Corporation of Mid-Atlantic Region or any other health care purchasing coalition or any other health and welfare trust fund;

2

e.   discovery regarding any statements or correspondence between the Health Fund and/or Local 639 (directly or indirectly through their agents) and Children's regarding promises or assertions that the Health Fund or Local 639 would pay for the medical services Children's provided Mr. Hicks; and

f.   the relationship between the Health Fund and Local 639 and their communications with third parties to determine whether the Health Fund is the alter ego of Local 639 or vice versa.

4.   This discovery will reveal factual disputes at issue in this case, including, *inter alia*, a direct or indirect contractual relationship between Children's and the Health Fund and/or Local 639 wherein the Health Fund and/or Local 639 agreed to reimburse Children's for medical services provided to Mr. Hicks.

5.   This request is not filed for delay, but so that justice may be done.

I declare under the penalties of perjury that the foregoing is true and correct

Dated this 21st day of August, 2006.

_____
Kenneth P. Kaplan

3